1  John T. Hansen (CA34639)
   jhansen@nossaman.com
2  James H. Vorhis (CA245034)
   jvorhis@nossaman.com
3  Nossaman LLP
   50 California Street, 34th Floor
4  San Francisco, CA 94111
   Telephone: 415.398.3600
5  Facsimile:  415.398.2438

6  FEDERAL DEPOSIT INSURANCE
   CORPORATION as Receiver for Integrity Bank
7

## UNITED STATES BANKRUPTCY COURT

## NORTHERN DISTRICT OF CALIFORNIA

| MHG CASA MADRONA HOTEL, LLC, | Case No: 09-12536 |
|---|---|
| Debtor, | **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO EXCUSE RECEIVER FROM COMPLIANCE WITH BANKRUPTCY CODE SECTION 543(B)(1)** |
| | Date: October 2, 2009<br>Time: 10:00 a.m. |

239975_1.DOC

Case No. 09-12536

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO EXCUSE THE RECEIVER
FROM COMPLIANCE WITH BANKRUPTCY CODE SECTION 543(B)(1)

Case: 09-12536   Doc# 8   Filed: 08/14/09   Entered: 08/14/09 15:22:10   Page 1 of 13

# TABLE OF CONTENTS

| | | Page |
|---|---|---|
| I. | SUMMARY | 1 |
| II. | FACTS | 2 |
| III. | The Bankruptcy Court should Excuse Turnover of Casa Madrona to the Bankruptcy Trustee because Creditors will be Better Served if the Receiver Continues in Possession of the Hotel. | 5 |
| | A. The Debtor does not have Sufficient Income to Fund a Successful Reorganization. | 6 |
| | B. There has been Significant Mismanagement by Debtor. | 8 |
| IV. | ANY ORDER EXCUSING TURNOVER SHOULD ALSO PROVIDE FOR THE TRANSITION FROM A PRE-BANKRUPTCY RECEIVERSHIP TO A POST-BANKRUPTCY RECEIVERSHIP. | 9 |
| V. | CONCLUSION | 10 |

239975_1.DOC

i

Case No. 09-12536

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO EXCUSE THE RECEIVER FROM COMPLIANCE WITH BANKRUPTCY CODE SECTION 543(B)(1)

Case: 09-12536   Doc# 8   Filed: 08/14/09   Entered: 08/14/09 15:22:10   Page 2 of 13

# TABLE OF AUTHORITIES

Page

**Cases**

*In re Lizeric Realty Corp.*, 188 B.R. 499 (S.D.N.Y. 1995) ............................................... 6

*In re Orchards Village Investments, LLC*, 405 B.R. 341 (D. Or. 2009) ...................... 6, 7

*In re Uno Broadcasting Corp.*, 167 B.R. 189 (D. Ariz. 1994) ........................................ 5

*Matter of Plantation Inn Partners*, 142 Bankr.561 (S.D. Ga. 1992) ............................... 7

**Other Authorities**

Bankruptcy Code § 543(b)(1) .......................................................................................... 1

239975_1.DOC ii Case No. 09-12536

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO EXCUSE THE RECEIVER
FROM COMPLIANCE WITH BANKRUPTCY CODE SECTION 543(B)(1)

Case: 09-12536    Doc# 8    Filed: 08/14/09    Entered: 08/14/09 15:22:10    Page 3 of 13

Secured Creditor, the Federal Deposit Insurance Corporation ("FDIC"), as receiver of Integrity Bank, submits this memorandum of points and authorities in support of its motion to excuse compliance with Bankruptcy Code § 543(b)(1) by the receiver of the Casa Madrona Spa and Hotel located in Sausalito, California ("Casa Madrona Hotel"). The facts stated in this memorandum are based upon the declarations filed and served herewith.

## I. SUMMARY

MHG Casa Madrona Hotel, LLC ("Debtor") borrowed $29,550,000 from Integrity Bank in 2005 and secured that loan by a deed of trust and personal property security agreement regarding its sole asset, the Casa Madrona Hotel. In 2007, the Debtor assumed the obligation to pay two additional notes owing to the bank in an aggregate amount in excess of $19,000,000, and amended the deed of trust to add those notes as further liability secured by the property. **Debtor never made a single payment to Integrity Bank on account of the three loans.** In late 2008, Integrity Bank failed and the FDIC became and remains the receiver of Integrity Bank. The outstanding amount due on the three notes, including principal, interest and fees now exceeds $63,800,000. The FDIC has determined the value of the hotel is not more than $15,500,000. The FDIC has caused notices of default to be recorded under the 2005 deed of trust, and published notice of a trustee's sale to be held on August 11, 2009. On August 10, 2009, the Debtor commenced this case, and the trustee's sale was postponed.

Due to serious mismanagement of the Casa Madrona Hotel and apparent "stripping" of cash from the hotel's revenues by the principal of the Debtor, Guy Mitchell, the FDIC filed a complaint for the appointment of a receiver for the hotel in the United States District Court for the Northern District of California, and on April 30, 2009, the court appointed Kyle Green as the receiver of the Casa Madrona Hotel. Mr. Green presently serves as the receiver of the hotel, and the hotel is currently managed by a management company employed by Mr. Green.

1

239975_1.DOC

Case No. 09-12536

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO EXCUSE THE RECEIVER FROM COMPLIANCE WITH BANKRUPTCY CODE SECTION 543(B)(1)

Case: 09-12536   Doc# 8   Filed: 08/14/09   Entered: 08/14/09 15:22:10   Page 4 of 13

Since taking over as receiver, Mr. Green and the FDIC have cured deficiencies in hotel transient occupancy taxes due to the City of Sausalito and have resumed prompt payment of those taxes, have restored competent management to the hotel, and as a result of improved operations and a targeted marketing campaign have increased the occupancy levels of the hotel. All these actions are in stark contrast to the neglect and mismanagement that occurred when the Debtor was managing the hotel in early 2009.

The Debtor and its principal have shown significant irresponsibility with respect to the ownership and management of the hotel, including allowing the secured notes to become delinquent, failing to pay property taxes to the county, failing to pay transient occupancy and city taxes, failing to properly maintain the hotel, and extracting funds from the hotel's operating accounts for personal use while neglecting other obligations of the Debtor. For these reasons, the FDIC contends that the interests of the creditors are best served by leaving the receiver in control of the hotel during the pendency of this case.

## II. FACTS

The FDIC is the duly appointed receiver of Integrity Bank, a Georgia Banking Corporation. Among the assets of Integrity Bank are three notes from the Debtor as follows:

- A note dated May 3, 2005, in the principal amount of $29,550,000;
- A note dated June 26, 2007 (Printer Row "Replacement Note") in the principal amount of $12,494,761.89; and
- A note dated June 26, 2007 (Melbourne Hotel Investors "Replacement Note") in the principal amount of $6,653,271.97. (Declaration of Charles P. Farrell, Jr. ("Farrell Dec."), ¶ 3.)

Each of the three notes is secured by one of two deeds of trust which secure real property and personal property located at 810 Bridgeway, Sausalito, California, known as the

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO EXCUSE THE RECEIVER FROM COMPLIANCE WITH BANKRUPTCY CODE SECTION 543(B)(1)

Case: 09-12536   Doc# 8   Filed: 08/14/09   Entered: 08/14/09 15:22:10   Page 5 of 13

Casa Madrona Hotel and Spa. (*Id.*) Each of the above notes is currently in default, and the amounts required to cure the defaults, as of August 10, 2009, are:

- May 3, 2005 Note = $39,513,936.13, plus $9,850.00 per day interest and fees and costs to be determined;
- June 26, 2007 Printers Row Replacement Note = $15,870,104.63, plus $2,863.38 per day and fees and costs to be determined; and
- June 26, 2007 Melbourne Hotel Investors Replacement Note = $8,450,319.44, plus $1,524.70 and fees and costs to be determined. (Farrell Dec., ¶ 4.)

Thus, the total amount due and owing on all three notes of August 10, 2009, was $63,834,360. In addition, the Debtor has not paid real estate property taxes to the County of Marin since April 2007, and there is currently due and owing to the County current and delinquent taxes in excess of $474,972.24. (Farrell Dec., ¶ 7.) Based on its analysis of comparable hotel properties, the FDIC believes the current fair market value of the Casa Madrona Hotel is no greater than $15,500,000. (*Id.*, ¶ 5.)

Up until sometime in December 2008 the hotel was managed by the West Paces Hotel Group, but in that month the Debtor, through the actions of Mr. Mitchell, breached the operating agreement with the West Paces Hotel Group, and shortly thereafter personally took over management of the hotel. (Farrell Dec., ¶ 6, FDIC Exhibits 1 and 2.) During the period from December 2008 through April 2009, the following negative actions and neglect, among others, occurred with respect to the management of the hotel;

- Mr. Mitchell caused withdrawals of at least $405,000 from the hotel operating funds apparently for his personal use (Declaration of Kyle Green ("Green Dec."), ¶ 4.)
- Mr. Mitchell caused employee morale at the hotel to suffer by, among other things, terminating employee benefits and issuing insufficient funds payroll checks. (Declaration of Jeremy Gaunt ("Gaunt Dec."), ¶¶ 4, 7.)

3

239975_1.DOC

Case No. 09-12536

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO EXCUSE THE RECEIVER FROM COMPLIANCE WITH BANKRUPTCY CODE SECTION 543(B)(1)

Case: 09-12536   Doc# 8   Filed: 08/14/09   Entered: 08/14/09 15:22:10   Page 6 of 13

- Mr. Mitchell failed to maintain essential services for hotel guests and failed to maintain the hotel's web site, which, among other things, caused occupancy at the hotel to decline. (Gaunt Dec., ¶ 5.)
- Mr. Mitchell failed to pay the hotel's Transient Occupancy Tax and the fees for parking space usage, and he ignored demands for payment. (Declaration of Charles D. Francis ("Francis Dec."), ¶¶ 2-3.)
- The Debtor has failed to pay real property taxes for over two years (Farrell Dec., ¶ 7.) [1]

On March 18, 2009 and March 24, 2009, the FDIC caused notices of default under its first recorded deed of trust and second recorded deed of trust, respectively, to be recorded with the Marin County Recorder. (Declaration of John T. Hansen ("Hansen Dec."), ¶ 4.) On April 30, 2009, the FDIC filed a complaint in the United States District Court for the Northern District of California for the appointment of a receiver to take possession of the Casa Madrona Hotel and operate it pending foreclosure, and for an injunction prohibiting the Debtor from interfering with the receiver so appointed. (Hansen Dec., ¶ 2.) On the same day the district court (Hon. Phyllis Hamilton) appointed Kyle Green as the receiver and issued a temporary restraining order against the Debtor to prevent interference with the receiver (*Id.*; Green Dec., ¶ 2, Exhibit 1.) On June 11, 2009, the court confirmed the appointment of Mr. Green and entered a preliminary injunction against the Debtor. (Hansen Dec., ¶ 3.)

On July 13, 2009, the FDIC cause notice of a trustee's sale under its 2007 deed of trust to be published, setting a trustee's sale for August 11, 2009, at 10:00 a.m. (Hansen Dec., ¶ 4.)

---

[1] All these actions occurred at a time the Debtor was seriously delinquent on the secured notes, having never made a single payment on the notes.

4

239975_1.DOC

Case No. 09-12536

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO EXCUSE THE RECEIVER FROM COMPLIANCE WITH BANKRUPTCY CODE SECTION 543(B)(1)

Case: 09-12536   Doc# 8   Filed: 08/14/09   Entered: 08/14/09 15:22:10   Page 7 of 13

| 1 | On Monday, August 10, at 7:04 p.m., the Debtor filed its petition for relief under chapter 11.
| --- | --- |
| 2 | (*Id.*) The FDIC caused the trustee's sale to be continued to October 6, 2009. (*Id.*)
| 3 | Since May 1, 2009, when Mr. Green was appointed receiver of the hotel, the
| 4 | management of the hotel has been restored to a competent level of management, employee
| 5 | morale has been restored, and occupancy has increased. (Gaunt Dec., ¶ 8.) In addition, the
| 6 | FDIC and Mr. Green arranged to cure the defaults in taxes owing to the City of Sausalito and
| 7 | have commenced regular and timely payment of the taxes as they accrue. (Francis Dec., ¶¶ 7-
| 8 | 8.) Maintaining the status quo is clearly in the interests of the creditors of the Debtor, and
| 9 | allowing management to revert to the Debtor and its principal would be detrimental to the
| 10 | estate and its creditors.

### III. THE BANKRUPTCY COURT SHOULD EXCUSE TURNOVER OF CASA MADRONA TO THE BANKRUPTCY TRUSTEE BECAUSE CREDITORS WILL BE BETTER SERVED IF THE RECEIVER CONTINUES IN POSSESSION OF THE HOTEL.

Creditors to this bankruptcy will be better served if the receiver remains in possession of the Casa Madrona Hotel. After all, it was the gross mismanagement of the hotel and business by the Debtor and its principal that led to the receivership in the first place.

Under section 543(d)(1) of the Bankruptcy Code, the Bankruptcy Court may excuse a custodian holding property from turning over that property to the Bankruptcy Trustee if the "interests of the creditors ... would be better served by permitting a custodian to continue in possession, custody or control of such property ...." Cases under Section 543(d) are fact intensive, and turn on whether the assets of the particular debtor should be administered by the existing custodian or returned to the debtor. (*In re Uno Broadcasting Corp.*, 167 B.R. 189, 200 (D. Ariz. 1994).)

Courts consider a number of factors in determining whether to order turnover, primarily "(1) whether there will be sufficient income to fund a successful reorganization, (2) whether the

5

239975_1.DOC

Case No. 09-12536

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO EXCUSE THE RECEIVER FROM COMPLIANCE WITH BANKRUPTCY CODE SECTION 543(B)(1)

Case: 09-12536   Doc# 8   Filed: 08/14/09   Entered: 08/14/09 15:22:10   Page 8 of 13

debtor will use the property for the benefit of its creditors; and (3) whether there has been mismanagement by the debtor." (*In re Orchards Village Investments, LLC*, 405 B.R. 341, 352 (D. Or. 2009).) When the facts of this case are applied to the *Orchards Village* factors, it becomes quite clear that an order should issue from this Court excusing the receiver from turning over Casa Madrona hotel to the bankruptcy trustee.

### A. The Debtor does not have Sufficient Income to Fund a Successful Reorganization.

Nothing from the Debtor's tenure as owner and operator of Casa Madrona Hotel indicates that it will have sufficient income to successfully reorganize. Courts will look at a number of factors related to both pre-receivership and post-receivership events in evaluating whether a debtor has sufficient income to successfully reorganize. For example, in *In re Orchards Village*, *supra*, the Bankruptcy Court looked at the following facts in excusing a receiver from turning over possession of a senior living community pursuant to Section 543(d)(1):

- The debtor's failure to make pre-receivership payments on a promissory note secured by the property;
- The debtor's failure to pay property taxes pre-receivership;
- The debtor's failure to pay the bills of architects;
- The necessity of the receiver to advance funds to cover shortfalls in revenues to pay operating expenses; and
- The improved operations of the senior facility after the receiver's appointment, indicating that the debtor had inadequate available revenue and working capital to run the facility as it should be run. (405 B.R. at 353.)

Other courts have also excused turnover when similar facts are present. (*In re Lizeric Realty Corp.*, 188 B.R. 499 (S.D.N.Y. 1995) (debtor failed to pay taxes, and maintenance and

6

239975_1.DOC

Case No. 09-12536

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO EXCUSE THE RECEIVER FROM COMPLIANCE WITH BANKRUPTCY CODE SECTION 543(B)(1)

Case: 09-12536    Doc# 8    Filed: 08/14/09    Entered: 08/14/09 15:22:10    Page 9 of 13

upkeep improved significantly after receivership); *Matter of Plantation Inn Partners*, 142 Bankr. 561, 563 (S.D. Ga. 1992) (debtor had defaulted on mortgage payments, failed to pay taxes, failed to place insurance, hired an unqualified manager for the hotel, failed to maintain adequate accounting records, and paid over $50,000 to the principal's affiliated company).)

      Each of the facts that supported the Court's belief that the debtor lacked sufficient income to reorganize in *Orchards Village* is present here. This is partly shown by Debtor's utter failure to timely pay its debt before receivership, and partly shown by the ease with which the receiver has remedied many of the problems that existed. Debtor allowed the promissory notes secured by Casa Madrona Hotel to go into default and, in fact, failed to make even a single payment on any of them. Debtor has failed to pay not only property taxes to the County of Marin, but also transient occupancy tax and other city fees to the City of Sausalito.[2] Debtor failed to pay the bills of numerous vendors, and was unable to fund the hotel's payroll on multiple occasions.

      The receiver has implemented a number of simple improvements that have greatly improved the operations at Casa Madrona Hotel. The receiver hired a regional sales director and put a marketing campaign in place that together have bolstered occupancy levels and revenues. The only inference that can be drawn by the Debtor's failure to have such simple, yet integral, parts in place before the appointment of the receiver was that the Debtor and its principal were diverting hotel funds for other, apparently personal, uses. Based on prior conduct, debtor and its principal cannot be trusted to act for the benefit of creditors.

---

[2] It is noteworthy that the transient occupancy tax is collected from the hotel guests, and failure to remit to the city may constitute a conversion. (Francis Dec., ¶ 5).

239975_1.DOC

Case No. 09-12536

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO EXCUSE THE RECEIVER FROM COMPLIANCE WITH BANKRUPTCY CODE SECTION 543(B)(1)

Case: 09-12536   Doc# 8   Filed: 08/14/09   Entered: 08/14/09 15:22:10   Page 10 of 13

### B. There has been Significant Mismanagement by Debtor.

Here there have been two types of mismanagement on the part of Debtor and its principal. First, from a basic operational standpoint, Casa Madrona was a very poorly managed business. The months predating appointment of the receiver reveal an ongoing tale of neglect. The debtor and its principal failed to pay taxes to the City of Sausalito, the County of Marin, and the State of California. The debtor failed to pay its employees, and then eliminated their benefits. It failed to pay vendors. The Debtor failed to advertise the hotel and allowed its website to be shut down. The Debtor allowed the hotel to fall into a state of disrepair that affected the reputation of the hotel and business. In every sense of the word, debtor failed in its management of the business.

Second, and more nefarious, is that while this financial chaos was occurring, Mr. Mitchell skimmed over $405,000 in hotel funds for uses unrelated to hotel operations. Employees whose livelihoods depended on the continued viability of the hotel had their salaries jeopardized and their benefits eliminated. This conduct can be characterized as mismanagement, but in actuality is much worse.

In contrast, since his appointment, the receiver has used his expertise to make a number of decisions that have turned Casa Madrona into a smoothly-run operation with increasing revenues and a revitalized reputation. If the receiver is forced to turn the hotel over to the Bankruptcy Trustee, and as a result the debtor who drove the hotel to the edge of ruin, it will only destroy the significant progress that has been achieved by the receiver over the last five months.

///

///

///

8

239975_1.DOC

Case No. 09-12536

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO EXCUSE THE RECEIVER FROM COMPLIANCE WITH BANKRUPTCY CODE SECTION 543(B)(1)

Case: 09-12536   Doc# 8   Filed: 08/14/09   Entered: 08/14/09 15:22:10   Page 11 of 13

## IV. ANY ORDER EXCUSING TURNOVER SHOULD ALSO PROVIDE FOR THE TRANSITION FROM A PRE-BANKRUPTCY RECEIVERSHIP TO A POST-BANKRUPTCY RECEIVERSHIP.

Section 543(c) of the Bankruptcy Code provides that the court may protect entities to which the receiver has become obligated and provide for the payment of reasonable compensation for the receiver's fees and expenses prior to bankruptcy. In the event the Court enters an order excusing the receiver from surrendering possession of the hotel to the Debtor, the Court should also include provisions that permit the receiver to pay obligations he has incurred prior to bankruptcy of the Debtor, allow his compensation and compensation of his counsel for pre-bankruptcy services, subject to court approval, and transfer judicial oversight from the district court to the bankruptcy court.

It appears that the most effective way to carry out these provisions is to have the receiver file an accounting with both the district court and the bankruptcy court with respect to the period from April 30, 2009, through August 10, 2009. The district court accounting would be a final accounting and would not seek any approval of payments or compensation. Upon submission of the final accounting in the district court, the FDIC would move to dismiss the district court case.[3] The accounting filed with the bankruptcy court would also be accompanied by a request for authority to pay all outstanding accounts payable and a request for reasonable compensation for the receiver and his counsel for the pre-bankruptcy period from funds on hand.[4] The receiver would then close the books for the period up to August 10,

---

[3] The Debtor never appeared in the district court case.

[4] Any surplus funds generated by the operation of the hotel during the receivership would

9

239975_1.DOC

Case No. 09-12536

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO EXCUSE THE RECEIVER FROM COMPLIANCE WITH BANKRUPTCY CODE SECTION 543(B)(1)

Case: 09-12536   Doc# 8   Filed: 08/14/09   Entered: 08/14/09 15:22:10   Page 12 of 13

2009, and reopen the books to account separately for post-bankruptcy income and disbursements.

## V. CONCLUSION

For the reasons above, the Bankruptcy Court should grant the motion of the FDIC for an order excusing the receiver from compliance with Bankruptcy Code section 543(b), thereby allowing the receiver to remain in possession of the Casa Madrona Hotel.

Dated: August 14, 2009

Nossaman LLP
John T. Hansen
James H. Vorhis

By: /s/ John T. Hansen
John T. Hansen
Attorneys for FEDERAL DEPOSIT INSURANCE CORPORATION, as Receiver of Integrity Bank, a Georgia Banking Corporation, Plaintiff

be cash collateral of the FDIC. The FDIC is agreeable to the suggested procedure.

10

239975_1.DOC

Case No. 09-12536

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO EXCUSE THE RECEIVER FROM COMPLIANCE WITH BANKRUPTCY CODE SECTION 543(B)(1)