# EXHIBIT JTH 1



2005-0033100

| Recorded | REC FEE 185.00
Official Records |
County Of |
Marin |
JOAN C. THAYER |
Recorder |
|
01:58PM 05-May-2005 | jn
| Page 1 of 55

RECORDING REQUESTED BY
AND WHEN RECORDED RETURN TO:

Fatco.
384 Bel marin keys.
novato Cc, 94949

---

## DEED OF TRUST, SECURITY AGREEMENT, ASSIGNMENT OF LEASES AND RENTS AND FIXTURE FILING

granted by

**Trustor**

to

**FIRST AMERICAN TITLE COMPANY, as Trustee**

for the benefit of

**INTEGRITY BANK,**
A Georgia State Bank

Dated as of May 3, 2005

---

# TABLE OF CONTENTS

**Page**

ARTICLE I      DEFINITIONS ................................................................. 1

ARTICLE II      GRANTING CLAUSES; CONDITION OF GRANT ................................... 7

2.1      Grant ................................................................................ 7

     (a)      Land ................................................................ 7

     (b)      Improvements ................................................... 7

     (c)      Appurtenant Rights ............................................ 7

     (d)      Equipment ....................................................... 7

     (e)      Permits .......................................................... 8

     (f)      Leases ........................................................... 8

     (g)      Rents, Issues and Profits ..................................... 8

     (h)      General Intangibles, Payment Rights and Agreements ............. 8

     (i)      Proceeds and Awards ........................................... 8

     (j)      Receivables and Accounts ..................................... 8

     (k)      Further Property ............................................... 8

2.2      Obligations Secured ............................................................ 9

     (a)      Obligations Secured ........................................... 9

     (b)      Obligations ..................................................... 9

     (c)      Incorporation .................................................. 9

2.3      Fixture Filing ................................................................... 10

     (a)      Fixture Filing .................................................. 10

     (b)      Description of Collateral ..................................... 10

     (c)      Relation of Fixture Filing To Deed of Trust ................. 10

     (d)      Limitations .................................................... 10

     (e)      Possession and Use of Collateral ............................. 10

ARTICLE III      CERTAIN AGREEMENTS BY TRUSTOR .................................. 10

3.1      Title .............................................................................. 10

3.2      Further Assurances ............................................................. 11

3.3      Taxes ............................................................................. 11

     (a)      Payment by Trustor ........................................... 11

Case: 09-12536    Doc# 32-1    Filed: 08/26/09    Entered: 08/26/09 11:54:46    Page 3 of 30

|  | (b) | Payment by Beneficiary | 12 |
| 3.4 | | Maintenance and Repair of the Property | 12 |
| 3.5 | | Legal Actions | 12 |
| 3.6 | | Existing Improvements | 13 |
| 3.7 | | Insurance | 13 |
| 3.8 | | Adjustment of Casualty and Condemnation Claims | 16 |
| 3.9 | | Application of Net Proceeds | 17 |
| 3.10 | | Transfer of the Property | 18 |
| 3.11 | | Right to Perform | 18 |
| 3.12 | | Estoppel Certificates; Beneficiary's Statement | 18 |
| 3.13 | | Management; Records; Financial Information | 19 |
| 3.14 | | Subrogation | 20 |
| 3.15 | | Responsibility for Compliance with Environmental Laws | 20 |
| 3.16 | | Property Contracts | 23 |
| 3.17 | | Inspection | 24 |
| 3.18 | | Reimbursement; Interest | 24 |
| 3.19 | | No Defaults | 24 |
| 3.20 | | No Bankruptcy | 25 |
| 3.21 | | No Adverse Change | 25 |
| 3.22 | | No Moratorium | 25 |
| 3.23 | | Property Assessments | 25 |
| 3.24 | | Property Assessments; Insurance; Escrow | 25 |
| 3.25 | | Independence of the Property | 26 |
| 3.26 | | Security Agreement | 26 |
| 3.27 | | Restrictive Covenants, Zoning, etc | 26 |
| 3.28 | | Acceleration Upon Sale or Encumbrance. | 27 |
| 3.29 | | Releases, Extensions, Modifications and Additional Security | 27 |
| 3.30 | | Liens and Encumbrances | 27 |
| ARTICLE IV | | DEFAULT | 28 |
| 4.1 | | Events of Default | 28 |
|  | (a) | Inaccurate Information | 28 |
|  | (b) | Payment Obligations | 28 |

Case: 09-12536    Doc# 32-1    Filed: 08/26/09    Entered: 08/26/09 11:54:46    Page 4 of
30

|   |     |                                                              |     |
|---|-----|--------------------------------------------------------------|-----|
|   | (c) | Transfer of the Property; Encumbrances                       | 28  |
|   | (d) | Insurance Obligations                                        | 28  |
|   | (e) | Change in Status of Trustor                                  | 28  |
|   | (f) | Other Obligations                                            | 28  |
|   | (g) | Event of Default Under Other Loan Documents                  | 28  |
|   | (h) | Voluntary Bankruptcy, etc.                                   | 29  |
|   | (i) | Involuntary Bankruptcy, etc.                                 | 29  |
|   | (j) | Execution; Attachment                                        | 29  |
|   | (k) | Change in Business Status                                    | 29  |
|   | (l) | Default Under Other Indebtedness                             | 29  |
|   | (m) | Dissolution of Trustor, etc.                                 | 29  |
|   | (n) | Death, Disability or Disassociation of Guarantor             | 29  |
|   | (o) | Rezoning of the Land                                         | 29  |
| 4.2 | | Rights and Remedies                                            | 29  |
| 4.3 | | Application of Foreclosure Sale Proceeds                       | 34  |
| 4.4 | | No Cure or Waiver                                              | 34  |
| 4.5 | | Payment of Costs, Expenses and Attorneys' Fees                | 34  |
| 4.6 | | Power to File Notices and Cure Defaults                       | 34  |
| 4.7 | | Rights Cumulative, No Waiver                                  | 34  |
| 4.8 | | Judgment on Environmental Provision                           | 35  |
| ARTICLE V | TRUSTEE                                                  | 35  |
| 5.1 | | Liability of Trustee                                          | 35  |
| 5.2 | | Powers of Trustee                                             | 36  |
| 5.3 | | Substitution of Trustees, etc.                                | 36  |
| 5.4 | | Expenses                                                      | 36  |
| 5.5 | | Duties of Trustee Defined Herein                              | 37  |
| ARTICLE VI | MISCELLANEOUS                                           | 37  |
| 6.1 | | Time is of the Essence                                        | 37  |
| 6.2 | | No Waiver by Beneficiary, etc.                                | 37  |
| 6.3 | | Rules of Construction                                         | 37  |
| 6.4 | | Severability                                                  | 38  |
| 6.5 | | Successors and Assigns                                        | 38  |

Case: 09-12536    Doc# 32-1    Filed: 08/26/09    Entered: 08/26/09 11:54:46    Page 5 of 30

| | | |
|---|---|---|
| 6.6 | Amendments | 38 |
| 6.7 | Governing Law | 38 |
| 6.8 | General Representations, Warranties and Covenants | 38 |
| 6.9 | Nature of Loan; Usury; Disclosures | 41 |
| 6.10 | Advised to Obtain Counsel. | 41 |
| 6.11 | Application of Moneys | 41 |
| 6.12 | No Warranty by Beneficiary or Trustee | 41 |
| 6.13 | Notices | 42 |
| 6.14 | Consent to Jurisdiction | 43 |
| 6.15 | Waiver | 43 |
| 6.16 | Waiver of Trial by Jury | 43 |
| 6.17 | Representation of Trustor | 44 |
| 6.18 | Property Fee | 44 |
| 6.19 | Attorneys' Fees | 45 |
| 6.20 | Loan Sales and Participation; Trustor and Beneficiary Defined | 45 |
| 6.21 | No Joint Venture | 45 |
| 6.22 | ERISA Compliance | 46 |
| 6.23 | Severability | 46 |
| 6.24 | Homestead | 46 |
| 6.25 | Relationship of Articles | 46 |
| 6.26 | Merger | 46 |
| 6.27 | Waiver of Marshaling Rights | 46 |
| 6.28 | Survival | 46 |
| 6.29 | Call Option | 47 |
| EXHIBIT A | PROPERTY DESCRIPTION | A-1 |
| EXHIBIT B | PERMITTED ENCUMBRANCES | B-1 |

Case: 09-12536    Doc# 32-1    Filed: 08/26/09    Entered: 08/26/09 11:54:46    Page 6 of 30

## DEED OF TRUST, SECURITY AGREEMENT,
## ASSIGNMENT OF LEASES AND RENTS AND FIXTURE FILING

THIS DEED OF TRUST, ASSIGNMENT OF LEASES AND RENTS, SECURITY AGREEMENT AND FIXTURE FILING made as of May 3, 2005, by **MHG Casa Madrona Hotel, LLC, a Georgia limited liability company** qualified to transact business in California, having an address at 3420 Bird Avenue, Coconut Grove, Florida 33133 ("Trustor"), to First American Title Company of Marin, a corporation having an office at 384 Bel Marin Keys Blvd., Suite 120, Novato, California 94949, (the "Trustee"), in trust for the benefit of Integrity Bank, a Georgia Banking Corporation, having an address at 11140 State Bridge Road, Alpharetta, Georgia, 30022 (the "Beneficiary").

### R E C I T A L S

Trustor has requested that Beneficiary facilitate a loan (the "Loan") to Trustor in a principal amount of Twenty Nine Million Five Hundred Fifty Thousand and No/100 Dollars ($29,550,000.00) (the "Loan Amount"). In order to evidence Trustor's obligation to pay the Loan, Trustor will execute and deliver to Beneficiary one or more promissory notes in the aggregate principal amount of the Loan Amount (collectively, the "Note").

As a condition precedent to making the Loan to Trustor, Beneficiary has required that Trustor execute and deliver this Deed of Trust.

**NOW THEREFORE**, in order to induce Beneficiary to make the Loan, Trustor agrees as follows:

### ARTICLE I

### DEFINITIONS

As used in this Deed of Trust the terms defined in the Preamble and Recitals hereto shall have the respective meanings specified therein, and the following terms shall have the meanings indicated:

"Additions" means any and all alterations, additions, accessions and improvements to the Property, substitutions therefore, and renewals and replacements thereof.

"Casualty" means any act or occurrence of any kind or nature that results in damage, loss or destruction to the Property.

"Claim" means any liability, suit, action, claim, demand, loss, expense (including, without limitation, attorney's fees) or cost of any kind or nature whatsoever.

"Condemnation" means any taking of title, of use, or of any other interest in the Property under the exercise of the power of eminent domain, whether temporarily or permanently, by any Governmental Authority or by any Person acting under Governmental Authority.

"Condemnation Awards" means any and all judgments, awards of damages (including, but not limited to, severance and consequential damages), payments, proceeds, settlements, amounts paid for a taking in lieu of Condemnation, or other compensation heretofore or hereafter made, including interest thereon, and the right to receive the same, as a result of, or in connection with, any Condemnation or threatened Condemnation.

"Deed of Trust" means this Deed of Trust, Security Agreement and Fixture Filing executed by Trustor for the benefit of Beneficiary, as the same may from time to time be extended, amended, restated, supplemented or otherwise modified.

"Default", or "default" means an event which, with the giving of Notice or lapse of time, or both, could or would constitute an Event of Default under the provisions of this Deed of Trust, the Loan Agreement, and/or any of the Loan Documents.

"Default Rate" has the meaning set forth in the Note.

"Encumbrance" means any Lien, easement, right of way, roadway (public or private), common area, condominium regime, cooperative housing regime, restrictive covenant, Lease or other matter of any nature that would affect title to the Property.

"Environmental Indemnity Agreement" shall mean that certain Environmental Indemnity Agreement between Trustor and Beneficiary dated as of an even date hereof.

"Environmental Laws" mean all present and future laws, statutes, ordinances, rules, regulations, orders, and determinations of any governmental authority, pertaining to health, fire safety, protection of the environment, natural resources, conservation, wildlife, waste management, regulation of activities involving Hazardous Materials, and pollution, including, without limitation, the Comprehensive Environmental Response, Compensation, and Liability Act, 42 U.S.C. §9601 et seq., Solid Waste Disposal Act, as amended, 42 U.S. C.§ 6901 et seq.;), the Clean Air Act as amended, 42 U.S.C. § 7401 et seq., the Clean Water Act (the "Clean Water Act"), as amended, 33 U.S.C. § 1251 et seq., the Federal Insecticide, Fungicide, and Rodenticide Act, as amended, 7 U.S.C. § 136 et seq., the Toxic Substances Control Act, as amended, 15 U.S.C. § 2601 et seq., the Resource Conservation and Recovery Act ("RCRA"), 42 USC §§ 6901 et seq., the Hazardous Materials Transportation Act, 49 USC §§ 1801 et seq., the Federal Water Pollution Control Act, 33 USC §§ 1251 et seq., the United States Department of Transportation Table at 49 CFR 172.101, the California Hazardous Waste Control Law, Cal. Health & Safety §§ 25100 et seq., by the Hazardous Substance Account Act ("HSAA"), Cal. Health & Safety Code §§ 25300 et seq., the Underground Storage of Hazardous Substances Act, Cal. Health & Safety §§ 25280 et seq., the Porter-Cologne Water Quality Control Act, Cal. Water Code §§ 13000 et seq., the Safe Drinking Water and Toxic Enforcement Act of 1986 (Proposition 65), Title 22 of the California Code of Regulations, Division 4, Chapter 30, the Emergency Planning and Community Right to Know Act, 42 U.S.C. § 11001, et seq.

"Equipment" shall have the meaning in Section 2.1(d) hereof.

Case: 09-12536   Doc# 32-1   Filed: 08/26/09   Entered: 08/26/09 11:54:46   Page 8 of 30

"Event of Default" means the occurrence of any one or more of the events specified in Article IV of this Deed of Trust and the continuance of such event beyond the applicable cure periods, if any, set forth in the Loan Documents with respect to such event.

"Expense" means all costs and expenses of any nature whatsoever incurred at any time and from time to time (after an Event of Default) by Beneficiary (other than time of Beneficiary's employees) or Trustee in exercising or enforcing any rights, powers and remedies provided in this Deed of Trust or any of the other Loan Documents and for which Trustor is obligated to reimburse Beneficiary pursuant to the terms of this Deed of Trust or any of the other Loan Documents, including, without limitation, reasonable attorney's fees, court costs, receiver's fees, management fees and costs incurred in the repair, maintenance and operation of, or taking possession of, or selling, the Property.

"Governmental Authority" or "Governmental Authorities" means any governmental or quasi-governmental entity, including, without limitation, any department, commission, board, bureau, agency, administration, service or other instrumentality of any governmental entity.

"Guaranties" means those certain Guaranty agreements entered into by each of Guy Mitchell and Mitchell Hotel Group, LLC, in favor of Lender.

"Hazardous Materials" means any (i) hazardous wastes and/or toxic chemicals, materials, substances or wastes as defined by the Environmental Laws; (ii) any "oil," as defined by the Clean Water Act (as defined in the definition of Environmental Laws), as amended from time to time, and regulations promulgated thereunder (including crude oil or any fraction thereof); (iii) any substance, the presence of which is prohibited, regulated or controlled by any other applicable federal or state or local laws, regulations, statutes or ordinances now in force or hereafter enacted relating to waste disposal or environmental protection with respect to the exposure to, or manufacture, possession, presence, use, generation, storage, transportation, treatment, release, emission, discharge, disposal, abatement, cleanup, removal, remediation or handling; (iv) any asbestos or asbestos containing materials, polychlorinated biphenyl in the form of electrical equipment, fluorescent light fixtures with ballasts, cooling oils or any other form, urea formaldehyde, atmospheric radon at levels over four picocuries per cubic liter; (v) any solid, liquid, gaseous or thermal irritant or contaminant, such as smoke, vapor, soot, fumes, alkalis, acids, chemicals, pesticides, herbicides, sewage, industrial sludge or other similar wastes; (vi) industrial, nuclear or medical by-products; (vii) underground storage tanks (whether filled or unfilled); and (viii) lead in the drinking water, paint or elsewhere; provided, however, that any materials normally stored and used in connection with the construction, operation or maintenance of the Property shall not be considered Hazardous Materials so long as same are at all times stored, used and maintained in accordance with all applicable Environmental Laws.

"Hazardous Materials Contamination" means the contamination (whether presently existing or occurring after the date of this Deed of Trust) of the Improvements, facilities, soil, ground water, air or other elements on, or of, the Property by Hazardous Materials, or the contamination of the buildings, facilities, soil, ground water, air or other

Case: 09-12536    Doc# 32-1    Filed: 08/26/09    Entered: 08/26/09 11:54:46    Page 9 of
30

elements on, or of, any other property as a result of Hazardous Materials at any time (whether before or after the date of this Deed of Trust) emanating from the Property.

"Improvements" shall have the meaning set forth in Section 2.1(b) hereof.

"Indemnity Agreement" means that certain [Hazardous Materials Indemnity Agreement] of even date herewith from Trustor to Beneficiary and the Lenders, as the same may from time to time be extended, amended, restated, supplemented or otherwise modified.

"Land" means the land described in Exhibit A attached hereto, together with (a) all estates, title, interests, title reversion rights, increases, issues, profits, rights of way or uses, additions, accretions, servitudes, gaps, gores, liberties, privileges, water rights, water courses, alleys, streets, passages, ways, vaults, licenses, tenements, franchises, hereditaments, appurtenances, easements and other rights, now or hereafter owned by Trustor and belonging or appertaining to the Land, (b) all Claims whatsoever of Trustor with respect to the Land, either in law or in equity, in possession or in expectancy, and (c) all estate, right, title and interest of Trustor in and to all streets, roads and public places, opened or proposed, now or hereafter adjoining or appertaining to, the Land.

"Laws" means all federal, state and local laws, rules, ordinances and regulations, and orders or decrees of any court or other Governmental Authority having jurisdiction over the Land as may be in effect from time to time.

"Leases" means all leases, license agreements and other occupancy or use agreements (whether oral or written), now or hereafter existing, which cover or relate to all or any part of the Property, together with all options therefore, amendments thereto and renewals, modifications and guarantees thereof, including, without limitation, any cash or securities deposited under the Leases to secure performance by the tenants of their obligations under the Leases (subject to the rights of tenants under the Leases), whether such cash or securities are to be held until the expiration of the terms of the Leases or applied to one or more of the installments of rent coming due.

"Lenders" means, initially, Integrity Bank, a Georgia Banking Corporation, in its capacity as lender under the Loan Documents and shall include all assignees or participants of all or any portion of the Loan, if applicable.

"Lien" means any mortgage, deed of trust, pledge, security interest, assignment, judgment, mechanics' lien, other lien or charge of any kind, including, without limitation, any conditional sale or other title retention agreement, any lease in the nature thereof, and the filing of, or agreement to give, any financing statement under the UCC.

"Loan" means the maximum principal amount of Twenty Nine Million Five Hundred Fifty Thousand and No/100 Dollars ($29,550,000.00) to be advanced to Trustor in accordance with the terms of the Loan Documents.

"Loan Documents" means collectively this Deed of Trust, the Note, the UCC Fixture and Nonfixture Financing Statement, the Assignment of Leases and Rents, the Security

5/3/05                                                        4

Agreement, and any and all other documents which Trustor or any other party or parties have executed and delivered, or may hereafter execute and deliver, to evidence, secure or guarantee the Obligations, or any part thereof, as the same may from time to time be extended, amended, restated, supplemented or otherwise modified.

"Net Proceeds" shall have the meaning set forth in Section 3.8(b).

"Note" means, collectively, the one or more promissory notes from time to time executed and delivered by Trustor to evidence its obligation to repay the Loan the aggregate principal amount of which will not exceed Twenty Nine Million Five Hundred Fifty Thousand and No/100 Dollars ($29,550,000.00), including all renewals, replacements, assignments, supplements and amendments thereof.

"Notice" means a written communication which shall be given in accordance with the provisions of Section 6.14 of this Deed of Trust.

"Obligations" or "Obligation" shall have the meaning set forth in Section 2.2 hereof.

"Permits" shall have the meaning set forth in Section 2.1(e) hereof.

"Permitted Encumbrances" means (a) the exceptions listed in Exhibit B attached hereto and made a part hereof by this reference and (b) this Deed of Trust.

"Person" means an individual, a corporation, a partnership, a limited liability company, a joint venture, a trust, an unincorporated association, any Governmental Authority or any other entity.

"Personalty" means all of Trustor's interest in personal property of any kind or nature whatsoever, whether tangible or intangible and whether now owned or hereafter acquired, which is used in the construction of, or is placed upon, or is derived from or used in connection with the maintenance, use, occupancy or enjoyment of, the Property, including, without limitation, (a) the Equipment, (b) any franchise, concession or license agreements and management agreements entered into with respect to the Property or the business conducted therein (provided all of such agreements shall be subordinate to this Deed of Trust, and Beneficiary shall have no responsibility for the performance of Trustor's obligations thereunder), (c) all plans and specifications, contracts and subcontracts for the construction or repair of the Improvements, sewer and water taps, allocations and agreements for utilities, bonds, permits, licenses, guarantees, warranties, causes of action, judgments, Claims, profits, security deposits, utility deposits, refunds of any taxes, fees or deposits paid to any Governmental Authority, letters of credit and policies of insurance, and (d) all materials now or hereafter delivered to or located upon the Land and intended for construction, re-construction, alteration or repair of the Improvements, all of which materials shall be deemed to be included within the Property immediately upon the delivery thereof to the Land, together with all Additions to the Personalty and Proceeds thereof.

Case: 09-12536   Doc# 32-1   Filed: 08/26/09   Entered: 08/26/09 11:54:46   Page 11 of 30

"Proceeds" when used with respect to any of the collateral described in this Deed of Trust, means all proceeds within the meaning of the UCC and shall also include the proceeds of any and all insurance policies and Condemnation Awards.

"Property" means all of Trustor's present and future estate, right, title and interest in all property granted, assigned or otherwise transferred to Trustee or Beneficiary pursuant to this Deed of Trust as defined in Section 2.1.

"Property Assessments" means all taxes, payments in lieu of taxes, water rents, sewer rents, assessments, and other governmental or municipal charges and levies which are or may be levied, imposed or assessed upon the Property or any part thereof, or upon any Leases or any Rents, whether levied directly or indirectly or as excise taxes.

"Rents" means all of the receipts, rents, royalties, issues, profits, revenues, earnings, income arising from the use or enjoyment of the Property, or from any Lease or other use or occupancy agreement pertaining to the Property, and all rights to receive the same, including, but not limited to, accounts receivable, minimum rents, additional rents, parking rents, deficiency rents and liquidated damages following default by the tenants thereunder and any amounts payable by any tenant upon the exercise of a cancellation privilege contained in its Lease; any and all rights and claims of any kind which Trustor has or hereafter may have against the tenants under the Leases and any subtenants and other occupants of the Property; any award granted Trustor after the date hereof in any court proceeding involving any tenant in any bankruptcy, insolvency, or reorganization proceedings in any state or federal court; and any and all payments made by any tenant in lieu of rent.

"Security Agreement" shall have the meaning set forth in Section 3.26 hereof.

"State" means the State of California.

"Transfer" means a sale, conveyance, alienation, encumbrance, pledge, option agreement, transfer or other disposition of all or any portion of the Property, and shall be deemed to include, without limitation, (i) an installment sales agreement wherein Trustor agrees to sell the Property or any part thereof for a price to be paid in installments, (ii) a ground lease of the Property, (iii) a sale, assignment, option to purchase, which purchase is not conditioned upon the receipt of Beneficiary's consent if required hereunder, or other transfer of, or the grant of a security interest in, Trustor's right, title and interest in and to any Leases or any Rents, and (iv) a Transfer of any interest in Trustor, including, without limitation, a transfer of Trustor's shares, stock, securities, or otherwise.

"Trustee" means Trustee or its successor(s) who may be acting under and pursuant to this Deed of Trust from time to time.

"UCC" shall have the meaning set forth in Section 2.4(a) hereof.

Case: 09-12536    Doc# 32-1    Filed: 08/26/09    Entered: 08/26/09 11:54:46    Page 12
of 30

## ARTICLE II

## GRANTING CLAUSES; CONDITION OF GRANT

**2.1    Grant**. For the purposes of and upon the terms and conditions in this Deed of Trust, Trustor does hereby grant, convey, mortgage, transfer, and assign to Trustee, in trust for the benefit of Beneficiary, with power of sale and right of entry and possession, all of Trustor's right, title and interest, whether now owned or hereafter acquired, in or to all of the property and rights listed in paragraph (a) through (k) below (collectively called the "Property").

**(a)    Land**. All estate, right, title and interest of Trustor in, to, under or derived from the Land.

**(b)    Improvements**. All right, title and interest of Trustor in, to, under or derived from all buildings, structures, facilities and other improvements of every kind and description now or hereafter located on the Land, including all parking areas, roads, driveways, walks, fences, walls, drainage facilities and other site improvements, all water, sanitary and storm sewer, drainage, electricity, steam, gas, telephone and other utility equipment and facilities, all plumbing, lighting, heating, ventilating, air-conditioning, refrigerating, incinerating, compacting, fire, protection and sprinkler, surveillance and security, public address and communications equipment and systems, partitions, elevators, escalators, motors, machinery, pipes, fittings and other items of equipment of every kind and description now or hereafter located on the Land or attached to the improvements which by the nature of their location thereon or attachment thereto are real property under applicable law; and including all materials intended for the construction, reconstruction, repair, replacement, alteration, addition or improvement of or to such buildings, equipment, fixtures, structures and improvements, all of which materials shall be deemed to be part of the Property immediately upon delivery thereof on the Land and to be part of the improvements immediately upon their incorporation therein (collectively called the "Improvements").

**(c)    Appurtenant Rights**. All easements and rights-of-ways, strips and gores of land, streets, ways, alleys, passages, sewer rights, water, water courses, water rights and powers, air rights and development rights, liberties, tenements, hereditaments and appurtenances of any nature whatsoever, in any way belonging, relating or pertaining to the Land or the Improvements and the reversions, remainders, and all the estates, rights, titles, interests, property, possession, claim and demand whatsoever, both in law and in equity, of Trustor of, in and to the Land and the Improvements and every part and parcel thereof, with the appurtenances thereto.

**(d)    Equipment**. All machinery, equipment, instruments, fixtures, inventory, building materials and articles of personal property and accessions thereof and additions, renewals, replacements thereof, substitutions therefore and Proceeds thereof, and other tangible property of every kind and nature whatsoever owned by Trustor, or in which Trustor has or shall have an interest, now or hereafter located upon the Land, or appurtenance thereto, used in connection with the present or future operation and occupancy of the Land or the Improvements (collectively called the "Equipment").

Case: 09-12536    Doc# 32-1    Filed: 08/26/09    Entered: 08/26/09 11:54:46    Page 13 of 30

(e)     **Permits**.  To the extent assignable, all estate, right, title and interest of Trustor in, to, under or derived from all licenses, authorizations, certificates, variances, consents, approvals and other permits, now or hereafter pertaining to the Land and the Improvements and all estate, right, title and interest of Trustor in, to, under or derived from all trade names or business names relating to the Land or the Improvements or the present or future development, construction, operation or use of the Land or the Improvements (collectively called the "Permits").

(f)     **Leases**.  (i) All Leases, and (ii) the right during a period of Default and following an Event of Default to bring actions and proceedings under the Leases or for the enforcement thereof and to do anything which Trustor or any lessor is or may become entitled to do under the Leases (but subject to the license for collection of Rents described in Section 2.3(b) hereof).

(g)     **Rents, Issues and Profits**.  All Rents, which Trustor hereby irrevocably directs be paid to Beneficiary, subject to the license granted to Trustor pursuant to Section 2.3(b) herein, to be held, applied and disbursed as provided in this Deed of Trust.

(h)     **General Intangibles, Payment Rights and Agreements**.  All estate, right, title and interest of Trustor in, to, under or derived from all contract rights, chattel paper, instruments, general intangibles, computer software and intellectual property, accounts, guaranties and warranties, letters of credit, and documents, in each case relating to the Property or to the present or future development, construction, operation or use of the Property, and, to the extent assignable, all plans, specifications, maps, surveys, studies, books of account, records, files, insurance policies, guarantees and warranties, all relating to the Property or to the present or future development, construction, operation or use of the Property, all architectural, engineering, construction and management contracts, all supply and service contracts for water, sanitary and storm sewer, drainage, electricity, steam, gas, telephone and other utilities relating to the Property.

(i)     **Proceeds and Awards**.  Subject to the terms hereof, all awards of payments, including interest thereon, which may heretofore and hereafter be made with respect to the Property to the extent actually received by Trustor, whether from the exercise of the right of eminent domain (including, but not limited to, any transfer of the Property or part thereof made in lieu of or in anticipation of the exercise of said right), or for any other injury to or decrease in the value of the Property, including, without limitation, insurance proceeds.

(j)     **Receivables and Accounts**.  All right, title and interest of every nature of Trustor in all receivables and other accounts of Trustor relating to the Property and in all monies deposited or to be deposited in any funds or accounts maintained or deposited with Beneficiary, or its assigns, in connection herewith, if any.

(k)     **Further Property**.  All estate, right, title and interest of Trustor in, to, under or derived from the Property hereafter acquired by Trustor, and all right, title and interest of Trustor in, to, under or derived from all extensions, improvements, betterment, renewal substitutions and replacements of, and additions and appurtenances to the Property hereafter

5/3/05                                             8

Case: 09-12536    Doc# 32-1    Filed: 08/26/09    Entered: 08/26/09 11:54:46    Page 14 of 30

acquired by or released to Trustor or constructed or located on, or attached to, the Land or the Property.

**2.2    Obligations Secured.**

(a)    **Obligations Secured.**  Trustor makes this grant and assignment for the purpose of securing the following obligations (hereinafter "<u>Obligations</u>"):

(i)    Full and punctual payment to the Beneficiary of all sums at any time owing under the Note; and

(ii)    Full and punctual payment and performance of all covenants and obligations of Trustor under this Deed of Trust including, without limitation, indemnification obligations and advances made by Beneficiary pursuant to the terms of the Loan Documents to protect the Property; and

(iii)    Full and punctual payment, performance and observance by Trustor of each other term, covenant, agreement, requirement, condition and other provision to be performed or observed by Trustor under any Loan Document (other than the Guaranties, Environmental Indemnity Agreement and any other guaranty); and

(iv)    Full and punctual payment and performance of all future advances and other obligations that the then record owner of all or part of the Property may agree to pay and/or perform (whether as principal, surety or guarantor) for the benefit of Beneficiary, when such future advance or obligation is evidenced by a writing which recites that it is secured by this Deed of Trust; and

(v)    All interest and charges on all obligations secured hereby including, without limitation, prepayment charges (if any), late charges and loan fees; and

(vi)    All modifications, extensions, replacements and renewals of any of the obligations secured hereby, however evidenced, including, without limitation: (i) modifications of the required principal payment dates or interest payment dates or both, as the case may be, deferring or accelerating payment dates wholly or partly; or (ii) amendments, modifications, extensions or renewals at a different rate of interest whether or not any such amendment, modification, extension or renewal is evidenced by a new or additional promissory note or notes.

(b)    **Obligations.**  The term "<u>Obligations</u>" is used herein in its broadest and most comprehensive sense and shall be deemed to include, without limitation, all interest and charges, prepayment charges (if any), late charges and loan fees at any time accruing or assessed on any of the Obligations.

(c)    **Incorporation.**  All terms and conditions of the documents which evidence any of the Obligations are incorporated herein by this reference. All persons who may have or acquire an interest in the Property shall be deemed to have notice of the terms of the

5/3/05                                                  9

Obligations and to have notice that the rate of interest on one or more Obligation may vary from time to time.

**2.3    Fixture Filing.**

(a)    **Fixture Filing.**  Pursuant to the California Uniform Commercial Code (the "UCC"), as amended and recodified from time to time, this Deed of Trust shall constitute a Fixture Filing recorded in the real estate records.

(b)    **Description of Collateral.**  This Fixture Filing covers the Collateral, as defined in Section 3.26.

(c)    **Relation of Fixture Filing To Deed of Trust.**  Some or all of the Collateral above may be or become a fixture in which Beneficiary has a security interest under Section 3.26 below.  However, nothing herein shall be deemed to create any lien or interest in favor of Trustee under this Deed of Trust in any such personal property Collateral which is not a fixture, and the purpose of this Section 2.3 is to create a fixture filing under the UCC, as amended or recodified from time to time.  The rights, remedies and interests of Beneficiary under this Deed of Trust and the Security Agreement are independent and cumulative, and there shall be no merger of any lien hereunder with any security interest created by the Security Agreement.  Beneficiary may elect to exercise or enforce any of its rights, remedies, or interests under either or both this Deed of Trust or the Security Agreement as Beneficiary may from time to time deem appropriate.

(d)    **Limitations.**  Except as otherwise clearly and expressly provided in the Loan Documents:  (i) Beneficiary has not consented to any other security interest of any other person in any fixtures and has not disclaimed any interest in any fixtures; and (ii) Beneficiary has not agreed or consented to the removal of any fixtures from the Land or the Improvements, and any such consent by Trustor shall not be binding on Beneficiary.

(e)    **Possession and Use of Collateral.**  Notwithstanding the provisions of this Section 2.3, so long as no Event of Default exists under this Deed of Trust or under any of the other Loan Documents, Trustor may possess, use, move, transfer or dispose of any of the Collateral in the ordinary course of Trustor's business.

## ARTICLE III

## CERTAIN AGREEMENTS BY TRUSTOR

Trustor represents, warrants, covenants and agrees with Trustee and Beneficiary as of the Closing Date that:

**3.1    Title.**  Trustor is (a) the owner of the Property and holds legal title in fee to the Property, (b) except for the Permitted Encumbrances, the owner of all of the beneficial and/or equitable interest in and to the Property, and (c) lawfully seized and possessed of the Property.  Trustor has the right and authority to convey the Property and does hereby warrant generally, and agrees to defend, the Property and the title thereto, whether now owned or hereafter acquired,

5/3/05                                               10

Case: 09-12536    Doc# 32-1    Filed: 08/26/09    Entered: 08/26/09 11:54:46    Page 16 of 30

against all Claims by any Person. The Property is subject to no Encumbrances other than the Permitted Encumbrances. Trustor has good title to the Personalty, and the Personalty is not subject to any Encumbrance other than the Permitted Encumbrances. The Leases and Rents are not subject to any Encumbrance other than the Permitted Encumbrances.

**3.2    Further Assurances.** At any time, and from time to time, upon the reasonable request by Beneficiary, the Trustor will, at Trustor's expense, (a) correct any defect, error or omission which may be discovered in the form or content of any of the Loan Documents, and (b) make, execute, deliver and record, or cause to be made, executed, delivered and recorded, any and all further instruments, certificates, and other documents as may, in the opinion of Beneficiary, be necessary in order to complete, perfect or continue and preserve the Lien of this Deed of Trust, but Trustor's obligations as set forth herein shall not be expanded thereby and Trustor's rights as set forth herein shall not be diminished thereby. With respect to any financing statement, Trustor agrees that a carbon, photographic or other reproduction of a security agreement or a financing statement is sufficient as a financing statement for purposes of the UCC.

**3.3    Taxes.** For purposes of this Deed of Trust, the following provisions shall be applicable to the payment of Property Assessments.

**(a)    Payment by Trustor.** Trustor shall (i) pay (or cause to be paid) all Property Assessments not later than the date that same are due and before any interest or penalty for nonpayment attaches thereto; (ii) pay (or cause to be paid) when due any ad valorem or excise tax or other public charge (other than any tax in the nature of an income tax) imposed or levied upon the Loan Documents, including any interest and penalties incurred in connection therewith; and (iii) within thirty (30) days after the due date of any installment, thereof submit to Beneficiary evidence satisfactory to Beneficiary of the payment of each Property Assessment. Trustor shall have the right to contest in good faith the amount or validity of any Property Assessment or Law by appropriate administrative or judicial proceedings conducted promptly and at Trustor's sole expense, but such proceedings shall not be deemed to relieve Trustor of its covenant hereunder to pay such Property Assessment at the time and in the manner herein provided, or to extend the time for such payment, unless (w) such proceedings operate to prevent the collection of, or other realization upon, such Property Assessments or enforcement of the Law so contested, (x) there will be no sale, forfeiture or loss of any of the Property during the contest, (y) neither Beneficiary nor Trustee is subjected to any Claim, and (z) Trustor provides assurances reasonably satisfactory to Beneficiary (including, without limitation, setting aside reserves in the amount of the unpaid Property Assessments) of its ability to pay such Property Assessments or comply with such Law (including an additional charge, penalty or expense arising from or incurred as a result of any such proceeding) in the event Trustor is unsuccessful in its contest. Trustor shall provide Beneficiary with prior written Notice of any such contest or other action. Each such contest shall be promptly prosecuted to final conclusion or settlement, and Trustor shall indemnify and save Beneficiary and Trustee harmless against all Claims in connection therewith. Promptly after the settlement or conclusion of such contest or action, Trustor shall comply with such Law and/or pay and discharge the amounts which shall be levied, assessed or imposed or determined to be payable, together with all penalties, fines, interests, costs and expenses in connection therewith.

5/3/05                                                    11

Case: 09-12536    Doc# 32-1    Filed: 08/26/09    Entered: 08/26/09 11:54:46    Page 17 of 30

**(b)** **Payment by Beneficiary**. If Trustor fails to pay any Property Assessment as required hereunder, and, as a result of such failure, an Event of Default exists hereunder, Beneficiary, acting in its reasonable discretion, shall be entitled to make such payment according to any bill, statement or estimate procured from the appropriate Governmental Authority without making inquiry into the accuracy of such bill, statement or estimate or into the validity of such Property Assessment, sale, forfeiture, tax lien, or title or claim thereof.

**3.4** **Maintenance and Repair of the Property.** Trustor, at its sole expense, will (a) keep and maintain the Property in good condition, working order and repair, (b) make all necessary or appropriate repairs and Additions to the Property so that each part of the Property shall at all times be in good condition and fit and proper for the respective purposes for which they were intended, erected, or installed, (c) not permit, commit or suffer any physical waste of the Property, (d) promptly repair, restore, replace or rebuild any part of the Property now or hereafter subject to the lien of this Deed of Trust which may be damaged or destroyed by any casualty whatsoever or which may be affected by any proceeding of the character referred to in the provisions of Section 3.8 hereof, (e) obey and comply with all Laws, (f) observe and comply with all conditions and requirements necessary to preserve and extend any and all rights, licenses, permits (including, by way of example rather than of limitation, all zoning variances, special exceptions and nonconforming uses), privileges, franchises and concessions which are applicable to the Property or are granted to or contracted for by Trustor in connection with existing or contemplated use of the Property, and (g) obey and carry out every material covenant, agreement, restriction and encumbrance contained in any instrument recorded among the Official Records of Marin County, California, or known to Trustor, which may from time to time be in force and apply to or affect the Property or Trustor's interest therein, and shall not use (and shall use its best efforts not to permit the use by others of) any or all of the Property in contravention thereof. Trustor represents and warrants, as of the Closing Date, that to Trustor's actual knowledge except as to conditions which otherwise have been disclosed to Beneficiary in writing, the Property is in good repair and free and clear of any damage that would materially and adversely affect the value of the Property as security for the Loan or the intended use of the Property.

**3.5** **Legal Actions.** Trustor represents and warrants to Beneficiary as of the Closing Date that there are no (a) claims pending or, threatened in writing, against or affecting Trustor or Trustor's business; (b) claims, pending, or to Trustor's actual knowledge, threatened in writing against or affecting the Property, (c) investigations at law or in equity, before or by any court or Governmental Authority, pending, or threatened in writing against or affecting Trustor or Trustor's business, or (d) investigations at law or in equity before or by any court or Governmental Authority, pending, or to Trustor's actual knowledge, threatened in writing against the Property. Trustor represents and warrants to Beneficiary as of the Closing Date that neither Trustor nor the Property is (i) in violation of any Laws in any material respect or (ii) is in default with respect to any order, writ, injunction, decree or demand of any court or any Governmental Authority affecting Trustor or the Property. Trustor shall comply with and not violate, and use its best efforts to cause to be complied with and not violated by others, all present and future Laws applicable to the Property and its use and operation. Trustor shall promptly give Beneficiary written notice of the receipt of any notice of failure to comply with or violation of any Laws.

Case: 09-12536    Doc# 32-1    Filed: 08/26/09    Entered: 08/26/09 11:54:46    Page 18
of 30

**3.6      Existing Improvements.**  Except as disclosed in writing to Trustor, Trustor represents and warrants to Beneficiary as of the Closing Date that the existing Improvements are being maintained, in accordance with all applicable Laws, including, without limitation, zoning Laws.

**3.7      Insurance.**  Trustor shall maintain the following insurance at its sole cost and expense:

(a)      <u>All-Risk Insurance</u>. Trustor, at Trustor's sole cost and expense, shall keep the Improvements and Personalty insured at all times, for the mutual benefit of Beneficiary and Trustor, against loss or damage by fire and such other hazards and risks as are now or hereafter embraced by so-called "all risk" coverage. Such coverage shall include, without limitation, earthquake insurance in a form reasonably acceptable to Beneficiary. Earthquake insurance shall be in an initial amount of $19,000,000 and shall be subject to adjustment, as reasonably determined by Beneficiary from time to time, to reflect the replacement value of the Improvements. No insurance policy affording any property insurance coverage required under this Agreement shall, without Beneficiary's prior written consent, provide for any deductible (or similar optional monetary limitation) that is greater than: (i) with respect to earthquake insurance, the lesser of five percent (5%) of the replacement value of the Personalty and the Improvements or One Hundred Thousand Dollars ($100,000), and (ii) for all other insurance (except as provided in subparagraph (b)(ii) below), Twenty Five Thousand Dollars ($25,000).

(b)      <u>Other Insurance</u>.  Trustor, at Trustor's sole cost and expense, but for the mutual benefit of Trustor and Beneficiary, shall maintain and keep in full force and effect at all times:

(i) Liability insurance against claims for personal or bodily injury, death or property damage, occurring on, in or about the Property and Improvements or the immediately adjoining sidewalks, vaults, curbs, property and passage-ways, under a broad form policy of commercial general liability insurance (Form CG0001), with a combined single limit or separate limits, if separate limits shall hereafter commonly be required by prudent institutional lenders and if available at commercially reasonable rates (in the case of premises similarly situated, due regard being given to the site and the type of the building, the type of construction, the stage of construction, location, utilities and occupancy or any replacements or substitutes therefore (such qualification being hereinafter referred to as requirements of "prudent lenders on comparable premises")). Such insurance, including excess umbrella liability coverage, shall afford protection of not less than Three Million Dollars ($3,000,000) per occurrence (which amount shall be increased from time to time at Beneficiary's request to amounts comparable to amounts required to be carried by prudent lenders on comparable premises), which insurance shall include, without limitation, water damage and/or other legal liability coverage to the extent commonly required by prudent institutional lenders on comparable premises, and broad form contractual, broad form property damage, contractors protective, products and completed operations liability coverage. No insurance policy affording any liability insurance coverage required under this Agreement shall, without Beneficiary's prior written consent, provide for any deductible (or similar optional monetary limitation) in excess of Twenty Five Thousand Dollars ($25,000) per occurrence.

5/3/05                                          13

Case: 09-12536    Doc# 32-1    Filed: 08/26/09    Entered: 08/26/09 11:54:46    Page 19 of 30

(ii)     Worker's compensation insurance, in accordance with all Laws, and Employer's Liability insurance in an amount not less than Five Hundred Dollars ($500,000) per accident and Five Hundred Dollars ($500,000) per disease.

(iii)    Boiler and machinery insurance, in form and in amounts reasonably satisfactory to Beneficiary, which insurance shall be written on a comprehensive form and appropriately coordinated under a "joint loss agreement" (or the equivalent) with the "all-risk" property coverage herein-above described (including earthquake coverage), and shall cover all steam, mechanical and electrical equipment, including, without limitation, any boilers, pressure vessels, pressure piping, components of central heating, ventilation or air conditioning systems, or similar apparatus, installed in the Improvements.

(iv)    Rental insurance against loss due to fire or other hazards and risks now or hereafter embraced by the "all risk" property insurance and boiler and machinery insurance hereinabove described (including earthquake coverage), with an extended indemnity endorsement reasonably satisfactory to Beneficiary, in an amount not less than the annual gross rental value of the Property and sufficient, in any event, to pay all operating expenses for the Property and debt service payable by Trustor, for at least one year.

(v)     If any part of the Property is located in an area identified by the Secretary of Housing and Urban Development as an area having special flood hazards and in which flood insurance has been made available under the National Flood Insurance Act of 1968 and the Flood Disaster Protection Act of 1973, as the same may have been or may hereafter be amended or modified (and any successor acts thereto), insurance against loss by flood in an amount reasonably acceptable to Beneficiary or the maximum limit of coverage available with respect to such Improvements under said Acts, whichever is less.

(vi)    Additional insurance in such amounts as may from time to time be reasonably required by Beneficiary, insuring against insurable risks which at the time are commonly required to be insured against by prudent lenders on comparable premises.

(c)     Blanket Policy.  All insurance required by this Section may be in the form of a so-called blanket policy, provided that Trustor furnishes Beneficiary with proof reasonably satisfactory to Beneficiary that such blanket policy complies in all respects with the provisions of this Section, that the coverage available for application to the insurance required by this Section is at least equal to the coverage that would be provided under a separate policy covering only the insurance requirements of this Section, and that such blanket and/or umbrella policy does not contain any provision that would reduce the insurance coverage below full replacement value of the Improvements and Personalty with respect to the insurance required in Section 3.7(a) or otherwise below the level required hereunder, upon the occurrence of any loss or claim at any other location covered by such blanket and/or umbrella policy.

(d)     Copies.  Simultaneously with the execution and delivery of this Agreement, Trustor shall deliver to Beneficiary evidence of insurance required to be furnished pursuant to

Case: 09-12536    Doc# 32-1    Filed: 08/26/09    Entered: 08/26/09 11:54:46    Page 20 of 30

this Agreement. Thereafter, at least twenty (20) days prior to the cancellation date or expiration of any such policy during the term of this Agreement, Trustor shall deliver to Beneficiary a certificate (on Accord 27 Form) of such policy, together with proof that all premiums due in connection therewith have been paid in full for a period of not less than one (1) year. All policies of insurance shall be non-assessable and shall be in form reasonably satisfactory to Beneficiary and shall be issued by companies authorized to do business in the State of California with an AIM Best Company Rating Guide rating of at least "A:10" or a Standard & Poor's Corporation rating of at least "A minus". All policies of insurance relating to the insurance provided for in Section 3.7(a) and Sections 3.7 (b)(iii), (iv), (v) and (vi) shall name Beneficiary as Loss Payee/Mortgagee pursuant to a standard non-contributory mortgagee clause or its equivalent. All policies of insurance provided for in Sections 3.7(b)(i) and (ii) shall name Beneficiary and each Lender as an additional insured.

(e) <u>Adjustment</u>. Trustor shall not agree to any adjustment of any claim greater than Two Hundred Fifty Thousand Dollars ($250,000) with respect to any insurance relating to the Property without the prior written consent of Beneficiary in each instance, which consent shall not be unreasonably withheld or delayed.

(f) <u>No Changes</u>. Each policy furnished hereunder shall contain (i) a provision that no act or omission of Trustor or any other named insured shall affect or limit the obligation of the insurance company to pay the amount of any loss sustained, for the benefit of Beneficiary and each Lender, and (ii) an agreement by the insurer (A) that such policy shall not be canceled or allowed to expire for any reason without at least thirty (30) days' prior written notice to Beneficiary, and (B) that the insurer will accept performance by Beneficiary or any Lender of Trustor's obligations under such policy as if performed by Trustor. All references to Beneficiary in any insurance policy, endorsement, certificate, binder or certified copy shall be exactly as follows (unless or until Beneficiary advises Trustor otherwise): "Integrity Bank, and its successors, assigns and affiliates, as their interests may appear, 11140 State Bridge Road, Alpharetta, Georgia, 30022".

(g) <u>No Limit</u>. Beneficiary shall not be limited, in the proof of any action or claim that such Person may take or make against Trustor arising out of or by reason of Trustor's failure to provide and keep in force insurance as aforesaid, to the amount of any insurance premium or premiums not paid by Trustor and that would have been payable with respect to such insurance. In addition to its other rights hereunder or otherwise, Beneficiary shall be entitled to recover for any such failure to provide and keep the insurance required hereunder in force all damages, costs and expenses suffered or incurred by reason of them Trustor's failure to provide insurance as aforesaid.

(h) <u>Failure to Procure Insurance</u>. If at any time Beneficiary is not in receipt of written evidence that all insurance required hereunder is in full force and effect, or if at any time Trustor shall fail to deliver written evidence of the renewal of any insurance policy not later than ten (10) days prior to the expiration or cancellation date of such insurance policy, with reasonable satisfactory evidence of payment as set forth in this Section, then Beneficiary shall have the right after two (2) business days' written notice to Trustor (but shall have no obligation) to take such action as Beneficiary deems reasonably necessary to protect its interest and the

Case: 09-12536    Doc# 32-1    Filed: 08/26/09    Entered: 08/26/09 11:54:46    Page 21 of 30

interest of each of the Lenders in the Property, including, without limitation, the obtaining of such insurance coverages as Beneficiary in its reasonable discretion deems appropriate, and all reasonable expenses incurred by Beneficiary in connection with such action or in obtaining such insurance and keeping it in effect shall be paid Trustor to Beneficiary within five (5) days after demand. All such costs or expenses not paid by Trustor as aforesaid shall be secured by this Agreement.

        (i)     <u>Increases</u>. The amounts of all insurance required hereunder shall be reviewed by Trustor and Beneficiary on an annual basis and shall be increased from time to time at the Beneficiary's reasonable request to amounts comparable to amounts required to be carried by prudent lenders on comparable premises.

        (j)     <u>No Limit</u>. No insurance coverage required pursuant to this Section shall be subject to any aggregate annual limit such that any required per occurrence limit could be impaired. All liability insurance required hereunder shall be written an "occurrence" basis.

        (k)     <u>Separate Insurance</u>.    Trustor shall not obtain separate insurance concurrent in form with or contributing in the event of loss to that required to be maintained hereunder unless Beneficiary and each Lender is included thereon as a named insured, mortgagee, additional insured and/or loss payee, as may be specified by Beneficiary, and is furnished with the applicable evidence, as required by this Section and such insurance is otherwise satisfactory to Beneficiary, in its reasonable judgment, in all respects.

### 3.8    Adjustment of Casualty and Condemnation Claims.

        (a)     Trustor shall give prompt written Notice to Beneficiary of any Casualty, Condemnation or threatened (in writing) Condemnation. Beneficiary is authorized, at Trustor's sole expense, to appear in, any action or proceeding relating to any Condemnation or Casualty. Trustor shall not settle or compromise any Claim in connection therewith without the prior written consent of Beneficiary, which consent shall not be unreasonably withheld or delayed, so long as Beneficiary's security is not impaired. If, prior to the receipt by Beneficiary of any Condemnation Award or insurance proceeds, the Property shall have been sold pursuant to the provisions of <u>Section 4.2</u>, Beneficiary shall have the right to receive such funds to the extent of (a) any deficiency found to be due upon such sale, with interest thereon (whether or not a deficiency judgment on this Deed of Trust shall have been sought or recovered or denied), and (b) additional amounts necessary to reimburse Beneficiary for its Expenses. Trustor agrees to execute and deliver from time to time, upon the request of Beneficiary, such further instruments or documents as may be requested by Beneficiary to confirm the grant and assignment to Beneficiary of any Condemnation Awards or insurance proceeds.

        (b)     The following rights, claims and amounts are hereby absolutely and irrevocably assigned to and shall be paid to Beneficiary (subject to Trustor's rights under <u>Section 3.9(b)</u> below): (i) all awards of damages and all other compensation payable directly or indirectly by reason of a condemnation or proposed condemnation for public or private use affecting all or any part of, or any interest in, the Property; (ii) all other claims and awards for damages to or decrease in value of all or any part of, or any interest in, the Property; (iii) all proceeds of any

Case: 09-12536   Doc# 32-1   Filed: 08/26/09   Entered: 08/26/09 11:54:46   Page 22 of 30

insurance policies payable by reason of loss sustained to all or any part of the Property (other than rent loss insurance so long as there is no Event of Default existing under this Deed of Trust or under any of the other Loan Documents), whether or not such insurance policies are required by Beneficiary; and (iv) all interest which may accrue on any of the foregoing (collectively, "Net Proceeds").

      **3.9    Application of Net Proceeds.** Subject to the right of Beneficiary to the distribution of any remaining Net Proceeds before distribution to Trustor, Net Proceeds shall be disbursed as follows:

      (a)    Trustor shall have the right to use all or a portion of any Net Proceeds to restore the Property, provided, that (i) no Event of Default has occurred and is continuing, (ii) the Improvements, as restored, will comply with all material building, zoning and other land use laws and regulations, (iii) the restoration of the Improvements is practicable and can be completed within twelve (12) months after the Casualty or Condemnation and at least three (3) months prior to the final maturity of the Loan secured hereby, (iv) rebuilding of the Improvements is permitted by all applicable laws and ordinances; and (v) if the plans for rebuilding call for a structure or structures materially different in location on the Property, size or design, such plans shall be approved by Beneficiary, with such approval not to be unreasonably withheld or delayed. Such proceeds shall be made available by Beneficiary to Trustor pursuant to disbursement procedures contained in the Construction Loan Agreement entered into between Trustor and Beneficiary and dated as of an even date herewith or, if such proceeds are less than $100,000.00, promptly upon Beneficiary's receipt of such proceeds. Any such restoration shall be commenced within a reasonable time after the occurrence of the Casualty or Condemnation and shall be prosecuted to completion diligently, and the Property shall be so restored and rebuilt to substantially the same character and condition as prior to such damage and destruction and shall materially comply with all material building codes and zoning requirements. No work required to be performed pursuant to this Section (except with respect to work costing less than $100,000.00) shall be undertaken until plans and specifications for such work have been prepared and signed by an architect or engineer reasonably satisfactory to Beneficiary and approved by all governmental authorities whose approval is required. If any Net Proceeds paid to Beneficiary are not used to restore the Property (or are not available to be used to restore the Property because the conditions set forth above have not been satisfied), such Net Proceeds may be applied by Beneficiary to pay down the Loan secured hereby.

      (b)    Trustor hereby authorizes and directs any affected insurance company and any affected governmental body responsible for such condemnation to make payment of any Net Proceeds to Beneficiary and Trustor jointly. If Trustor receives any Net Proceeds, Trustor shall promptly deposit such Net Proceeds in a joint account for the benefit of Beneficiary and Trustor. Trustor hereby covenants that until such Net Proceeds are so deposited, Trustor shall hold such Net Proceeds in trust for the benefit of Beneficiary and shall not commingle such Net Proceeds with any other funds or assets of Trustor or any other party. Following an Event of Default and during such time as an Event of Default continues, Beneficiary may commence, appear in, defend or prosecute any assigned right, claim or action, and may adjust, compromise, settle and collect all rights, claims, actions and awards assigned to Beneficiary, but shall not be responsible

Case: 09-12536   Doc# 32-1   Filed: 08/26/09   Entered: 08/26/09 11:54:46   Page 23 of 30

for any failure to collect any such right, claim, action or award, regardless of the cause of the failure.

      **(c)**    **Indemnification**. Trustor shall appear in and defend any suit, action or proceeding that might in the judgment of Beneficiary affect the value of the Property, the title to the Property, or the rights and powers of Trustee or Beneficiary. Trustor also shall defend, indemnify and hold harmless Trustee and Beneficiary (collectively, the "Indemnified Parties") from and against all liabilities, obligations, claims, damages, penalties, causes of action, costs and expenses imposed upon or incurred by or asserted against Trustee and/or Beneficiary by reason of any matter whatsoever (other than matters covered in Section 3.15, which contains a separate indemnification provision with respect to Hazardous Materials) relating to the Property or the use, non-use or condition of any thereof, including but not limited to, any accident, injury to or death of persons or loss of or damage to the Property or other personal property owned by third parties occurring on or about the Property or the adjoining sidewalks, curbs, streets or ways and/or by reason of any failure by Trustor to perform any Obligations. If any action, suit or other proceeding is brought against any of the Indemnified Parties by reason of any such occurrence, then Beneficiary shall have the right to select counsel reasonably acceptable to Beneficiary.

      **3.10**    **Transfer of the Property**. Trustor shall not cause, permit or suffer a Transfer of (i) all or any part of the Property or any legal or beneficial interest therein (other than sales or disposal of equipment in the ordinary course of business) or (ii) any interests in, or shares of, Trustor, except as specifically provided in Section 6.19 of this Deed of Trust.

      **3.11**    **Right to Perform**. If Trustor fails to promptly pay or perform any of the Obligations and such failure continues beyond the expiration of applicable notice and cure periods, Beneficiary, without waiving or releasing any Obligation or Default, may (but shall be under no obligation to) at any time thereafter make such payment or perform such act for the account and at the expense of Trustor. Beneficiary may enter upon the Property for that purpose and take all action thereon as Beneficiary considers necessary or appropriate, provided that Beneficiary shall exercise reasonable care. All Expenses incurred by Beneficiary pursuant to this Section, together with interest thereon at the Involuntary Rate, shall be paid by Trustor to Beneficiary as provided in Section 3.18.

      **3.12**    **Estoppel Certificates; Beneficiary's Statement**.

      **(a)**    Within ten (10) days after any request by Beneficiary or a proposed assignee or purchaser of the Loan, Trustor shall certify in writing to Beneficiary or to such proposed assignee or purchaser, the then unpaid balance of the Loan and whether Trustor to its actual knowledge has any right of defense or setoff to the payment or performance of any of the Obligations and such other matters as may be reasonably requested by Beneficiary or such proposed assignee or purchaser.

      **(b)**    All Leases (if any) entered into after the date hereof shall require the tenant to execute and deliver to Beneficiary or any proposed assignee or purchaser of the Loan designated by Beneficiary an estoppel certificate in form and substance reasonably acceptable to Beneficiary, from time to time upon request. Trustor shall exercise its right to require tenants to

5/3/05

18

execute and deliver such estoppel certificate within ten (10) days after written request from Beneficiary.

(c)     From time to time as required by applicable law, Beneficiary shall furnish to Trustor such statement as may be required concerning the condition of the obligations secured hereby. Upon demand by Beneficiary, Trustor shall pay Beneficiary's reasonable costs incurred in furnishing such statement, but not in excess of the maximum amount allowed by applicable Law.

### 3.13    Management; Records; Financial Information.

(a)     Trustor at all times shall provide for the competent and responsible management and operation of the Property. Any management contract or contracts affecting the Property must be approved in writing by Beneficiary prior to the execution of the same, which approval shall not be unreasonably withheld or delayed, including any reasonable amendments to the current property management agreement. Trustor shall promptly notify Beneficiary of any changes in the executive management of the Property or any material changes in the operation of the Property.

(b)     Trustor will keep and maintain full and accurate records and books administered in accordance with commercially reasonable accounting principles, consistently applied, showing in detail the earnings and expenses of the Property and the operation thereof. Trustor shall permit Beneficiary, or any Person authorized by Beneficiary, upon reasonable prior notice to inspect and examine such records and books (regardless of where maintained) and all supporting vouchers and data and to make copies and extracts therefrom at all reasonable times and as often as may be requested by Beneficiary. In addition, Trustor shall provide Beneficiary with annual financial statements (balance sheet, income statement and cash flow statements) for Trustor reviewed by a Certified Public Accountant and certified by Trustor to be true and correct, within ninety (90) days after the end of each year, tax returns for the Trustor and each Guarantor within fifteen (15) days after each tax return is filed and such other reports as to the operating results of the Property as may be required or reasonably requested by Beneficiary from time to time. Beneficiary shall have the right to conduct an independent audit of the financial statements described above at the Beneficiary's expense at any time. Trustor shall cooperate with the audit and verification of any such statement.

(c)     Trustor will not perform or allow to be performed any work at the Property, other than (i) standard tenant improvement work pursuant to Leases, on commercially reasonable terms, and (ii) alterations, improvements, demolitions or removals of the Property or any portion thereof that do not materially and adversely affect the value of the Property, without the prior written consent of Beneficiary. Trustor will complete and pay for, within a reasonable time, any work which Trustor is permitted to undertake at the Property. Trustor will construct and erect (or cause to be constructed or erected) any permitted improvements (i) strictly in accordance with all applicable Laws and any private restrictive covenants, (ii) when Beneficiary's consent is required, pursuant to plans and specifications approved by Beneficiary, (iii) entirely within the boundaries of the Property, (iv) so as not to encroach upon any easement or right of way or upon the land of others, (v) wholly within any building restriction lines

5/3/05                                          19

applicable to the Land. All right, title and interest of Trustor in and to all Improvements and Additions hereafter constructed or placed on the Property and in and to any Equipment hereafter acquired shall, without any further deed of trust, conveyance, assignment or other act by Trustor, become subject to the Lien of this Deed of Trust as fully and completely, and with the same effect, as though now owned by Trustor and specifically described in the granting clauses hereof. Trustor agrees, however, to execute and deliver to Trustee and/or Beneficiary such further documents as may be required pursuant to Section 3.2 hereof.

**3.14    Subrogation.** To the extent permitted by Law, Beneficiary shall be subrogated, notwithstanding its release of record, to any Lien now or hereafter existing on the Property to the extent that such Lien is paid or discharged by Beneficiary whether or not from the proceeds of the Loan. This Section shall not be deemed or construed, however, to obligate Beneficiary to pay or discharge any Lien.

**3.15    Responsibility for Compliance with Environmental Laws**

(a)    Trustor hereby does represent and warrant that, except as disclosed in writing to Beneficiary, to its actual knowledge, (i) no Hazardous Materials are located on the Property in violation of Environmental Laws, (ii) the Property has never been used as a manufacturing, storage or dump site for Hazardous Materials, nor is the Property affected by any Hazardous Materials Contamination, (iii) there is no past, present, or threatened action, proceeding or investigation by any governmental authority or agency related to any suspected or actual violation of any Environmental Law with respect to, or the presence of any Hazardous Material on, the Property, and (iv) the Property and its current use and presently contemplated uses comply with all Environmental Laws, and all necessary permits, licenses, authorizations, and other consents and approvals have been obtained, and all necessary notices, publications, and filings have been made and given, with respect to the storage, use, and disposal of any Hazardous Materials in, on, or about the Property. Even though Trustor may have previously provided Beneficiary with a Phase I environmental report or similar document together with other relevant information regarding the environmental condition of the Property, Trustor acknowledges that such deliveries do not negate (i) Trustor's obligations under this Agreement or the Environmental Indemnity Agreement, or (ii) the covenants of Trustor with respect to the Property's compliance with Environmental Laws. Beneficiary has relied upon the representations and warranties of Trustor in this Deed of Trust.

(b)    Trustor shall, and Trustor shall use its best efforts to cause all employees, agents, contractors, and tenants of Trustor and any other persons present on or occupying the Property to, promptly comply with all Environmental Laws, including but not limited to, all health, fire and safety laws and to keep and maintain the Property, including the soil and ground water thereof, in compliance with, and not cause or permit the Property, including the soil and ground water thereof, to be in violation of any Environmental Laws. Neither Trustor nor any employees, agents, contractors, or tenants of Trustor or any other persons occupying or present on the Property shall use, generate, manufacture, store or dispose on, under or about the Property or transport to or from the Property any Hazardous Materials in violation of Environmental Laws.

5/3/05                                         20

(c)     Trustor immediately shall give Beneficiary and Trustee Notice in writing of: (i) any notices from any governmental or quasi-governmental agency or authority of violation or potential violation of any Environmental Law; (ii) any and all enforcement, cleanup, removal or other governmental or regulatory actions instituted, completed or threatened pursuant to any Environmental Law; (iii) all claims made or threatened by any third party against Trustor or the Property relating to damage, contribution, cost recovery compensation, loss or injury resulting from any Hazardous Materials; (iv) any leak, spills, other release or presence of any Hazardous Materials on the Property in violation of Environmental Laws or any Hazardous Materials Contamination with a full description thereof or of any violation of any Environmental Laws (the matters set forth in clauses (i), (ii), (iii) and (iv) above are hereafter referred to as "Hazardous Materials Claims"); and (v) discovery by Trustor or its agents of any occurrence or condition on any real property adjoining or in the vicinity of the Property that is substantially likely to cause the Property to become contaminated by or with Hazardous Materials. Beneficiary shall have the right but not the obligation, at Beneficiary's expense, to join and participate in, as a party if it so elects, any legal proceedings or actions initiated in connection with any Hazardous Materials Claims.

(d)     Trustor shall, and Trustor shall use all reasonable efforts to cause all employees, agents, contractors and tenants of Trustor and any other persons present on or occupying the Property to, promptly comply with any Laws requiring the removal, treatment or disposal of such Hazardous Materials or Hazardous Materials Contamination to the extent required to comply with such Environmental Laws and provide Beneficiary with evidence of such compliance that is satisfactory to Beneficiary.

(e)     Trustor shall be solely responsible for, and shall indemnify, defend, and hold harmless Trustee, Beneficiary, any participants in the Loan, and any financial institution that is an assignee of all or a portion of Beneficiary's interest or such participant's interest in the Loan, and their respective directors, officers, shareholders, partners, members, employees and agents (the "Indemnified Parties"), but no other person or entity, from and against, any loss, damage, cost, expense or liability of whatever kind or nature, known or unknown, contingent or otherwise, directly or indirectly arising out of or attributable to the use, generation, storage, release, threatened release, discharge, disposal, or presence (whether prior to or after the date of the Deed of Trust) of Hazardous Materials on, in, under or about the Property (whether by Trustor, a predecessor in title, any tenant, or any employees, agents, contractor or subcontractors of any of the foregoing or any third persons at any time occupying or present on the Property), including, without limitation: (i) personal injury; (ii) death; (iii) damage to Property; (iv) the cost of any repair, cleanup or detoxification of the Property required to comply with Environmental Laws, to the extent required by such Environmental Laws, including the soil and ground water thereof, and the preparation and implementation of any closure, remedial or other required plans; (v) damage to any natural resources; and (vi) all costs and expenses incurred by any of the Indemnified Parties in connection with the foregoing clauses (i) through (vi), including but not limited to reasonable out-of-pocket attorneys' and consultants' fees; provided, however, that nothing contained in this Section shall be deemed to preclude Trustor from seeking indemnification from, or otherwise proceeding against, any third party including, without limitation, any tenant or predecessor in title to the Property. The covenants, agreements, and indemnities set forth in this Section shall be binding upon Trustor and its heirs, successors and

5/3/05                                              21

Case: 09-12536    Doc# 32-1    Filed: 08/26/09    Entered: 08/26/09 11:54:46    Page 27 of 30

assigns, and shall survive each of repayment of the Obligations, foreclosure of the Property, and Trustor granting a deed in lieu of foreclosure of the Property; provided, however, the covenants, agreements, and indemnities set forth in this Section shall not be binding upon Trustor, its heirs, successors and assigns with respect to any introduction of Hazardous Materials onto the Property which occurs subsequent to the date a receiver is appointed or the date the Beneficiary or any other purchaser has taken title to the Property by foreclosure or deed-in-lieu of foreclosure. Any costs or expenses incurred by any Indemnified Party for which Trustor is responsible or for which Trustor has indemnified any Indemnified Party shall be paid to such Indemnified Party within ten (10) days of written demand, with interest at the Involuntary Rate from the date which is ten (10) days after such demand until paid in full, and shall be secured hereby. Without Beneficiary's prior written consent, which shall not be unreasonably withheld or delayed, Trustor shall not enter into any settlement agreement, consent decree, or other compromise in respect of any Hazardous Material Claims.

(f)     In the event Beneficiary reasonably determines that an investigation of the Property for the presence of Hazardous Materials (an "Environmental Audit") is necessary, Trustor shall retain, upon Beneficiary's request, or Beneficiary may retain directly, at the sole cost and expense of Trustor, a licensed geologist, industrial hygienist or an environmental consultant (referred to hereinafter as the "Consultant") acceptable to Beneficiary to conduct the Environmental Audit. Beneficiary's determination to require an Environmental Audit shall be deemed reasonable only if an Event of Default shall have occurred and be continuing or in the event that Beneficiary has received notice of the likely existence of Hazardous Materials upon or in the Property. The Environmental Audit shall be performed in a manner reasonably calculated to discover the presence of Hazardous Materials Contamination taking into consideration the known uses of the Property and property in the vicinity of the Property and any factors unique to the Property. If Trustor shall fail to pay for or obtain an Environmental Audit as provided for herein, Beneficiary may, but shall not be obligated to, obtain the Environmental Audit, and Trustor within ten (10) days after demand shall repay all costs and expenses incurred by Beneficiary in connection therewith, with interest at the Involuntary Rate from the tenth (10th) day after demand for such payment until paid in full, and such sums so advanced or expended, with interest as aforesaid, shall be secured hereby.  In furtherance of the above, and without limitation of any of its other rights, Beneficiary shall have the right to:

(i)     Obtain a court order to enforce Beneficiary's right to enter and inspect the Property in accordance with California Civil Code Section 2929.5; and

(ii)     to have a receiver appointed under Code of Civil Procedure Section 564 to enforce Beneficiary's right to enter and inspect the Property for the purposes set forth above.

(g)     Trustor shall cooperate with the Consultant and allow entry and access to all portions of the Property for the purpose of Consultant's investigation. Trustor shall comply, at its sole cost and expense, with all recommendations contained in the Environmental Audit reasonably required to bring the Property into compliance with all Environmental Laws and any

Case: 09-12536    Doc# 32-1    Filed: 08/26/09    Entered: 08/26/09 11:54:46    Page 28 of 30

reasonable recommendation for additional testing and studies to detect the quantity and types of Hazardous Materials present, if Beneficiary requires the implementation of the same.

(h)     This Section shall not limit or modify any of the provisions of the Environmental Indemnity Agreement.

### 3.16    Property Contracts.

(a)     Trustor shall not, without Beneficiary's prior written consent, enter into any material contracts with respect to Trustor's ownership and operation of the Property, including, without limitation, contracts for property management. A material contract shall include any contracts not terminable upon not more than ninety (90) days' prior written notice without payment of any penalties or fees, excluding nominal termination fees not to exceed One Thousand Dollars ($1,000), except for elevator contracts, which shall be on terms typical in the Sausalito area.

(b)     Trustor will promptly perform all of its obligations under all Leases. Trustor will not, without the prior written consent of Beneficiary, (i) accept any prepayment of rent for more than one (1) month in advance under any Lease, or (ii) permit a Lien on the Property superior to any Lease, other than the lien of this Deed of Trust.

(c)     All Leases executed after the date hereof must include a provision by which the lessee expressly agrees that in the event title to the Property and Trustor's interest in the lease shall be transferred pursuant to, or in-lieu of, a foreclosure of this Deed of Trust, it shall be bound to Beneficiary or such other transferee of Trustor's interest to the Property in accordance with all of the provisions of the lease for the balance of the term thereof, and the lessee shall attorn to Beneficiary or such other transferee of Trustor's interest to the Property as its landlord, such attornment to be effective and self-operative without the execution of any further instrument immediately upon Beneficiary or such other transferee succeeding to Trustor's interest to the Property and in the lease and upon lessee's receipt of written notice that such transfer has occurred. As to any Lease, neither Beneficiary nor any purchaser at foreclosure shall be bound by any payment of rent for more than one (1) month in advance without the prior written consent of Beneficiary or by any amendment or modification of the Lease made without the prior written consent of Beneficiary (in cases where such consent is required) or, subsequent to a foreclosure sale, such purchaser.

(d)     Neither Trustee nor Beneficiary shall be obligated to perform or discharge any obligation of Trustor under any Lease. The assignment of the Leases contained herein shall in no manner place on Beneficiary or Trustee any responsibility for (i) the control, care, management or repair of the Property, (ii) the carrying out of any of the terms and conditions of the Leases, (iii) any waste committed on the Property, or (iv) any dangerous or defective condition on the Property (whether known or unknown). Trustor shall indemnify and defend Trustee and Beneficiary for, and forever hold them harmless from, any and all Claims arising out of, or in connection with, any Leases or any assignment thereof.

(e)     Trustor represents and warrants that, to the best of Trustor's knowledge, no tenant in the Property is in default under its Lease (and no event has occurred which with the

5/3/05                                           23

Case: 09-12536    Doc# 32-1    Filed: 08/26/09    Entered: 08/26/09 11:54:46    Page 29 of 30

passage of time would result in a default under its Lease), or is the subject of any bankruptcy, insolvency or similar proceeding.

(f)     Trustor further represents and warrants to Beneficiary as of the Closing Date as follows:

(i)     Trustor has provided Beneficiary with true and complete copies of all existing Leases and any amendments thereto which are in the possession of Trustor or its agents.

(ii)     As of the date hereof no installment of rent due under any Lease has been paid in advance of its due date.

(iii)     There are no actions pending against Trustor under the existing Leases which are not fully covered by insurance and there are no actions by Trustor pending against any Tenant under any existing Lease.

(iv)     Any payments, credits, allowances or abatements required to be made or given by Trustor to any Tenant under any Lease have been made or given by Trustor except any which are not yet due.

**3.17    Inspection**. Trustor shall permit Beneficiary, or any Person authorized by Beneficiary, to enter and make inspections of the Property at all reasonable times during normal business hours and as often as may be requested by Beneficiary, upon 24 hours prior notice, and without prior notice in the event of an emergency.

**3.18    Reimbursement; Interest**. If Beneficiary or Trustee shall incur any Expenses or pay any Claims to which Beneficiary or Trustee become a party by reason of this Deed of Trust or the rights and remedies provided hereunder (regardless of whether this Deed of Trust expressly provides for an indemnification against such Claims by Trustor), such Expenses and Claims shall be (a) paid by Trustor to Beneficiary within ten (10) days of demand, together with interest thereon from such tenth (10th) day until paid in full by Trustor at the Involuntary Rate, and (b) a part of the Obligations secured by this Deed of Trust. Notwithstanding the foregoing, however, in any action or proceeding to foreclose this Deed of Trust or to recover or collect the Obligations, the provisions of Law governing the recovery of costs, disbursements and allowances shall prevail unaffected by this Section. Whenever this Deed of Trust provides for interest to be paid at the Involuntary Rate, the Involuntary Rate shall be calculated on the basis of a 360-day year and actual days elapsed.

**3.19    No Defaults**. Trustor represents and warrants to Beneficiary as of the Closing Date that as of the date hereof, Trustor has performed and complied with all Obligations on its part contained in the Loan Documents and there exists no condition or event which would constitute a Default or Event of Default thereunder.

**3.20    No Bankruptcy**. Trustor represents and warrants to Beneficiary that as of the Closing Date, no petition in bankruptcy, whether voluntary or otherwise, or assignment for the benefit of creditors or any petition for reorganization or arrangement under the laws of any state

5/3/05                      24

Case: 09-12536    Doc# 32-1    Filed: 08/26/09    Entered: 08/26/09 11:54:46    Page 30 of 30