1  John T. Hansen (CA34639)
   jhansen@nossaman.com
2  James H. Vorhis (CA245034)
   jvorhis@nossaman.com
3  Nossaman LLP
   50 California Street, 34th Floor
4  San Francisco, CA 94111
   Telephone:  415.398.3600
5  Facsimile:   415.398.2438

6  FEDERAL DEPOSIT INSURANCE
   CORPORATION as Receiver for Integrity Bank

# UNITED STATES BANKRUPTCY COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MHG CASA MADRONA HOTEL, LLC,<br><br>Debtor, | Case No:  09-12536<br><br>**SUPPLEMENTAL DECLARATION OF JOHN T. HANSEN IN SUPPORT OF MOTION FOR FEDERAL DEPOSIT INSURANCE CORPORATION FOR RELIEF FROM STAY**<br><br>Date:  October 2, 2009<br>Time: 10:00 a.m. |

240762_1.DOC                                                                      Case No. 09-12536
SUPPLEMENTAL DECLARATION OF JOHN T. HANSEN IN SUPPORT OF MOTION FOR FEDERAL
DEPOSIT INSURANCE CORPORATION FOR RELIEF FROM STAY

Case: 09-12536    Doc# 61    Filed: 09/09/09    Entered: 09/09/09 13:39:28    Page 1 of 33

I, John T. Hansen, declare

1.      I am the attorney for the Federal Deposit Insurance Corporation (FDIC), in its capacity as the receiver of Integrity Bank of Alpharetta, Georgia. The matters stated in this declaration are know to me of my own personal knowledge or are matters which I believe to be true on the basis of reliable information.

2.      In the opposition of the proposed counsel for the debtor to the United States Trustee's objection to counsel's application for employment, counsel stated that in its moving papers in support of its motion for relief from the stay, or in the alternative to dismiss the case the FDIC "failed to attach any evidence that it loaned this debtor money...." It is true that copies of the promissory notes which are secured by the deed of trust that forms the basis for the motion were not submitted with the motion, although the deed of trust which was submitted recites the nature and amounts of the notes secured. In order to resolve any doubt, copies of such notes and an indemnity agreement signed by the principal of the debtor, Guy Mitchell, are attached hereto.

3.      Attached hereto as Exhibit JTH 1 is a copy of a Note dated May 3, 2005, between MHG Casa Madrona Hotel, LLC and Integrity Bank in the principal amount of $29,550,000. This copy was provided to me by employees of the FDIC who have custody and possession of the records of Integrity Bank in the ordinary course of my representation of the FDIC in connection with the action to obtain the appointment of a receiver of the Casa Madrona Hotel and to commence foreclosure proceedings related thereto, and I believe it to be a true and correct copy of the original note in the custody of the FDIC.

4.      Attached hereto as Exhibit JTH 2 is a copy of a Replacement Not (Printers Row/Blake) dated June 26, 2007, between MHG Casa Madrona Hotel, LLC and Integrity Bank in the principal amount of $12,494,761.89. This copy was provided to me by employees of the FDIC who have custody and possession of the records of Integrity Bank in the ordinary course of my representation of the FDIC in connection with the action to obtain the appointment of a

SUPPLEMENTAL DECLARATION OF JOHN T. HANSEN IN SUPPORT OF MOTION FOR FEDERAL
DEPOSIT INSURANCE CORPORATION FOR RELIEF FROM STAY

Case: 09-12536    Doc# 61    Filed: 09/09/09    Entered: 09/09/09 13:39:28    Page 2 of 33

receiver of the Casa Madrona Hotel and to commence foreclosure proceedings related thereto, and I believe it to be a true and correct copy of the original note in the custody of the FDIC.

5.      Attached hereto as Exhibit JTH 3 is a copy of a Replacement Note (Melbourne Hotel Investors) dated June 26, 2007, between MHG Casa Madrona Hotel, LLC and Integrity Bank in the principal amount of $6,653,271.97. This copy was provided to me by employees of the FDIC who have custody and possession of the records of Integrity Bank in the ordinary course of my representation of the FDIC in connection with the action to obtain the appointment of a receiver of the Casa Madrona Hotel and to commence foreclosure proceedings related thereto, and I believe it to be a true and correct copy of the original note in the custody of the FDIC.

6.      Attached hereto as Exhibit JTH 4 is a copy of an Indemnification Agreement dated June 26, 2007, between Guy Mitchell and Integrity Bank. The "WHEREAS" clauses of Exhibit JTH 4 described the circumstances under which the above replacement notes were made. This copy was provided to me by employees of the FDIC who have custody and possession of the records of Integrity Bank in the ordinary course of my representation of the FDIC in connection with the action to obtain the appointment of a receiver of the Casa Madrona Hotel and to commence foreclosure proceedings related thereto, and I believe it to be a true and correct copy of the original note in the custody of the FDIC..

I declare under penalty of perjury that I have read the foregoing, that the matters stated therein are true and correct to the best of my information and belief, and that I would be competent to so testify.

Executed at San Francisco, California on September 9, 2009.

John T. Hansen

240762_1.DOC
- 2 -
Case No. 09-12536
SUPPLEMENTAL DECLARATION OF JOHN T. HANSEN IN SUPPORT OF MOTION FOR FEDERAL
DEPOSIT INSURANCE CORPORATION FOR RELIEF FROM STAY

**EXHIBIT JTH 1**

<u>NOTE</u>

US $29,550,000.00

Alpharetta, Georgia
May 3, 2005

For value received, the undersigned, MHG CASA MADRONA HOTEL, LLC, a Georgia limited liability company, (hereinafter referred to as "Borrower") promise to pay to the order of INTEGRITY BANK, its successors and assigns (hereinafter referred to as "Lender"; Lender and any subsequent holder hereof, being hereinafter collectively referred to as "Holder"), at 11140 State Bridge Road, Alpharetta, Georgia 30022, or at such other place as Holder may designate and notify the undersigned, the principal sum of TWENTY NINE MILLION FIVE HUNDRED FIFTY THOUSAND AND NO/100 DOLLARS ($29,550,000.00), or so much thereof as, from time to time, may be outstanding hereunder, together with interest thereon as hereafter set forth (the "Note").

As the following terms are used in this Note, the following definitions shall apply:

"Adjustment Date" shall mean the first day following a change in the Prime Rate from the date of this Note through the Maturity Date.

"Business Day" shall mean any day other than a Saturday, Sunday or other day on which Lender is closed.

"Deed of Trust, Assignment of Rents and Leases, Security Agreement and Fixture Filing" shall mean that certain Deed of Trust, Security Agreement and Fixture Filing executed by Borrower in favor of Lender on even date hereof in which Borrower granted Lender a first priority lien on and security interest in, certain real and personal property located in Marin County, California and being more particularly described on Exhibit "A" attached hereto and made a part hereof by reference.

"Environmental Indemnity Agreement" shall mean that certain Environmental Indemnity Agreement between Borrower and Lender dated as of an even date hereof.

"Guarantors" shall mean individually or collectively, as appropriate, Guy Mitchell and Mitchell Hotel Group, LLC, a Florida limited liability company.

"Guaranty" shall mean that certain Guaranty executed by Guarantors in favor of Lender dated as of an even date hereof.

"Initial Funding" shall mean the principal amount of Twenty Seven Million Four Hundred Eighty Thousand and No/100 Dollars ($27,480,000.00).

Case: 09-12536    Doc# 61    Filed: 09/09/09    Entered: 09/09/09 13:39:28    Page 5 of 33

"Maturity Date" shall mean May 3, 2007.

"Net Operating Income" shall mean all income derived from the operation of the Property, minus operating expenses actually incurred, which are reasonable and customary, provided however that in no event shall operating expenses include management fees, or other fees of any kind or nature which are paid to Guy Mitchell, any spouse or relative of Guy Mitchell or any entity in any manner affiliated with Guy Mitchell, the spouse or relative of Guy Mitchell unless approved in writing by Holder.

"Interest Rate" shall mean a floating and fluctuating interest rate per annum equal to the Prime Rate in effect as of the close of business of each day and for each succeeding non-business day of the Lender, plus 1.25% per annum, however, in no event shall such Interest Rate be lower than 7.00% per annum ("Interest Rate Floor"). If the Prime Rate is discontinued as a standard or becomes unascertainable, the Holder shall designate in writing to the Borrower a comparable reference rate. Lender lends at rates both above and below the Interest Rate and Borrower acknowledges that Lender's Interest Rate is not represented or intended to be the lowest or most favorable rate of interest offered by Lender. In no event shall the Interest Rate, as adjusted, exceed the maximum rate of interest allowed by applicable law.

"Interest Reserve Account" shall mean that certain account in the name of Borrower opened at Lender, whereby the initial principal sum of Two Hundred Eighty Thousand and No/100 Dollars ($280,000.00) of the loan proceeds shall be deposited. On any occasion in which Lender funds Borrower more than the cumulative sum of Twelve Million and No/100 Dollars ($12,000,000.00), Borrower may reasonably require Lender to pay a portion of the funding into the Interest Reserve Account until such time that such deposits shall total One Million Eight Hundred Thousand and No/100 Dollars ($1,800,000.00).

"Loan Documents" shall mean this Note, the Deed of Trust, Security Agreement and Fixture Filing, the Assignment of Rents and Leases and such other documents, agreements and certificates as have been executed to secure, or in connection with, this Note or the Loan evidenced thereby, or any other loan made by Lender to Borrower, or other obligations, financial or otherwise, of Borrower to Lender.

"Prime Rate" shall mean the prime rate announced or published by *The Wall Street Journal*, Eastern Edition in effect as of the close of business of each Business Day.

"Property" shall mean the real property more particularly described on <u>Exhibit "A"</u> attached hereto and made a part hereof by reference.

Interest shall accrue on the principal amount outstanding hereunder at the per annum rate which is the Interest Rate, as may be in effect from time-to-time. Such interest shall be calculated on the basis of the number of days elapsed over a 360-day year through the date immediately proceeding the payment date. Interest shall be payable monthly in arrears from the

Case: 09-12536   Doc# 61   Filed: 09/09/09   Entered: 09/09/09 13:39:28   Page 6 of 33

Net Operating Income of the Property, on the fifth (5th) day of each calendar month, commencing June 5, 2005 and continuing through April 5, 2007, with a final payment of all remaining principal, accrued interest and all other outstanding fees and changes being due and payable on the Maturity Date, unless extended or sooner due and owing upon acceleration of this Note following the occurence of an Event of Default as that term is defined herein and/or in the Loan Documents. All other terms and conditions set forth herein and in the Loan Documents shall remain unchanged. Notwithstanding anything to the contrary should the Property have a negative Net Operating Income for any month, Borrower shall tender the monthly payment via automatic debits monthly from the Interest Reserve Account.

Borrower and Holder acknowledge and agree that at the closing of the Property, the loan proceeds shall be limited to the Initial Funding. Within ten (10) days of Holder's receipt of fully executed and binding purchase and sales contracts for the purchase of condominium units from the Property in the aggregate amount of Thirty One Million and No/100 Dollars ($31,000,000.00), Holder shall disburse via deposit into Borrower's account at Lender the remaining Two Million Seventy Thousand and No/100 Dollars ($2,070,000.00) of the loan.

On and effective as of each Adjustment Date, Holder will calculate the new Interest Rate. The Holder will send Borrower written notice of any changes in the Interest Rate, which shall cause the amount of the monthly payment to be adjusted accordingly.

Regardless of the face amount of the loan or the amount outstanding under this Note, Lender may and Borrower hereby authorizes Lender, at Lender's sole discretion, to advance additional funds on any loan between Borrower and Lender, without the consent of Borrower or any Guarantor to protect the Property, cover, checks, instruments, or other requests for payment on Borrower's account(s) maintained with Lender when said account(s) lack sufficient funds to pay items presented or if such account(s) are overdrawn. In addition, Lender may and Borrower hereby authorizes Lender in Lender's sole discretion to draw down any amounts available under this loan to pay any interest that has accrued on this loan from time to time. Borrower acknowledges that all advances drawn down to pay accrued interest shall be considered an advance of principal under this Note and shall be added to the outstanding principal balance and shall begin to accrue interest at the Interest Rate.

Borrower hereby acknowledges that all such advances made by Lender on behalf of Borrower shall constitute an advance of additional principal under this Note (regardless of the maximum amount stated hereunder), and shall be added to the outstanding principal balance and shall begin to accrue interest at the Interest Rate. On the Maturity Date, the entire remaining unpaid principal balance hereunder, including any such advances, together with all accrued but unpaid interest at the Interest Rate then in effect, shall be due and payable in full.

Time is of the essence in making payments under this Note.

If a payment hereunder becomes due and payable on any day other than a Business Day,

Case: 09-12536    Doc# 61    Filed: 09/09/09    Entered: 09/09/09 13:39:28    Page 7 of 33

the due date thereof shall be extended to the next succeeding Business Day, and interest shall be payable thereon during such extension at the Interest Rate then in effect.

Notwithstanding anything herein to the contrary, Lender shall not be obligated to fund to Borrower more than the sum of Twelve Million and No/100 Dollars ($12,000,000.00) unless and until Lender has entered into and received signed participation and syndication documentation from other lenders up to the total face amount of this Note, participating in the lending of the amount provided for in this Note.

Notwithstanding anything herein to the contrary, Lender shall not be obligated to fund to Borrower more than the sum of Twelve Million and No/100 Dollars ($12,000,000.00) unless and until the Mitchell Hotel Group, LLC, a Florida limited liability company ("Mitchell"), and an entity related to Borrower and receiving an indirect benefit from Lender making this loan to Borrower, pledges, as security for the payment of this Note pursuant to a pledge, assignment and security agreement, the seventy-two and 74/100 percent (72.74%) membership interest which Mitchell owns in Royal Palm Manager, LLC, a Florida limited liability company or Borrower pledges the sum of Five Million and No/100 Dollars to Lender, as additional collateral, to secure the payment of this Note.

Each of the following events shall constitute an "Event of Default" after written notice to Borrower and Borrower's failure to cure a monetary default within five (5) days thereafter and Borrower's failure to cure a non-monetary default within thirty (30) days thereafter: (1) failure by Borrower to pay any monies after said payment is duly owed hereunder; (2) default, after the lapse of any grace periods, in the performance of any of the covenants, conditions or obligations contained in any of the Loan Documents, (3) any Event of Default under any of the Loan Documents, (4) if Borrower or any Guarantors (a) are voluntarily adjudicated to be bankrupt or insolvent, (b) voluntarily files any petition or commences any case or proceeding under any provision or chapter of Title 11 of the United States Code (the "Federal Bankruptcy Code") or any other federal or state law relating to insolvency, bankruptcy, rehabilitation, liquidation or reorganization, (c) has a petition filed or any case or proceeding described in (b) above commenced against Borrower or any Guarantors, unless such petition and the case or proceeding initiated thereby is dismissed within ninety (90) days from the date of the filing, (d) makes a general assignment for the benefit of it, his or her creditors, (e) convenes a meeting of Borrower or Guarantors' creditors, or any class thereof, for the purpose of effecting a moratorium upon or extension or composition of Borrower's debts, or (f) admits in writing that it, he or she is generally not able to pay their respective debts as they mature, or generally are not paying their respective debts as they mature, or (g) become insolvent, as that term is defined in the Federal Bankruptcy Code, (5) any default which is not cured within any applicable grace period or an Event of Default occurs, under any other agreement financial or otherwise between Borrower and Lender, (6) should any Guarantor die, becomes disabled, disassociates or dissolves, or (7) should Borrower fail, within twelve (12) months from the date of this Note, to obtain proper governmental approval to have the Property rezoned to permit the renovation and sale of condominium units located upon Property to the extent such rezoning is required under

-4-

Case: 09-12536    Doc# 61    Filed: 09/09/09    Entered: 09/09/09 13:39:28    Page 8 of 33

applicable law.

Notwithstanding anything herein to the contrary, upon the occurrence of and following an Event of a Default: (1) the unpaid principal amount and any other sums advanced hereunder, together with all accrued but unpaid interest, and any other charges due and owing, shall be declared, and thereupon immediately become due and payable, and may be collected forthwith, regardless of the stipulated Maturity Date; (2) Borrower shall, without notice or demand from Holder, be obligated to pay interest at the Interest Rate set out above plus five percentage points (5%) commencing with and continuing for so long as this Note or any portion hereof is in default.

If any payment due pursuant to this Note is greater than five (5) days late, Borrower shall pay an administrative fee of one and one half percent (1.5%) of the amount of delinquent principal and/or interest due or One Thousand and No/100 Dollars, whichever is greater, in order to cover the extra expense involved in handling delinquent payments. Payment of such administrative fee shall be a condition precedent to the curing of any monetary Event of Default.

This Note is secured by, among other things, the following: (i) Deed of Trust, Assignment of Rents and Leases, Security Agreement and Fixture Filing creating a security lien on all of Borrower's tangible and intangible assets (ii) a security lien on all of Borrower's tangible and intangible assets located on or about the real property; (iii) the Environmental Indemnity Agreement and (iv) the guaranty of Guarantors.

Borrower shall pay all expenses of the Holder in the collection of this Note, including reasonable attorney's fees for the services of counsel employed to collect this Note, whether or not suit be brought, and whether incurred in connection with trial, appeal or otherwise and to indemnify and hold the Holder harmless against liability for the payment of state intangible, documentary and recording taxes, and other taxes, including interest and penalties, if any which may be determined to be payable.

No act of omission or commission, delay or failure on the part of the Holder in the exercise of any right or remedy shall operate as a waiver thereof, no acceptance of a past due installment shall constitute a novation of this Note or a reinstatement of the indebtedness evidenced hereby. No single or partial exercise by the Holder of any right or remedy shall preclude other or further exercise thereof or the exercise of any other right or remedy, including, the right of Holder to insist upon strict compliance with the terms of this Note. This Note may not be changed orally, but only by an agreement in writing signed by the party against whom enforcement of any waiver, change, modification, or discharge is sought.

Borrower (i) waives presentment for payment, protest, notices of demand and non-payment and all other notices are hereby waived by Borrower; (ii) agrees to any substitution addition or release of any collateral or any person or entity liable hereon; (iii) agrees that Holder shall not be required first to institute any suit, or to exhaust its remedies against the Borrower or

Case: 09-12536    Doc# 61    Filed: 09/09/09    Entered: 09/09/09 13:39:28    Page 9 of 33

any other person or entity liable hereunder or against any collateral in order to enforce payment of this Note; (iv) consents to any extension, rearrangement, renewal or postponement of time of payment of this Note and to any other indulgence with respect hereto without notice, consent or consideration to any of them; and (v) agrees that, notwithstanding the occurrence of any of the foregoing, except with the express written release by the Holder, the Borrower shall be and remain jointly and severally, direct and primarily liable for all sums due under this Note.

TO THE EXTENT GEORGIA LAW IS DEEMED NOT TO APPLY, THEN BORROWER HEREBY KNOWINGLY, VOLUNTARILY, AND INTENTIONALLY WAIVES ANY RIGHT TO TRIAL BY JURY OF ANY CLAIM, DEMAND, ACTION OR CAUSE OF ACTION ("CLAIMS") (A) ARISING UNDER THIS NOTE, INCLUDING, WITHOUT LIMITATION, ANY PRESENT OR FUTURE MODIFICATION HEREOF OR (B) IN ANY WAY CONNECTED WITH OR INCIDENTAL TO (I) THE DEALINGS OF THE PARTIES HERETO WITH RESPECT TO THE LOAN DOCUMENTS (AS NOW OR HEREAFTER MODIFIED)), OR (2) ANY OTHER INSTRUMENT, DOCUMENT OR AGREEMENT EXECUTED OR DELIVERED IN CONNECTION HEREWITH, OR ANY COURSE OR CONDUCT, COURSE OF DEALING, STATEMENTS (WHETHER VERBAL OR WRITTEN), IN EACH CASE WHETHER SUCH CLAIMS ARE NOW EXISTING OR HEREAFTER ARISING, AND WHETHER SOUNDING IN CONTRACT OR TORT OR OTHERWISE. EACH PARTY HEREBY AGREES AND CONSENTS THAT ANY SUCH CLAIMS SHALL BE DECIDED BY COURT TRIAL WITHOUT A JURY, AND THAT ANY PARTY TO THIS AGREEMENT MAY FILE AN ORIGINAL COUNTERPART OR A COPY OF THIS SECTION WITH ANY COURT AS WRITTEN EVIDENCE OF THE CONSENT OF THE PARTIES HERETO TO THE WAIVER OF ANY RIGHT THEY MIGHT OTHERWISE HAVE TO TRIAL BY JURY. BORROWER ACKNOWLEDGES THAT NO PERSON ACTING ON BEHALF OF ANOTHER PARTY TO THIS NOTE HAS MADE ANY REPRESENTATIONS OF FACT TO INDUCE THIS WAIVER OF TRIAL BY JURY. BORROWER FURTHER ACKNOWLEDGES THAT IT HAS BEEN REPRESENTED (OR HAS AHD THE OPPORTUNITY TO BE REPRESENTED) IN THE SIGNING OF THIS NOTE AND IN THE MAKING OF THIS WAIVER BY INDEPENDENT LEGAL COUNSEL, SELECTED OF ITS OWN FREE WILL, AND HAS HAD THE OPPORTUNITY TO DISCUSS THIS WAIVER WITH COUNSEL. THIS PROVISION IS A MATERIAL INDUCEMENT FOR LENDER TO MAKE THE LOAN TO BORROWER.

Borrower consents to the exercise of personal jurisdiction over Borrower in Federal Court in the Northern District of California, the Northern District of Georgia, and the Superior Court of the State of Georgia, County of Fulton. Borrower consents and submits to and agrees that venue in any such suit or legal action is proper in said courts and county and hereby expressly waives any and all personal rights under applicable law or in equity to object to the jurisdiction and venue in said courts. The jurisdiction and venue of the courts consented and submitted to and agreed to in this paragraph are not exclusive but are cumulative and in addition to the jurisdiction

-6-

and venue of any other court under any applicable laws or in equity.

Borrower hereby waives and renounces, to the extent same may be waived and renounced, for itself, its legal representatives, successors, and assigns, all rights to the benefits of any statute of limitations and any moratorium, reinstatement, marshalling, forbearance, valuation, stay, extension, redemption, appraisement, exemption and homestead now provided or which may hereafter be provided by the Constitution and the laws of the United States of America and of any state, both as to itself and in and to all of its property real and personal, against the enforcement and collection of the obligations evidenced by this Note.

The Borrower may prepay this Note in whole or in part at any time and from time to time, without penalty or premium.

Notwithstanding anything herein to the contrary, upon the occurrence of a material, adverse change in Borrower's financial condition such that Holder reasonably believes in good faith that its security under the Loan Documents is materially impaired, then Holder shall have the option to call the Note due in full and require the payment of the entire outstanding principal balance plus all accrued but unpaid interest and other charges. If Holder elects to exercise this Call Option, a written notice of such election shall be sent to Borrower notifying Borrower of Holder's election to exercise the Call Option. Upon receipt of the written notice of Holder's election to exercise the call option, Borrower shall have 90 days thereafter to pay Holder the entire outstanding principal balance plus all accrued but unpaid interest and other charges. If Borrower fails to pay such sums on or before said payment date, Holder may invoke any remedies permitted by this Note, the Loan Documents, any security instruments securing same, or as otherwise permitted by law.

This Note is executed and delivered in the State of Georgia and is intended as a contract under and shall be construed and enforceable in accordance with the laws of the State of Georgia. This Note shall be interpreted without regard to which party is the "drafting party", and Borrower waives the benefit of any laws, statutes or judicial decisions providing otherwise.

As used herein, the terms "Borrower," "Lender," and "Holder" shall be deemed to include their respective successors, legal representatives, and assigns, whether by voluntary action of the parties or by operation of law.

If from any circumstances whatsoever fulfillment of any provision of this Note, at the time performance of such provision shall be due, shall involve transcending the limit of validity presently prescribed by any applicable usury statute or any other applicable law, with regard to obligations of like character and amount, then ipso facto the obligation to be fulfilled shall be reduced to the limit of such validity, all interest collected exceeding that permitted by applicable law shall be credited to the principal balance of this Note (or, if the Note has been paid in full, refunded to Borrower) so that in no event shall any exaction be possible over the current limit of such validity, but such obligation shall be fulfilled to the limit of such validity. The provisions of this Paragraph shall control every other provision of the Loan Documents and this Note.

-7-

IN WITNESS WHEREOF, Borrower has executed and sealed this Note as of the day and year first above written.

GIVEN UNDER HAND AND SEAL OF THE UNDERSIGNED.

BORROWER:

MHG CASA MADRONA HOTEL, LLC
a Georgia limited liability company


By: _____
      Guy Mitchell, President

-8-

All that certain real property situate in the City of Sausalito, County of Marin, State of California, described as follows:

PARCEL ONE:

PARCEL 2 and Parcel 2A, as shown upon that certain parcel map entitled, "Parcel Map, Division of Lots 10-11, Block 2, Lands of the Sausalito Land and Ferry Co., (Being lands of Floyd D. Allensby Estate) (Granting Deed 1625 O.R. 329) Sausalito, Cal.", filed for record August 2, 1978 in Volume 15 of Parcel Maps, at Page 51, Marin County Records.

PARCEL TWO:

PARCEL 1, as shown upon that certain map entitled, "Parcel Map, Division of Lots 10-11, Block 2, Lands of the Sausalito Land and Ferry Co.", filed for record August 2, 1978 in Volume 15 of Maps, at Page 51, Marin County Records.

PARCEL THREE:

BEGINNING at a point which is reached as follows:

BEGINNING at an iron bolt, formerly the Southeasterly corner of Lot 8, in Block 2, as the same is laid down and delineated upon the map hereinafter referred to; running thence North 50° 30' West 445 feet to a point on the Southwesterly line of Water Street, and thence at right angles South 39° 30' West 75 feet to said point of beginning, which said point of beginning is located on the Southwesterly boundary line of the lands of Ernest Jackson at a point thereon North 50° 30' West 45 feet from the Southeasterly line of Lot 12, in Block 2 as the same is laid down and delineated on the map hereinafter referred to; and running thence from said point of beginning South 39° 30' West parallel to said Southeasterly line of said Lot 12 to the Northerly line of Bulkley Avenue, thence Southeasterly along said last named line and following the meanderings of said Bulkley Avenue to the most Westerly corner of Lot 11, in said Block 2; thence North 39° 30' East along the boundary line between Lots 11 and 12, in Block 2, 117 feet, more or less, to the Southerly corner of the said lands of Ernest W. Jackson and thence North 50° 30' West along the said Southwesterly boundary of the lands of said Ernest W. Jackson to the point of beginning.

BEING portion of Lot 12, in Block 2, as shown on that certain map entitled, "Subdivisions of Block 1, 2, A, B from section Map C of the Lands of the Sausalito Land and Ferry Co., etc., filed April 15, 1884 in Rack 1, Pull 9, Marin County Records.

Assessor's Parcel Number: 065-069-29

Case: 09-12536    Doc# 61    Filed: 09/09/09    Entered: 09/09/09 13:39:28    Page 13 of 33

**EXHIBIT JTH 2**

## REPLACEMENT NOTE
### (Printers Row/Blake)

**US $12,494,761.89**

**Atlanta, Georgia**
**June 26 , 2007**

For value received, the undersigned, **MHG CASA MADRONA HOTEL, LLC**, a Georgia limited liability company (hereinafter "Maker") promises to pay on demand to the order of **INTEGRITY BANK**, its successors and assigns (hereinafter referred to as "Lender"; Lender and any subsequent holder hereof, being hereinafter collectively referred to as "Holder"), at 11140 State Bridge Road, Alpharetta, Georgia 30022, or at such other place as Holder may designate and notify the undersigned, (i) the principal sum of $12,494,761.89 (the "Loan Amount"), (ii) together with interest thereon as hereafter set forth herein, plus (iii) interest in the amount of $495,018.17 which is accrued and unpaid as of the date hereof with respect to the Original Note (as defined herein).

As the following terms are used in this Note, the following definitions shall apply:

"Adjustment Date" shall mean the first day following a change in the Prime Rate from the date of this Note through the Maturity Date.

"Amended and Restated Deed of Trust" means that certain Amended and Restated Deed of Trust, Security Agreement, Assignment of Leases and Rents, and Fixture Filing, dated the date hereof, from Maker to First American Title Company of Marin, as Trustee, for the benefit of Holder, amending and restating that certain Deed of Trust among the same parties, dated May 3, 2005, and recorded in the Official Records of Marin County, California on May 5, 2005, as Instrument Number 2005-0033100.

"Business Day" shall mean any day other than a Saturday, Sunday or other day on which Lender is closed.

"Guarantor" shall mean individually or collectively, as appropriate, any and all individuals, corporations, limited liability companies, partnerships or other entities that sign a written guaranty guarantying the payment and performance of the Maker's obligations under this Note or the Original Note.

"Mitchell" shall mean Guy Mitchell.

"Guaranty" shall mean any Guaranty executed by Guarantors in favor of Lender with respect to the debt evidenced by this Note or the Original Note.

"Interest Rate" shall mean a floating and fluctuating interest rate per annum equal to the Prime Rate in effect as of the close of business of each day and for each succeeding non-business day of the Lender, plus 0.50% per annum. On and as of each Adjustment Date, the Interest Rate shall be adjusted as set forth herein. If the Prime Rate is discontinued as a standard or becomes unascertainable, the Holder shall designate in writing to the Maker a comparable reference rate. Lender lends at rates both above and below the Interest Rate and Maker acknowledges that Lender's Interest Rate is not represented or intended to be the lowest or most favorable rate of

Replacement Note - Casa Madrona_Printers Row.DOC

Case: 09-12536   Doc# 61   Filed: 09/09/09   Entered: 09/09/09 13:39:28   Page 15 of 33

interest offered by Lender. In no event shall the Interest Rate, as adjusted, exceed the maximum rate of interest allowed by applicable law.

"Loan Documents" shall mean this Note, the Amended and Restated Deed of Trust, and such other documents, agreements and certificates as have been executed to secure, or in connection with, this Note or the loan evidenced thereby, or any other loan made by Lender to Maker, or other obligations, financial or otherwise, of Maker to Lender.

"Maturity Date" shall mean a demand for payment by Lender.

"Original Note" means that certain Note in the original principal balance of $12,500,000 dated August 8, 2006, from Printers Row Investors, LLC and Blake Investors, LLC, as borrower, in favor of Maker.

"Prime Rate" shall mean the prime rate announced or published by *The Wall Street Journal*, Easter Edition in effect as of the close of business of each Business Day.

Interest shall accrue on the principal amount outstanding hereunder at the per annum rate which is the Interest Rate, as may be in effect from time-to-time. Such interest shall be calculated on the basis of the number of days elapsed over a 360-day year through that date immediately proceeding the payment date. All principal and accrued and unpaid interest hereunder shall be due and payable on the Maturity Date, unless extended or sooner due and owing upon acceleration of this Note following the occurrence of an Event of Default as that term is defined herein.

On and effective as of each Adjustment Date, Holder will calculate the new Interest Rate.

Regardless of the face amount of the Loan or the amount outstanding under this Note, Lender may and Maker hereby authorizes Lender, in Lender's reasonable discretion, to advance additional funds on any loan between Maker and Lender, without the consent of Maker to protect the property, to cover checks, instruments, or other requests for payment on maker's account(s) maintained with Lender when said account(s) lack sufficient funds to pay items presented or if such account(s) are overdrawn. Maker hereby acknowledges that all such advances made by Lender on behalf of Maker shall constitute an advance of additional principal under this Note (regardless of the maximum amount stated hereunder), and shall be added to the outstanding principal balance and shall begin to accrue interest at the Interest Rate from the date each amount was advanced.

If a payment hereunder becomes due and payable on any day other than a Business Day, the due date thereof shall be extended to the next succeeding Business Day, and interest shall be payable thereon during such extension at the Interest Rate then in effect.

Each of the following events shall constitute an "Event of Default": (1) failure by Maker to pay any monies owed hereunder on the date the funds are owed; (2) any Event of Default under any of the Loan Documents, (3) if Maker or Mitchell (a) is voluntarily adjudicated to be bankrupt or insolvent, (b) voluntarily files any petition or commences any case or proceeding under any provision or chapter of Title 11 of the United States Code (the "Federal Bankruptcy Code") or any other federal or state law relating to insolvency, bankruptcy, rehabilitation,

Case: 09-12536    Doc# 61    Filed: 09/09/09    Entered: 09/09/09 13:39:28    Page 16 of 33

liquidation or reorganization, (c) has a petition filed or any case or proceeding described in (b) above commenced against Maker or Mitchell, (d) makes a general assignment for the benefit of it, his or her creditors, (e) convenes a meeting of Maker or Mitchell's creditors, or any class thereof, for the purpose of effecting a moratorium upon or extension or composition of Maker or Mitchell's debts, (f) admits in writing that it, he or she is generally not able to pay their respective debts as they mature, or generally are not paying their respective debts as they mature, or (g) become insolvent, as that term is defined in the Federal Bankruptcy Code, (4) any default which is not cured within any applicable grace period or an Event of Default, under any other agreement financial or otherwise between Maker and Lender, (5) if Mitchell shall die or become disabled and Holder, in Holder's sole discretion based upon holder's criteria at the time of such event, has not agreed to a substitute Guarantor within thirty (30) days from the death or disablement of Mitchell, (6) if Maker shall dissolve, terminate or liquidate, or merge with or be consolidated into any other entity, or shall hypothecate, pledge, mortgage or otherwise encumber all or any part of the beneficial ownership interest in Maker, (7) if Maker shall amend or modify, in a manner which would adversely affect Holder, its articles of organization or other enabling documents, and Holder has not given its prior written consent to such amendments or modifications; or (8) if Maker transfers substantially all of its assets, or there is any conveyance of any ownership in Maker to third parties and/or non-members of Maker as of the date herewith.

Notwithstanding anything herein to the contrary, upon the occurrence of and following an Event of a Default: (1) the unpaid principal amount and any other sums advanced hereunder and any other sums advanced under this Note, together with all accrued but unpaid interest, shall be declared, and thereupon immediately become due and payable, and may be collected forthwith, regardless of the stipulated Maturity Date; and (2) Maker shall, without notice or demand from Holder, be obligated to pay interest at the Interest Rate set out above plus five percentage points (5%) commencing with and continuing for so long as this Note or any portion hereof is in default.

If any payment due pursuant to this Note is greater than ten (10) days late, Maker shall pay an administrative fee of five percent (5%) of the amount of principal and/or interest due in order to cover the extra expense involved in handling delinquent payments. Payment of such administrative fee shall be a condition precedent to the curing of any monetary Event of Default.

This Note is secured by, among other things, the following: (1) Amended and Restated Deed of Trust , and (ii) the Guaranties of Mitchell and Mitchell Hotel Group, LLC.

No act of omission or commission, delay or failure on the part of the Holder in the exercise of any right or remedy shall operate as a waiver thereof, no acceptance of a past due installment shall constitute a novation of this Note or a reinstatement of the indebtedness evidenced hereby. No single or partial exercise by the Holder of any right or remedy shall preclude other or further exercise thereof or the exercise of any other right or remedy, including the right of Holder to insist upon strict compliance with the terms of this Note. This Note may not be changed orally, but only by an agreement in writing signed by the party against whom enforcement of any waiver, change, modification or discharge is sought.

The Maker (i) waives presentment for payment, protest, notices of demand and non-payment of all other notices are hereby waived by maker; (ii) agrees to any substitution addition or release of any collateral or any person or entity liable hereon; (iii) agrees that Holder shall not

Case: 09-12536    Doc# 61    Filed: 09/09/09    Entered: 09/09/09 13:39:28    Page 17 of 33

be required first to institute any suit, or to exhaust its remedies against the Maker or any other person or entity liable hereunder or against any collateral in order to enforce payment of this Note; (iv) consents to any extension, rearrangement, renewal or postponement of time of payment of this Note and to any other indulgence with respect hereto0 without notice, consent or consideration to any of them; and (v) agrees that, notwithstanding the occurrence of any of the foregoing, except with the express written release by the Holder, the Maker shall be and remain direct and primarily liable for all sums due under this Note.

TO THE EXTENT GEORGIA LAW IS DEEMED NOT TO APPLY, THEN MAKER HEREBY KNOWINGLY, VOLUNTARILY, AND INTENTIONALLY WAIVES ANY RIGHT TO TRIAL BY JURY OF ANY CLAIM, DEMAND, ACTION OR CAUSE OF ACTION ("CLAIMS") (A) ARISING UNDER THIS NOTE, INCLUDING WITHOUT LIMITATION, ANY PRESENT OR FUTURE MODIFICATION HEREOF OR (B) IN ANY WAY CONNECTED WITH OR INCIDENTAL TO (1) THE DEALINGS OF THE PARTIES HERETO WITH RESPECT TO THE LOAN DOCUMENTS (AS NOW OR HEREAFTER MODIFIED), OR (2) ANY OTHER INSTRUMENT, DOCUMENT OR AGREEMENT EXECUTED OR DELIVERED IN CONNECTION HEREWITH, OR ANY COURSE OR CONDUCT, COURSE OF DEALING, STATEMENTS (WHETHER VERBAL OR WRITTEN), IN EACH CASE WHETHER SUCH CLAIMS ARE NOW EXISTING OR HEREAFTER ARISING, AND WHETHER SOUNDING IN CONTRACT OR TORT OR OTHERWISE. EACH PARTY HEREBY AGREES AND CONSENTS THAT ANY SUCH CLAIMS SHALL BE DECIDED BY COURT TRIAL WITHOUT A JURY, AND THAT ANY PARTY TO THIS AGREEMENT MAY FILE AN ORIGINAL COUNTERPART OR A COPY OF THIS SECTION WITH ANY COURT AS WRITTEN EVIDENCE OF THE CONSENT OF THE PARTIES HERETO TO THE WAIVER OF ANY RIGHT THEY MIGHT OTHERWISE HAVE TO TRIAL BY JURY. MAKER ACKNOWLEDGES THAT NO PERSON ACTING ON BEHALF OF ANOTHER PARTY TO THIS NOTE HAS MADE ANY REPRESENTATIONS OF FACT TO INDUCE THIS WAIVER OF TRIAL BY JURY. MAKER FURTHER ACKNOWLEDGES THAT IT HAS BEEN REPRESENTED (OR HAS HAD THE OPPORTUNITY TO BE REPRESENTED) IN THE SIGNING OF THIS NOTE AND IN THE MAKING OF THIS WAIVER BY INDEPENDENT LEGAL COUNSEL, SELECTED OF ITS OWN FREE WILL, AND HAS HAD THE OPPORTUNITY TO DISCUSS THIS WAIVER WITH COUNSEL. THIS PROVISION IS A MATERIAL INDUCEMENT FOR LENDER TO MAKE THE LOAN TO MAKER.

Maker consents to the exercise of personal jurisdiction over Maker in Federal Court in the Northern District of California, the Northern District of Georgia, and the Superior Court of the State of Georgia, County of Fulton. Maker consents and submits to and agrees that venue in any such suit or legal action is proper in said courts and county and hereby expressly waives any and all personal rights under applicable law or in equity to object to the jurisdiction and venue in said courts. The jurisdiction and venue of the courts consented and submitted to and agreed to in this paragraph are not exclusive but are cumulative and in addition to the jurisdiction and venue of any other court under any applicable laws or in equity.

Time is of the essence with respect to this Note.

Case: 09-12536   Doc# 61   Filed: 09/09/09   Entered: 09/09/09 13:39:28   Page 18 of 33

This Note is a replacement note with respect to the Original Note, and upon execution of this Note the Original Note shall be deemed satisfied. Maker hereby acknowledges that (i) the majority owner of Maker's parent is a guarantor of the indebtedness owed to the Holder by the maker of the Original Note, (ii) it is in default with respect to other obligations Maker owes to Holder, (iii) this Note is executed to induce Holder to forbear in exercising all its rights against Maker, and (iv) Maker has received sufficient and adequate consideration for the execution of this Note, including without limitation the forbearance of Holder. Holder represents and warrants to Maker that after execution of this Note, that certain other Replacement Note dated the date hereof in the principal amount of $6,653,271.97, and making a draw request of Maker of $7,136,557.93 pursuant to a Notice of Borrowing of even date, Maker is solvent as that term is defined in the U.S. Bankruptcy Code.

<u>Waiver of Homestead Exemption Rights</u>. Maker hereby waives and renounces for itself, its heirs, successors and assigns, all rights to the benefits of any statute of limitations and any moratorium, reinstatement, marshalling, forbearance, valuation, stay, extension, redemption, appraisement, exemption and homestead now provided, or which may hereafter be provided, by the Constitution and laws of the United States of America and of any state thereof, both as to itself and in and to all of its property, real and personal, against the enforcement and collection of the obligations evidenced by this Note. Maker hereby transfers, conveys and assigns to Holder a sufficient amount of such homestead or exemption as may be set apart in bankruptcy, to pay this Note in full, with all costs of collection, and does hereby direct any trustee in bankruptcy having possession of such homestead or exemption to deliver to Holder a sufficient amount of property or money set apart as exempt to pay the indebtedness evidenced hereby, or any renewal thereof, and does hereby appoint Holder the attorney-in-fact for Maker to claim any and all homestead exemptions allowed by law.

Maker may prepay this Note in full or in part without premium or penalty.

This Note is executed and delivered in the State of Georgia and is intended as a contract under and shall be construed and enforceable in accordance with the laws of the State of Georgia. This Note shall be interpreted without regard to which party is the "drafting party", and Maker waives the benefit of any laws, statutes or judicial decisions providing otherwise.

As used herein, the terms "Maker", "Lender" and "Holder" shall be deemed to include their respective successors, legal representatives and assigns, whether by voluntary action of the parties or by operation of law.

If from any circumstances whatsoever fulfillment of any provision of this Note, at the time performance of such provision shall be due, shall involve transcending the limit of validity presently prescribed by any applicable usury statute or any other applicable law, with regard to obligations of like character and amount, then *ipso facto* the obligation to be fulfilled shall be reduced to the limit of such validity, all interest collected exceeding that permitted by applicable law shall be credited to the principal balance of this Note (or, if the Note has been paid in full, refunded to Maker) so that in no event shall any exaction be possible over the current limit of such validity, but such obligation shall be fulfilled to the limit of such validity. The provisions of this Paragraph shall control every other provision of the Loan Documents and this Note.

*[Remainder of Page Intentionally Left Blank.]*

Replacement Note - Casa Madrona_Printers Row.DOC                5

IN WITNESS WHEREOF, Maker has executed and sealed this Note as of the day and year first above written.

GIVEN UNDER HAND AND SEAL OF THE UNDERSIGNED.

MHG CASA MADRONA HOTEL, LLC
a Georgia limited liability company

By: _____
Guy Mitchell, President

# EXHIBIT JTH 3

# REPLACEMENT NOTE
## (Melbourne Hotel Investors)

US $6,653,271.97

Atlanta, Georgia
June 2⅃ , 2007

For value received, the undersigned, **MHG CASA MADRONA HOTEL, LLC**, a Georgia limited liability company (hereinafter "Maker") promises to pay on demand to the order of **INTEGRITY BANK**, its successors and assigns (hereinafter referred to as "Lender"; Lender and any subsequent holder hereof, being hereinafter collectively referred to as "Holder"), at 11140 State Bridge Road, Alpharetta, Georgia 30022, or at such other place as Holder may designate and notify the undersigned, (i) the principal sum of $6,653,271.97 (the "Loan Amount"), (ii) together with interest thereon as hereafter set forth herein, plus (iii) interest in the amount of $259,434.61 which is accrued and unpaid as of the date hereof with respect to the Original Note (as defined herein).

As the following terms are used in this Note, the following definitions shall apply:

"Adjustment Date" shall mean the first day following a change in the Prime Rate from the date of this Note through the Maturity Date.

"Amended and Restated Deed of Trust" means that certain Amended and Restated Deed of Trust, Security Agreement, Assignment of Leases and Rents, and Fixture Filing, dated the date hereof, from Maker to First American Title Company of Marin, as Trustee, for the benefit of Holder, amending and restating that certain Deed of Trust among the same parties, dated May 3, 2005, and recorded in the Official Records of Marin County, California on May 5, 2005, as Instrument Number 2005-0033100.

"Business Day" shall mean any day other than a Saturday, Sunday or other day on which Lender is closed.

"Guarantor" shall mean individually or collectively, as appropriate, any and all individuals, corporations, limited liability companies, partnerships or other entities that sign a written guaranty guarantying the payment and performance of the Maker's obligations under this Note or the Original Note.

"Mitchell" shall mean Guy Mitchell.

"Guaranty" shall mean any Guaranty executed by Guarantors in favor of Lender with respect to the debt evidenced by this Note or the Original Note.

"Interest Rate" shall mean a floating and fluctuating interest rate per annum equal to the Prime Rate in effect as of the close of business of each day and for each succeeding non-business day of the Lender, plus 0.50% per annum. On and as of each Adjustment Date, the Interest Rate shall be adjusted as set forth herein. If the Prime Rate is discontinued as a standard or becomes unascertainable, the Holder shall designate in writing to the Maker a comparable reference rate. Lender lends at rates both above and below the Interest Rate and Maker acknowledges that Lender's Interest Rate is not represented or intended to be the lowest or most favorable rate of

interest offered by Lender. In no event shall the Interest Rate, as adjusted, exceed the maximum rate of interest allowed by applicable law.

"Loan Documents" shall mean this Note, the Amended and Restated Deed of Trust, and such other documents, agreements and certificates as have been executed to secure, or in connection with, this Note or the loan evidenced thereby, or any other loan made by Lender to Maker, or other obligations, financial or otherwise, of Maker to Lender.

"Maturity Date" shall mean a demand for payment by Lender.

"Original Note" means that certain Note in the original principal balance of $7,500,000 dated August 8, 2006, from Melbourne Hotel Investors, LLC, as borrower, in favor of Maker.

"Prime Rate" shall mean the prime rate announced or published by *The Wall Street Journal*, Easter Edition in effect as of the close of business of each Business Day.

Interest shall accrue on the principal amount outstanding hereunder at the per annum rate which is the Interest Rate, as may be in effect from time-to-time. Such interest shall be calculated on the basis of the number of days elapsed over a 360-day year through that date immediately proceeding the payment date. All principal and accrued and unpaid interest hereunder shall be due and payable on the Maturity Date, unless extended or sooner due and owing upon acceleration of this Note following the occurrence of an Event of Default as that term is defined herein.

On and effective as of each Adjustment Date, Holder will calculate the new Interest Rate.

Regardless of the face amount of the Loan or the amount outstanding under this Note, Lender may and Maker hereby authorizes Lender, in Lender's reasonable discretion, to advance additional funds on any loan between Maker and Lender, without the consent of Maker to protect the property, to cover checks, instruments, or other requests for payment on maker's account(s) maintained with Lender when said account(s) lack sufficient funds to pay items presented or if such account(s) are overdrawn. Maker hereby acknowledges that all such advances made by Lender on behalf of Maker shall constitute an advance of additional principal under this Note (regardless of the maximum amount stated hereunder), and shall be added to the outstanding principal balance and shall begin to accrue interest at the Interest Rate from the date each amount was advanced.

If a payment hereunder becomes due and payable on any day other than a Business Day, the due date thereof shall be extended to the next succeeding Business Day, and interest shall be payable thereon during such extension at the Interest Rate then in effect.

Each of the following events shall constitute an "Event of Default": (1) failure by Maker to pay any monies owed hereunder on the date the funds are owed; (2) any Event of Default under any of the Loan Documents, (3) if Maker or Mitchell (a) is voluntarily adjudicated to be bankrupt or insolvent, (b) voluntarily files any petition or commences any case or proceeding under any provision or chapter of Title 11 of the United States Code (the "Federal Bankruptcy Code") or any other federal or state law relating to insolvency, bankruptcy, rehabilitation, liquidation or reorganization, (c) has a petition filed or any case or proceeding described in (b)

above commenced against Maker or Mitchell, (d) makes a general assignment for the benefit of it, his or her creditors, (e) convenes a meeting of Maker or Mitchell's creditors, or any class thereof, for the purpose of effecting a moratorium upon or extension or composition of Maker or Mitchell's debts, (f) admits in writing that it, he or she is generally not able to pay their respective debts as they mature, or generally are not paying their respective debts as they mature, or (g) become insolvent, as that term is defined in the Federal Bankruptcy Code, (4) any default which is not cured within any applicable grace period or an Event of Default, under any other agreement financial or otherwise between Maker and Lender, (5) if Mitchell shall die or become disabled and Holder, in Holder's sole discretion based upon holder's criteria at the time of such event, has not agreed to a substitute Guarantor within thirty (30) days from the death or disablement of Mitchell, (6) if Maker shall dissolve, terminate or liquidate, or merge with or be consolidated into any other entity, or shall hypothecate, pledge, mortgage or otherwise encumber all or any part of the beneficial ownership interest in Maker, (7) if Maker shall amend or modify, in a manner which would adversely affect Holder, its articles of organization or other enabling documents, and Holder has not given its prior written consent to such amendments or modifications; or (8) if Maker transfers substantially all of its assets, or there is any conveyance of any ownership in Maker to third parties and/or non-members of Maker as of the date herewith.

Notwithstanding anything herein to the contrary, upon the occurrence of and following an Event of a Default: (1) the unpaid principal amount and any other sums advanced hereunder and any other sums advanced under this Note, together with all accrued but unpaid interest, shall be declared, and thereupon immediately become due and payable, and may be collected forthwith, regardless of the stipulated Maturity Date; and (2) Maker shall, without notice or demand from Holder, be obligated to pay interest at the Interest Rate set out above plus five percentage points (5%) commencing with and continuing for so long as this Note or any portion hereof is in default.

If any payment due pursuant to this Note is greater than ten (10) days late, Maker shall pay an administrative fee of five percent (5%) of the amount of principal and/or interest due in order to cover the extra expense involved in handling delinquent payments. Payment of such administrative fee shall be a condition precedent to the curing of any monetary Event of Default.

This Note is secured by, among other things, the following: (1) Amended and Restated Deed of Trust, and (ii) the Guaranties of Mitchell and Mitchell Hotel Group, LLC.

No act of omission or commission, delay or failure on the part of the Holder in the exercise of any right or remedy shall operate as a waiver thereof, no acceptance of a past due installment shall constitute a novation of this Note or a reinstatement of the indebtedness evidenced hereby. No single or partial exercise by the Holder of any right or remedy shall preclude other or further exercise thereof or the exercise of any other right or remedy, including the right of Holder to insist upon strict compliance with the terms of this Note. This Note may not be changed orally, but only by an agreement in writing signed by the party against whom enforcement of any waiver, change, modification or discharge is sought.

The Maker (i) waives presentment for payment, protest, notices of demand and non-payment of all other notices are hereby waived by maker; (ii) agrees to any substitution addition or release of any collateral or any person or entity liable hereon; (iii) agrees that Holder shall not be required first to institute any suit, or to exhaust its remedies against the Maker or any other

person or entity liable hereunder or against any collateral in order to enforce payment of this Note; (iv) consents to any extension, rearrangement, renewal or postponement of time of payment of this Note and to any other indulgence with respect hereto0 without notice, consent or consideration to any of them; and (v) agrees that, notwithstanding the occurrence of any of the foregoing, except with the express written release by the Holder, the Maker shall be and remain direct and primarily liable for all sums due under this Note.

TO THE EXTENT GEORGIA LAW IS DEEMED NOT TO APPLY, THEN MAKER HEREBY KNOWINGLY, VOLUNTARILY, AND INTENTIONALLY WAIVES ANY RIGHT TO TRIAL BY JURY OF ANY CLAIM, DEMAND, ACTION OR CAUSE OF ACTION ("CLAIMS") (A) ARISING UNDER THIS NOTE, INCLUDING WITHOUT LIMITATION, ANY PRESENT OR FUTURE MODIFICATION HEREOF OR (B) IN ANY WAY CONNECTED WITH OR INCIDENTAL TO (1) THE DEALINGS OF THE PARTIES HERETO WITH RESPECT TO THE LOAN DOCUMENTS (AS NOW OR HEREAFTER MODIFIED), OR (2) ANY OTHER INSTRUMENT, DOCUMENT OR AGREEMENT EXECUTED OR DELIVERED IN CONNECTION HEREWITH, OR ANY COURSE OR CONDUCT, COURSE OF DEALING, STATEMENTS (WHETHER VERBAL OR WRITTEN), IN EACH CASE WHETHER SUCH CLAIMS ARE NOW EXISTING OR HEREAFTER ARISING, AND WHETHER SOUNDING IN CONTRACT OR TORT OR OTHERWISE. EACH PARTY HEREBY AGREES AND CONSENTS THAT ANY SUCH CLAIMS SHALL BE DECIDED BY COURT TRIAL WITHOUT A JURY, AND THAT ANY PARTY TO THIS AGREEMENT MAY FILE AN ORIGINAL COUNTERPART OR A COPY OF THIS SECTION WITH ANY COURT AS WRITTEN EVIDENCE OF THE CONSENT OF THE PARTIES HERETO TO THE WAIVER OF ANY RIGHT THEY MIGHT OTHERWISE HAVE TO TRIAL BY JURY. MAKER ACKNOWLEDGES THAT NO PERSON ACTING ON BEHALF OF ANOTHER PARTY TO THIS NOTE HAS MADE ANY REPRESENTATIONS OF FACT TO INDUCE THIS WAIVER OF TRIAL BY JURY. MAKER FURTHER ACKNOWLEDGES THAT IT HAS BEEN REPRESENTED (OR HAS HAD THE OPPORTUNITY TO BE REPRESENTED) IN THE SIGNING OF THIS NOTE AND IN THE MAKING OF THIS WAIVER BY INDEPENDENT LEGAL COUNSEL, SELECTED OF ITS OWN FREE WILL, AND HAS HAD THE OPPORTUNITY TO DISCUSS THIS WAIVER WITH COUNSEL. THIS PROVISION IS A MATERIAL INDUCEMENT FOR LENDER TO MAKE THE LOAN TO MAKER.

Maker consents to the exercise of personal jurisdiction over Maker in Federal Court in the Northern District of California, the Northern District of Georgia, and the Superior Court of the State of Georgia, County of Fulton. Maker consents and submits to and agrees that venue in any such suit or legal action is proper in said courts and county and hereby expressly waives any and all personal rights under applicable law or in equity to object to the jurisdiction and venue in said courts. The jurisdiction and venue of the courts consented and submitted to and agreed to in this paragraph are not exclusive but are cumulative and in addition to the jurisdiction and venue of any other court under any applicable laws or in equity.

Time is of the essence with respect to this Note.

This Note is a replacement note with respect to the Original Note, and upon execution of this Note the Original Note shall be deemed satisfied. Maker hereby acknowledges that (i) the

majority owner of Maker's parent is a guarantor of the indebtedness owed to Holder by the maker of the Original Note, (ii) it is in default with respect to other obligations Maker owes to Holder, (iii) this Note is executed to induce Holder to forbear in exercising all its rights against Maker, and (iv) Maker has received sufficient and adequate consideration for the execution of this Note, including without limitation the forbearance of Holder. Holder represents and warrants to Maker that after execution of this Note, that certain other Replacement Note dated the date hereof in the principal amount of $12,494,761.89, and making a draw request of Maker of $7,136,557.93 pursuant to a Notice of Borrowing of even date, Maker is solvent as that term is defined in the U.S. Bankruptcy Code.

Waiver of Homestead Exemption Rights. Maker hereby waives and renounces for itself, its heirs, successors and assigns, all rights to the benefits of any statute of limitations and any moratorium, reinstatement, marshalling, forbearance, valuation, stay, extension, redemption, appraisement, exemption and homestead now provided, or which may hereafter be provided, by the Constitution and laws of the United States of America and of any state thereof, both as to itself and in and to all of its property, real and personal, against the enforcement and collection of the obligations evidenced by this Note. Maker hereby transfers, conveys and assigns to Holder a sufficient amount of such homestead or exemption as may be set apart in bankruptcy, to pay this Note in full, with all costs of collection, and does hereby direct any trustee in bankruptcy having possession of such homestead or exemption to deliver to Holder a sufficient amount of property or money set apart as exempt to pay the indebtedness evidenced hereby, or any renewal thereof, and does hereby appoint Holder the attorney-in-fact for Maker to claim any and all homestead exemptions allowed by law.

Maker may prepay this Note in full or in part without premium or penalty.

This Note is executed and delivered in the State of Georgia and is intended as a contract under and shall be construed and enforceable in accordance with the laws of the State of Georgia. This Note shall be interpreted without regard to which party is the "drafting party", and Maker waives the benefit of any laws, statutes or judicial decisions providing otherwise.

As used herein, the terms "Maker", "Lender" and "Holder" shall be deemed to include their respective successors, legal representatives and assigns, whether by voluntary action of the parties or by operation of law.

If from any circumstances whatsoever fulfillment of any provision of this Note, at the time performance of such provision shall be due, shall involve transcending the limit of validity presently prescribed by any applicable usury statute or any other applicable law, with regard to obligations of like character and amount, then ipso facto the obligation to be fulfilled shall be reduced to the limit of such validity, all interest collected exceeding that permitted by applicable law shall be credited to the principal balance of this Note (or, if the Note has been paid in full, refunded to Maker) so that in no event shall any exaction be possible over the current limit of such validity, but such obligation shall be fulfilled to the limit of such validity. The provisions of this Paragraph shall control every other provision of the Loan Documents and this Note.

*[Remainder of Page Intentionally Left Blank.]*

IN WITNESS WHEREOF, Maker has executed and sealed this Note as of the day and year first above written.

GIVEN UNDER HAND AND SEAL OF THE UNDERSIGNED.

MHG CASA MADRONA HOTEL, LLC
a Georgia limited liability company

By: _____
　　　　Guy Mitchell, President

Replacement Note - Casa Madrona, Melbourne.DOC                6

# EXHIBIT JTH 4

## INDEMNIFICATION AGREEMENT

THIS INDEMNIFICATION AGREEMENT is made and entered into as of the 26th day of June, 2007 by and between GUY MITCHELL, a resident of Coral Gables, Florida, ("Mitchell") and INTEGRITY BANK ("Bank").

### RECITALS:

WHEREAS, Mitchell is an owner and investor, whether directly or indirectly, in Mitchell Hospitality Investments, LLC ("MHI"), and MHG Casa Madrona Hotel, LLC ("Casa Madrona"), and MHI is the sole member of Casa Madrona; and

WHEREAS, Mitchell is a guarantor of certain obligations owed to the Bank by Printers Row Investors, LLC ("Printers Row"), Blake Investors, LLC ("Blake"), and Melbourne Hotel Investors, LLC ("Melbourne") (Printers Row, Blake, Melbourne, MHI and Casa Madrona are collectively referred to as the "Borrowers"); and

WHEREAS, each of the Borrowers at the request and instigation of Mitchell have procured loans from the Bank, each of which is now in default; and

WHEREAS, Mitchell has requested the Bank to forbear exercising its rights with respect to the loans to the Borrowers; and

WHEREAS, Mitchell has further requested that the Bank mark the loans to Printers Row/Blake and to Melbourne satisfied, and to release Printers Row, Blake and Melbourne and all collateral given by Printers Row, Blake and Melbourne, securing said loans; and

WHEREAS, as a condition to such forbearance and to mark the notes and loans to Printers Row/Blake and to Melbourne satisfied, the Bank has requested (i) that Casa Madrona execute replacement notes (the "Replacement Notes"), replacing the original notes to Printers Row/Blake and to Melbourne, which will be marked satisfied, and to incur the amount of indebtedness owed by Printers Row/Blake and Melbourne to the Bank, and (ii) that Casa Madrona make an additional draw request (the "Additional Draw") on the existing note, dated May 3, 2005, from Casa Madrona, to the Bank in the approximate amount of $7,136,557.93, and to direct the Bank to apply said draw to the indebtedness of MHI; and

WHEREAS, both Mitchell and Casa Madrona will receive significant and material benefit from the forbearance by the Bank, from the marking of the notes and loans from Printers Row/Blake and from Melbourne satisfied and the release of Printers Row, Blake and Melbourne and the collateral granted by Printers Row, Blake and Melbourne; and

WHEREAS, Mitchell indirectly owns a majority interest in Casa Madrona and indirectly has ultimate control of Casa Madrona and has caused Casa Madrona, and each of its parent entities to take all action necessary to authorize Casa Madrona to execute the Replacement Notes, make the Additional Draw and apply the Additional Draw to the indebtedness of MHI, and to grant security for the Replacement Notes and Additional Draw; and

3926688_2.DOC

WHEREAS, the Bank is willing to take such action only on the condition that Mitchell enter into the indemnification set forth herein.

NOW THEREFORE, for and in consideration of the premises, the forbearance by the Bank and the Bank's marking the notes and loans to Printers Row/Blake and to Melbourne satisfied, and other good and valuable consideration, the receipt, sufficiency and adequacy of which are hereby acknowledged by Mitchell, and intending to be legally bound, Mitchell does hereby agree as follows:

1.  <u>Premises</u>.  The recitals of this Agreement are true and correct and are hereby incorporated and made a part of this Agreement.  The recitals are a substantive, contractual part of this Agreement.

2.  <u>Indemnification</u>.  Mitchell agrees to indemnify, defend and hold the Bank, its parent corporation, and any affiliate, and each of their directors, officers, employees, agents and attorneys (both in such person's capacity as directors, officers, employees and agents, and in their individual and personal capacity) from and against any and all claims, demands, actions, causes of action, damages, obligations, liabilities, suits, losses, judgments and expenses of whatsoever kind and nature, whether or not now known or suspected or claimed, whether in law, arbitration, equity or otherwise, arising from or in any way relating to: (i) any claim or allegation by any party that the additional indebtedness, or any part thereof, incurred by Casa Madrona pursuant to the Replacement Notes or the Additional Draw is enforceable in whole or in part for lack of consideration, or is not, in any respect, a valid claim or obligation of Casa Madrona, or is voidable as a preference, (ii) any claim or allegation by any party, including without limitation, Mitchell or any investor in Casa Madrona or any of its parent entities, that the net worth of Casa Madrona or the value of any of such persons holdings has been improperly diminished or reduced as a result of any one of the Replacement Notes or the Additional Draw; (iii) Casa Madrona or any of its parent organizations or affiliates, (a) being voluntarily adjudicated to be bankrupt or insolvent, (b) voluntarily filing any petition or commencing any case or proceeding under any provision or chapter of Title 11 of the United States Code (the "Federal Bankruptcy Code") or any other federal or state law relating to insolvency, bankruptcy, rehabilitation, liquidation or reorganization, (c) having a petition filed or any case or proceeding described in (b) above commenced against it, (d) making a general assignment for the benefit of it, his or her creditors, (e) convening a meeting of its creditors, or any class thereof, for the purpose of effecting a moratorium upon or extension or composition of such entity's debts, (f) admitting in writing that it, he or she is generally not able to pay their respective debts as they mature, or generally are not paying their respective debts as they mature, or (g) becoming insolvent, as that term is defined in the Federal Bankruptcy Code; (iv) any claim or allegation that Casa Madrona was not authorized to execute any of the Replacement Notes, make the Additional Draw, direct the Additional Draw be applied to the indebtedness of MHI to the Bank, or give collateral security with respect to any of the Replacement Notes or Additional Draw; or (v) any claim or allegation that the guaranties given by Mitchell and Mitchell Hotel Group, LLC, as reaffirmed by Reaffirmations of Guaranties, dated the date hereof, to guarantee the indebtedness of Casa Madrona to Bank, with respect to the additional indebtedness related to the Additional Draw or the Replacement Notes, are invalid or unenforceable in whole or in part.

Case: 09-12536    Doc# 61    Filed: 09/09/09    Entered: 09/09/09 13:39:28    Page 30 of 33

3.     Governing Law.  This Agreement has been executed in the State of Georgia and shall be interpreted, and the rights and obligations of the parties hereto determined, in accordance with the internal laws of the State of Georgia.

4.     Jurisdiction and Venue.  Mitchell consents to the exercise of personal jurisdiction over Mitchell in Federal Court in the Northern District of Georgia, and the Superior Court of the State of Georgia, County of Fulton.  Mitchell consents and submits to and agrees that venue in any such suit or legal action is proper in said courts and county and hereby expressly waives any and all personal rights under applicable law or in equity to object to the jurisdiction and venue in said courts.  The jurisdiction and venue of the courts consented and submitted to and agreed to in this paragraph are not exclusive but are cumulative and in addition to the jurisdiction and venue of any other court under any applicable laws or in equity.

5.     Successors and Assigns.  This Agreement shall be binding upon and shall inure to the benefit of the parties hereto and their respective successors and assigns.

6.     Severability.  Wherever possible, each provision of this Agreement shall be interpreted in such manner as to be effective and valid under applicable law, but if any provision of this Agreement shall be prohibited by or invalid under applicable law, such provision shall be ineffective only to the extent of such prohibition or invalidity, without invalidating the remainder of such provision or the remaining provisions of this Agreement.

7.     Entire Agreement; Amendments.  This Agreement expresses the entire understanding and agreement of the parties hereto with respect to the subject matter hereof and supersedes all prior understandings and agreements of the parties regarding the same subject matter. This Agreement may not be amended or modified except by a writing signed by Mitchell, and no provision of this Agreement shall be deemed waived by the Bank except in a writing signed by the Bank.

IN WITNESS WHEREOF, the parties have caused this Indemnification Agreement to be signed, sealed and delivered on the day and year first above written.

By: _____
GUY MITCHELL, individually

Sworn to and subscribed before me
This 26th day of June, 2007.

_____
Notary Public
My commission expires:

3926688_2.DOC                                            3

## PROOF OF SERVICE

The undersigned declares:

    I am employed in the County of San Francisco, State of California. I am over the age of 18 and am not a party to the within action; my business address is c/o Nossaman LLP, 50 California Street, 34th Floor, San Francisco, CA 94111.

    On September 9, 2009, I served the foregoing

**SUPPLEMENTAL DECLARATION OF JOHN T. HANSEN IN SUPPORT OF MOTION FOR FEDERAL DEPOSIT INSURANCE CORPORATION FOR RELIEF FROM STAY**

    on parties to the within action as follows:

☒     (By U.S. Mail) On the same date, at my said place of business, an original enclosed in a sealed envelope, addressed as shown on the attached service list was placed for collection and mailing following the usual business practice of my said employer. I am readily familiar with my said employer's business practice for collection and processing of correspondence for mailing with the United States Postal Service, and, pursuant to that practice, the correspondence would be deposited with the United States Postal Service, with postage thereon fully prepaid, on the same date at San Francisco, California.

    Executed on September 9, 2009.

☒     (FEDERAL) I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Sally Gifford

## SERVICE LIST

Tracy Green
Elizabeth Berke-Dreyfus
Wendel, Rosen, Black and Dean
1111 Broadway, 24th Floor
Oakland, CA 94607

Donna Tamanaha
Assistant U.S. Trustee
U.S. Trustee's Office
235 Pine Street, Suite 700,
San Francisco, CA 94104-3401

Richard A. Rogan of
Jeffer, Mangels, Butler & Marmaro LLP
Two Embarcadero Center, 5th Floor
San Francisco, California 94111

John A. Vos, Esq.
1430 Lincoln Ave.
San Rafael, CA 94901

240762_1.DOC