John T. Hansen (CA34639)
jhansen@nossaman.com
James H. Vorhis (CA245034)
jvorhis@nossaman.com
Nossaman LLP
50 California Street, 34th Floor
San Francisco, CA 94111
Telephone: 415.398.3600
Facsimile: 415.398.2438

FEDERAL DEPOSIT INSURANCE
CORPORATION as Receiver for Integrity Bank

# UNITED STATES BANKRUPTCY COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MHG CASA MADRONA HOTEL, LLC, <br><br> Debtor, | Case No: 09-12536 <br><br> **REPLY DECLARATION OF CHARLES P FARRELL, JR. RE MOTION FOR RELIEF FROM STAY OR IN THE ALTERNATIVE TO DISMISS THE CASE** <br><br> Date: October 2, 2009 <br> Time: 10:00 a.m. |

Case: 09-12536    Doc# 79    Filed: 09/25/09    Entered: 09/25/09 14:42:57    Page 1 of 22

I, Charles P. Farrell, Jr., declare:

1.    I am currently employed by the Federal Deposit Insurance Corporation (FDIC) in its capacity as receiver of Integrity Bank of Alpharetta, Georgia. The matters stated in the declaration are known to me of my own personal knowledge, except as to matters stated on information and belief, which I believe to be true.

2.    I am assigned to the account of MHG Casa Madrona, LLC ("Debtor") as it is the largest single borrower of Integrity Bank.

3.    I was informed by counsel for the FDIC that Guy Mitchell, the principal of the Debtor stated in a declaration that only $10 million of the May 3, 2005 note for $29,550,000 was funded. On order to determine the accuracy of that statement, I caused employees under my supervision to conducted search of the "Jack Henry" computer system maintained by Integrity Bank for a history of this loan. As a result of that search, a Loan History Record was produced which is attached hereto as Exhibit CFR 1. All of the entries on Exhibit CFR·in the second printed column from the left with the number "31" reflect draws on the loan balance. Those entries are also coded with handwritten letters "A" to "FF" on the left side of the record.

4.    The Loan History Record reflects that the loan balance was fully drawn or disbursed up to the amount of $29,550,000, with the last disbursement being $8,050,008.94 on June 29, 2007. The record also shows that there were no payments made on account of this loan after July 21, 2006.

5.    The handwritten letters relate to a handwritten journal also maintained by Integrity Bank and which was located by an employee under my supervision. The handwritten journal is attached hereto as Exhibit CFR 2. Those entries show the uses of the funds drawn or disbursed from the loan account.   In general the journal shows that the draws were used primarily to pay interest ion this and other loans of Guy Mitchell or one or more·of the entities he controlled. Although not reflected on the journal, I have been informed and believe that the

DECLARATION OF CHARLES P FARRELL, JR. RE MOTION FOR RELIEF FROM STAY OR IN THE
ALTERNATIVE TO DISMISS THE CASE

Case: 09-12536    Doc# 79    Filed: 09/25/09    Entered: 09/25/09 14:42:57    Page 2 of 22

1 final draw of some $8 million was used to pay down or pay off certain loans of Guy Mitchell

2 entities as part of the June 2007 settlement and forbearance agreement.

3      6.     I was also informed by counsel for the FDIC that Mr. Mitchell stated in his

4 declaration that he had reached some agreement with Integrity Bank to allow his and his

5 entities, including the debtor, to "walk away" from its obligations to the bank. I caused

6 employees under my supervision to search the Mitchell files maintained by Integrity Bank to

7 determine whether such an agreement existed. The only agreement of any nature that was

8 entered into between the ban and Mr. Mitchell that conceivably meets the above description

9 which was found in the bank's records is the June 26, 2007 letter of intent which is attached as

10 Exhibit D to Mr. Mitchell's declaration.

11      7.     The June 26, 2007 letter in Part B provided that Mr. Mitchell was to provide

12 certain documentation to the bank. I caused employees under my supervision to search the

13 Mitchell files maintained by Integrity Bank to determine whether any of those documents had

14 been provided to the bank. That search produced one or two of the documents required, but

15 we found no evidence in the flies that all of the documents had been produced. Notably

16 absent were any documents relating to conversion of the hotel to condominium units.

17      8.     I also caused a search of the minutes of the board of directors of Integrity Bank

18 to be conducted with respect to the status of the proposed agreement reflected in the June 26,

19 2007 letter of intent. Attached hereto as Exhibit CFR 3 and 4 are copies of the minutes of the

20 board for August 15, 2007 and September 5, 2007. These are the last in time minutes that

21 contain references to the Casa Madrona property and proposed agreement. Also attached

22 hereto as Exhibit CFR 5 is a copy of the minutes of the August 8, 2007 board meeting in which

23 the board was informed that it was "waiting to hear from the FDIC" regarding then proposal to

24 take ownership to the Casa Madrona Hotel.

25      9.     No documents were found as a result of the search of the Integrity Bank

26 Mitchell files that I caused to occur indicating that the FDIC approved any transaction relating

27

28 241248_1.DOC             3             Case No. 09-12536

DECLARATION OF CHARLES P FARRELL, JR. RE MOTION FOR RELIEF FROM STAY OR IN THE
ALTERNATIVE TO DISMISS THE CASE

to the Casa Madrona Hotel.  An ex bank employee retrieved from her computer hard drive a copy of a Report of Examination from the FDIC dated October 23, 2007.  Attached hereto as Exhibit CFR 6 is the pertinent excerpt of that report that discussed the bank's relationship with Mr. Mitchell and his controlled entities.

I declare under penalty of perjury under the law of the State of Georgia that the foregoing is true and correct to the best of my knowledge, except as to matters stated on information and belief, which I believe to be true.

Executed on September 25, 2009, at Alpharetta, Georgia.

_____
Charles P. Farrell, Jr.

Case: 09-12536    Doc# 79    Filed: 09/25/09    Entered: 09/25/09 14:42:57    Page 4 of 22

FDIC as Receiver for Integrity LOAN HISTORY RECORD    LN3650P

5/12/05 to  9/22/09       --Request--        PAGE    1
MHG CASA MADRONA HOT
Loan#-      400542800 L Made- 5/12/05 Amt- 29550000.00 Calrp-1A
Term-    2 Pmts-        .00 Rate- 12.000000 Dlr #-      Off- LY1
Type- Commercial Const       Next Due 7/03/07
 Accrued            .00373  Dealer Interest        .00000
 Daily Accr.    9,850.00000  Secondary Acc.  9,817,512.72305
 Other Charge            .00   Date paid off  0/00/00
 PD10-   2 PD30-    PD60-     PD90-    Exten-    Renew-    1
 PD120-     PD150-    PD180-

      C CASA MADRONA HOTEL

      X Acct. Assigned to me in for foreclosure case 10/17.  Draft

      X case submitted to D. Hamilton P.M. 11/14.

-------------------------------------------------------------
MHG Casa Madrona Hotel LLC              Cif Number- M000661
Care of: Peter Jonas               Home Phone
8370 West Flagler Street, Suite 125   Bus. Phone
Miami FL 33144


-------------------------------------------------------------

Guy Mitchell                      Cif Number M000299
Care of: Peter Jonas               Home Phone
8370 West Flagler Street, Suite 125   Bus. Phone
Miami FL 33144                   ******* Guarantor   *******
-------------------------------------------------------------

| Posted | T/C | Amount | Balance | Due For |
|--------|-----|--------|---------|---------|
| 5/12/05 | 889 | | 7.250000 | Rate Change |
| 5/12/05 | 31 | 12,000,000.00 | 12,000,000.00 | 5/12/05 |
| 6/06/05 | 77 | 58,000.00 | 12,000,000.00 | 6/06/05 |
| 6/06/05 | 912 | 58,000.00 | 12,000,000.00 | 6/06/05 |
| 7/01/05 | 889 | | 7.500000 | Rate Change |
| 7/01/05 | 33 | 83.33 | 12,000,000.00 | 7/01/05 |
| 7/05/05 | 77 | 72,500.00 | 12,000,000.00 | 7/05/05 |
| 7/05/05 | 912 | 72,500.00 | 12,000,000.00 | 7/05/05 |
| A 7/29/05 | 31 | 200,000.00 | 12,200,000.00 | 7/29/05 |
| 8/05/05 | 77 | 77,916.67 | 12,200,000.00 | 8/05/05 |
| 8/05/05 | 912 | 77,916.67 | 12,200,000.00 | 8/05/05 |
| 8/10/05 | 889 | | 7.750000 | Rate Change |
| 8/10/05 | 33 | 84.72 | 12,200,000.00 | 8/10/05 |
| B 8/25/05 | 31 | 240,000.00 | 12,440,000.00 | 8/25/05 |
| C 9/07/05 | 31 | 11,787.50 | 12,451,787.50 | 9/05/05 |
| 9/07/05 | 77 | 81,370.83 | 12,451,787.50 | 9/05/05 |
| 9/07/05 | 912 | 81,370.83 | 12,451,787.50 | 9/05/05 |
| 9/21/05 | 889 | 7.750000 | 8.000000 | Rate Change |
| D 9/29/05 | 31 | 155,400.00 | 12,607,187.50 | 10/05/05 |
| D 9/30/05 | 31 | 51,900.00 | 12,659,087.50 | 10/05/05 |

Case: 09-12536   Doc# 79   Filed: 09/25/09   Entered: 09/25/09 14:42:87   Page 5 of 22   EXHIBIT-GFR 1

FDIC as Receiver for Integrity LOAN HISTORY RECORD    LN3650P

5/12/05 to  9/22/09         --Request--            PAGE    2
MHG CASA MADRONA HOT
Loan#-       400542800 L
----------------------------------------------------------------

| Posted | T/C | Amount | Balance | Due For |
|--------|-----|--------|---------|---------|
| 10/05/05 | 31 | 80,981.05 | 12,740,068.55 | 10/05/05 |
| 10/05/05 | 77 | 80,981.05 | 12,740,068.55 | 10/05/05 |
| 10/05/05 | 912 | 80,981.05 | 12,740,068.55 | 10/05/05 |
| 10/13/05 | 918 | 1,926.63 | 12,740,068.55 | 11/05/05 |
| 10/18/05 | 919 | 1,926.63 | 12,740,068.55 | 11/05/05 |
| 10/18/05 | 918 | 2,368.99 | 12,740,068.55 | 11/05/05 |
| 10/18/05 | 889 | 8.000000 | 7.750000 | Rate Change |
| 10/19/05 | 919 | 2,543.93 | 12,740,068.55 | 11/05/05 |
| 10/19/05 | 889 | 7.750000 | 8.000000 | Rate Change |
| 10/31/05 | 31 | 378,497.57 | 13,118,566.12 | 11/05/05 |
| 10/31/05 | 77 | 89,326.84 | 13,118,566.12 | 11/05/05 |
| 10/31/05 | 912 | 89,326.84 | 13,118,566.12 | 11/05/05 |
| 11/02/05 | 919 | 91.10 | 13,118,566.12 | 12/05/05 |
| 11/02/05 | 889 | 8.000000 | 8.250000 | Rate Change |
| 11/29/05 | 31 | 113,890.69 | 13,232,456.81 | 12/05/05 |
| 12/05/05 | 31 | 179,605.75 | 13,412,062.56 | 12/05/05 |
| 12/05/05 | 77 | 90,975.10 | 13,412,062.56 | 12/05/05 |
| 12/05/05 | 912 | 90,975.10 | 13,412,062.56 | 12/05/05 |
| 12/14/05 | 919 | 93.13 | 13,412,062.56 | 1/05/06 |
| 12/14/05 | 889 | 8.250000 | 8.500000 | Rate Change |
| 12/27/05 | 347 | 112,563.82 | 13,524,626.38 | 1/05/06 |
| 1/06/06 | 31 | 187,234.08 | 13,711,860.46 | 1/05/06 |
| 1/06/06 | 77 | 97,580.32 | 13,711,860.46 | 1/05/06 |
| 1/06/06 | 912 | 97,580.32 | 13,711,860.46 | 1/05/06 |
| 1/23/06 | 31 | 119,516.47 | 13,831,376.93 | 2/05/06 |
| 2/01/06 | 919 | 96.05 | 13,831,376.93 | 2/05/06 |
| 2/01/06 | 889 | 8.500000 | 8.750000 | Rate Change |
| 2/09/06 | 31 | 190,845.59 | 14,022,222.52 | 2/05/06 |
| 2/09/06 | 77 | 100,558.19 | 14,022,222.52 | 2/05/06 |
| 2/09/06 | 912 | 100,558.19 | 14,022,222.52 | 2/05/06 |
| 2/21/06 | 31 | 120,266.02 | 14,142,488.54 | 3/05/06 |
| 3/06/06 | 31 | 179,348.51 | 14,321,837.05 | 3/05/06 |
| 3/06/06 | 77 | 96,090.58 | 14,321,837.05 | 3/05/06 |
| 3/06/06 | 912 | 96,090.58 | 14,321,837.05 | 3/05/06 |
| 3/13/06 | 921 | 911.46 | 14,321,837.05 | 4/05/06 |
| 3/13/06 | 31 | 1,250,000.00 | 15,571,837.05 | 4/05/06 |
| 3/16/06 | 31 | 1,250,000.00 | 16,821,837.05 | 4/05/06 |
| 3/21/06 | 31 | 111,492.74 | 16,933,329.79 | 4/05/06 |
| 3/28/06 | 889 | 8.750000 | 9.000000 | Rate Change |
| 4/05/06 | 31 | 1,000,000.00 | 17,933,329.79 | 4/05/06 |
| 4/06/06 | 31 | 214,251.85 | 18,147,581.64 | 4/05/06 |
| 4/06/06 | 77 | 122,193.94 | 18,147,581.64 | 4/05/06 |
| 4/06/06 | 912 | 122,193.94 | 18,147,581.64 | 4/05/06 |
| 4/26/06 | 31 | 91,156.74 | 18,238,738.38 | 5/05/06 |
| 5/10/06 | 889 | 9.000000 | 9.250000 | Rate Change |
| 5/15/06 | 804 | 250.00 | 18,238,738.38 | 5/05/06 |
| 5/16/06 | 31 | 228,732.42 | 18,467,470.80 | 5/05/06 |
| 5/16/06 | 77 | 137,650.53 | 18,467,470.80 | 5/05/06 |

Case: 09-12536   Doc# 79   Filed: 09/25/09   Entered: 09/25/09 14:42:57   Page 6 of 22

FDIC as Receiver for Integrity LOAN HISTORY RECORD     LN3650P

MHG CASA MADRONA HOT
Loan#-       400542800 L
--------------------------------------------------------------

| Posted | T/C | Amount | Balance | Due For |
|--------|-----|--------|---------|---------|
| 5/16/06 | 912 | 137,400.53 | 18,467,470.80 | 5/05/06 |
| 5/16/06 | 911 | 250.00 | 18,467,470.80 | 5/05/06 |
| 5/19/06 | 31 | 44,608.79 | 18,512,079.59 | 6/05/06 |
| 5/26/06 | 31 | 89,487.98 | 18,601,567.57 | 6/05/06 |
| 6/09/06 | 31 | 570,000.00 | 19,171,567.57 | 6/05/06 |
| 6/09/06 | 31 | 274,074.04 | 19,445,641.61 | 6/05/06 |
| 6/09/06 | 77 | 146,218.71 | 19,445,641.61 | 6/05/06 |
| 6/09/06 | 912 | 146,218.71 | 19,445,641.61 | 6/05/06 |
| 6/23/06 | 31 | 94,956.41 | 19,540,598.02 | 7/05/06 |
| 6/26/06 | 31 | 500,000.00 | 20,040,598.02 | 7/05/06 |
| 6/29/06 | 889 | 9.250000 | 9.500000 | Rate Change |
| 7/06/06 | 31 | 500,000.00 | 20,540,598.02 | 7/05/06 |
| 7/07/06 | 31 | 275,508.74 | 20,816,106.76 | 7/05/06 |
| 7/07/06 | 77 | 149,255.90 | 20,816,106.76 | 7/05/06 |
| 7/07/06 | 912 | 149,255.90 | 20,816,106.76 | 7/05/06 |
| 7/19/06 | 31 | 591,650.00 | 21,407,756.76 | 8/05/06 |
| 7/21/06 | 31 | 92,234.30 | 21,499,991.06 | 8/05/06 |
| 8/15/06 | 804 | 250.00 | 21,499,991.06 | 8/05/06 |
| 8/29/06 | 77 | 174,948.23 | 21,499,991.06 | 8/05/06 |
| 8/29/06 | 912 | 174,948.23 | 21,499,991.06 | 8/05/06 |
| 9/14/06 | 77 | 176,246.97 | 21,499,991.06 | 9/05/06 |
| 9/14/06 | 912 | 176,246.97 | 21,499,991.06 | 9/05/06 |
| 10/06/06 | 77 | 170,208.26 | 21,499,991.06 | 10/05/06 |
| 10/06/06 | 912 | 170,208.26 | 21,499,991.06 | 10/05/06 |
| 11/09/06 | 77 | 176,131.87 | 21,499,991.06 | 11/05/06 |
| 11/09/06 | 912 | 175,881.87 | 21,499,991.06 | 11/05/06 |
| 11/09/06 | 911 | 250.00 | 21,499,991.06 | 11/05/06 |
| 12/06/06 | 77 | 170,208.27 | 21,499,991.06 | 12/05/06 |
| 12/06/06 | 912 | 170,208.27 | 21,499,991.06 | 12/05/06 |
| 1/09/07 | 77 | 175,881.87 | 21,499,991.06 | 1/05/07 |
| 1/09/07 | 912 | 175,881.87 | 21,499,991.06 | 1/05/07 |
| 2/15/07 | 804 | 250.00 | 21,499,991.06 | 2/05/07 |
| 3/15/07 | 804 | 250.00 | 21,499,991.06 | 2/05/07 |
| 4/13/07 | 804 | 250.00 | 21,499,991.06 | 2/05/07 |
| 5/03/07 | 891 | 1 | 3 | Status Change |
| 6/29/07 | 891 | 3 | 5 | Status Change |
| 6/29/07 | 31 | 8,050,008.94 | 29,550,000.00 | 7/03/07 |
| 6/29/07 | 89 | 992,881.53 | 29,550,000.00 | 7/03/07 |
| 6/29/07 | 802 | .00 | 29,550,000.00 | 7/03/07 |
| 7/13/07 | 804 | 5.00 | 29,550,000.00 | 7/03/07 |
| 9/19/07 | 918 | 410.41 | 29,550,000.00 | 7/03/07 |
| 9/19/07 | 889 | 9.500000 | 9.000000 | Rate Change |
| 10/31/07 | 889 | 9.000000 | 8.750000 | Rate Change |
| 12/12/07 | 918 | 205.20 | 29,550,000.00 | 7/03/07 |
| 12/12/07 | 889 | 8.750000 | 8.500000 | Rate Change |
| 1/09/08 | 88 | 5,910,000.00 | 23,640,000.00 | 7/03/07 |
| 1/11/08 | 950 | 5,910,000.00 | 29,550,000.00 | 7/03/07 |
| 1/22/08 | 90 | 992,881.53 | 29,550,000.00 | 7/03/07 |

Case: 09-12536   Doc# 79   Filed: 09/25/09   Entered: 09/25/09 14:42:57   Page 7 of 22

FDIC as Receiver for Integrity LOAN HISTORY RECORD     LN3650P

 5/12/05 to  9/22/09          --Request--              PAGE    4
MHG CASA MADRONA HOT
Loan#-       400542800 L
-----------------------------------------------------------------

| Posted | T/C | Amount | Balance | Due For |
|--------|-----|--------|---------|---------|
| 1/22/08 | 889 | 8.500000 | 7.750000 | Rate Change |
| 1/30/08 | 889 | 7.750000 | 7.250000 | Rate Change |
| 3/18/08 | 889 | 7.250000 | 7.000000 | Rate Change |
| 11/17/08 | 889 | 7.000000 | 12.000000 | Rate Change |
| 11/17/08 | 919 | 2,507,826.19 | 29,550,000.00 | 7/03/07 |
| 11/17/08 | 889 | 12.000000 | 7.000000 | Rate Change |
| 11/18/08 | 78 | 2,638.23 | 29,550,000.00 | 7/03/07 |
| 11/18/08 | 78 | 2,382.92 | 29,550,000.00 | 7/03/07 |
| 11/18/08 | 78 | 2,638.23 | 29,550,000.00 | 7/03/07 |
| 11/18/08 | 78 | 324,882.78 | 29,550,000.00 | 7/03/07 |
| 11/18/08 | 90 | 2,507,210.58 | 29,550,000.00 | 7/03/07 |
| 11/18/08 | 89 | 2,507,210.58 | 29,550,000.00 | 7/03/07 |
| 11/18/08 | 805 | 250.00 | 29,550,000.00 | 7/03/07 |
| 11/18/08 | 805 | 250.00 | 29,550,000.00 | 7/03/07 |
| 11/18/08 | 805 | 250.00 | 29,550,000.00 | 7/03/07 |
| 11/18/08 | 805 | 5.00 | 29,550,000.00 | 7/03/07 |
| 12/30/08 | 889 | 7.000000 | 12.000000 | Rate Change |
| 12/30/08 | 919 | 2,684,305.36 | 29,550,000.00 | 7/03/07 |
| 12/31/08 | 90 | 177,094.78 | 29,550,000.00 | 7/03/07 |
| 12/31/08 | 89 | 2,684,305.36 | 29,550,000.00 | 7/03/07 |
|  | Current Balance | | 29,550,000.00 | |

----Life/Period to Date----  ----Year/Period to Date----
| | | | |
|--|--|--|--|
| Principal | .00 | | .00 |
| Interest | 2,443,744.13 | 20 | .00 |
| Advances | 29,550,000.00 | 34 | .00 |
| Late Charges | 500.00 | 2 | .00 |
| Escrow | .00 | | .00 |
| Other Debits | .00 | | .00 |
| Other Credits | .00 | | .00 |

PARTICIPATION: _____

CUSTOMER: MHG Casa Madrona Hotel  LOAN AMOUNT: $ 29,550,000.00

PROPERTY: L  INITIAL DRAW: $ 12,000,000.00  5/12/05

LOAN: #4005428.00 CHECKING: 1007847  CONST. FUNDS: $ 17,550,000.00

CONTACT: Guy Mitchell  BUILDERS RISK: _____

SPEC: _____  CONTRACT: _____

| | Date of Inspection | Percent Complete This Insp. | Total % of Completion | Amount Approved | Amount Disbursed | Left to Draw | Constr. Funds Disbursed |
|---|---|---|---|---|---|---|---|
| A 1. | 7/29/05 | draw to pay interest on Guy mitchells loans | | $200,000 | 200,000 | $17,350,000 | $12,200,000. |
| B 2. | 8/25/05 | draw to pay interest on Guy mitchells loans | | $240,000 | $240,000 | $17,110,000. | $12,440,000 |
| C 3. | 9/7/05 | to pay remaining int due 9/5 on MHG | | $11,787.50 | $11,787.50 | $17,098,212.50 | $12,451,787.50 |
| D 4. | 9/29/05 | to pay int on other Guy mitchell loans | | $155,400 | 155,400 | $16,942,812.50 | $12,607,187.50 |
| D 5. | 9/30/05 | to pay int on other mitchell loans | | $51,900 | $51,900 | $16,890,912.50 | $12,659,087.50 |
| E 6. | 10/5/05 | int due 4005428.00 MHG loan | | $80,981.05 | $80,981.05 | $16,809,931.45 | $12,740,068.55 |
| 7 7. | 10/31/05 | pay int due on various loans | | $378,497.57 | 378,497.57 | $16,431,433.88 | $13,118,566.12 |
| G 8. | 11/28/05 | pay int on loans | | $113,890.69 | $113,890.69 | $16,317,543.19 | $13,232,456.81 |
| H 9. | 12/5/05 | to pay int on loans | | $179,605.75 | $179,605.75 | $16,137,937.44 | $3,412,062.56 |
| I 10. | 12/27/05 | int. pymts | | $112,563.82 | $112,563.82 | $16,025,373.62 | $13,524,626.38 |
| J 11. | 1/6/06 | int pymts | | $187,234.08 | $187,234.08 | $15,838,139.54 | $13,711,860.46 |
| K 12. | 1/23/06 | Interest Payments | | $119,516.47 | $119,516.47 | $15,718,623.07 | $13,831,376.93 |
| L 13. | 2/5/06 | Interest payments | | $190,845.59 | $190,845.59 | $15,527,777.48 | $14,022,222.52 |
| M 14. | 2/21/06 | Interest payments | | $120,266.00 | $120,266.00 | $15,407,511.48 | $14,142,488.54 |
| N 15. | 3/10/06 | Interest Payments | | $179,348.51 | $179,348.51 | $15,228,162.95 | $14,021,837.05 |
| O | 3/10/06 | draw - wire to Regions Bank | | 1,250,000. | 1,250,000. | 13,978,162.95 | 15,871,837.05  15,571,837.05 |

COMMENTS: _____

EXHIBIT CFR 2

MHG Casa Madrona Hotel, LLC
4005428.00

| | Date of Inspection | Percent Complete | Total % Complete | Amount Approved | Amount Disbursed | Left to Draw | Total Funds Disbursed |
|---|---|---|---|---|---|---|---|
| P | 3/16/2006 | DRAW FROM LOAN | | $1,250,000.00 | $ 1,250,000.00 | $ 12,728,162.95 | $16,821,837.05 |
| Q | 3/21/06 | Interest | Payments | 4 111,492.74 | $ 111,492.74 | $12,016,670.21 | $16,933,329.79 |
| R X | | | | | | 11,616,670.21 | 17,933,329.79 |
| S | 4/6/06 | Int. Pymts | | 214,251.85 | 214,251.85 | 11,402,418.36 | 18,147,581.64 |
| T | 4/26/06 | Int. Pymts | | 91,156.74 | 91,156.74 | 11,311,261.62 | 18,238,738.38 |
| U | 5/16/06 | Int. Pymts | | 228,732.40 | 228,732.40 | 11,082,529.22 | 18,467,470.80 |
| W W | 5/26 | Int Pymts | | 87,487.99 | 89,487.99 | 10,995,041.22 | 18,601,567.57 |
| X X | | | | | | 10,435,041.22 | 19,471,567.57 |
| Y | 6/9/06 | Int Res | | 274,074.04 | " " | 10,185,548.34 | 19,445,641.61 |
| V | 5/19 | | | 44,608.79 | | 10,140,939.57 | 18,513,079.59 |
| Z | 6/23/06 | Int Payments | | $94,956.41 | | 10,009,401.98 | 19,540,598.02 |
| AA | | | | | | 9,509,401.98 | 20,040,598.00 |
| BB | | | | | | 9,009,401.98 | 20,540,598.00 |
| CC | 7/7/06 | Int. Pymts | | 275,508.74 | | 8,733,893.24 | 20,816,106.76 |
| DD | | | | | | 8,142,243.24 | 21,407,756.76 |
| EE | 7.21.06 | Int. Pymts | | 92,234.30 | | 8,050,008.94 | 21,499,991.06 |

# INTEGRITY BANK
## REGULAR MEETING OF THE BOARD OF DIRECTORS

### August 15, 2007

The regular meeting of the Board of Directors of Integrity Bank was held July 18, 2007, at 1:00 p.m. in the Integrity Bank Suites Boardroom. Chairman Chuck Puckett called the meeting to order asked Mr. Hartsfield to offer the prayer.

All Board Members were present in person, Doug Ballard, Joe Ernest, Don Hartsfield, Jack Murphy, Dick Peden, Chuck Puckett, Neal Reynolds and Steve Skow. Guests present were Bank Counsel from Miller & Martin, Ken Carroll, Mike Marshall, and Kent Antley, Attorney Jack Gray of Gray & Garrett, and Attorney Gerald Blanchard of Powell Goldstein. Bank Officers Rita Gray, Todd Foster, Suzanne Long, Kelly Klem and Debbi Oates were also present.

The Minutes of the following meetings were reviewed:
- July 2, 2007 Integrity Bank Casa Madrona Building Committee Special Meeting
- July 10, 2007 Integrity Bank Special Board Meeting
- July 13, 2007 Integrity Bank Special Board Meeting
- July 18, 2007 Integrity Bank Regular Board Meeting
- July 31, 2007, 8:30 a.m. Integrity Bank Special Board Meeting
- July 31, 2007, 9:00 a.m. Integrity Bank Special Board Meeting

A motion was made by Mr. Reynolds, seconded by Mr. Peden, to approve the Minutes as presented. Motion carried.

Chairman Puckett then asked for an update on Casa Madrona. Ken Carroll stated that the Bank had received a letter from the Department of Banking and Finance, and a verbal response from Tony Womack of the FDIC, both stating they had "no objection" to Integrity Bank taking a deed in lieu of foreclosure on the Casa Madrona Hotel. Mr. Skow elaborated that foreclosure on the property would take four to six months to get the property and if we sued Mitchell for any deficiencies, we would be in third place behind two $50 million lawsuits. The option of taking the deed in lieu of foreclosure would take less time and Mr. Mitchell had signed a commitment letter allowing the same. Mr. Hartsfield is receiving requests for information on the property and a feasibility study is in process by Richard Ragatz of Ragatz & Associates, who is at the Casa Madrona Hotel today. Mr. Antley handed out a list of documents that need to be executed by Mr. Mitchell and asked the Board for their approval to send these documents to Mr. Mitchell for execution. The management of the day-to-day business of the Casa Madrona Hotel by West Paces was discussed. The Board tentatively decided to maintain West Paces in their current capacity if further review warranted their services, and to form an LLC controlled by the Bank to own the Casa Madrona Hotel. Other precautions were discussed to further protect the Bank's interest in securing the deed in lieu of foreclosure on the Casa Madrona Hotel. A motion was made by Mr. Peden, seconded

Case: 09-12536    Doc# 79    Filed: 09/25/09    Entered: 09/25/09 14:42:57    Page 11 of 22

EXHIBIT CFR 3

by Mr. Murphy, to approve the list of documents to be sent to Mr. Mitchell for execution, to continue to use West Paces to manage the day-to-day operations of the Casa Madrona Hotel for the time being, and to form a new LLC for the Casa Madrona Hotel, owned by Integrity Bank. Motion carried.

Ms. Long presented the July 31, 2007 Bank Financial Reports. A motion was made by Mr. Murphy, seconded by Mr. Skow, to approve the Bank Financial Reports, subject to restatement if necessary, based on the final report and rulings of the FDIC regarding the recent exam at the Bank level. Motion carried.

Mr. Klem reviewed with the Board the Investment Reports stating that no purchases were made in July, 2007.

Mr. Klem reviewed the Asset/Liabilities and Liquidity Reports for July 2007 and noted that the reports and the dependency ratios were within policy for the month of July. Liquidity projections models* indicate that brokered deposits are necessary to support future liquidity. Mr. Klem is preparing a waiver request for the FDIC to allow the Bank to continue to replace (not increase) brokered deposits.

Mrs. Gray reviewed the deposit reports for the month of July 2007, noting that 602 new accounts were opened during July.

Mrs. Gray reviewed the cash item and overdraft reports, noting that there were no cash items and all overdrafts have cleared. A motion was made by Mr. Murphy, seconded by Mr. Ernest to approve the cash item and overdraft reports. Motion carried.

Mr. Ballard reviewed with the Board the new and renewed Loan Reports, past-due, OREO, repo, and other asset reports. Mr. Ballard thanked the Directors Loan Committee and noted that 17 loans for approximately $34 million were approved in July. Mr. Ballard reported there was one insider loan in July, with Mr. Murphy as a co-signer. Mr. Foster and Mr. Ballard discussed each past-due loan and collection efforts. Mr. Ballard gave an update regarding the change in methodology in computing our loan loss reserve, stating that all of the Bank's loans are now on a spreadsheet with the current loan grading system and various valuation and financial information for that particular loan and borrower. The next step is to re-grade and reevaluate the risk or loss on all of the Bank's loans; each loan will need to be scrutinized to determine the correct grade, which is labor intensive. The Board discussed hiring a loan review company to facilitate this process. After discussion a motion was made by Mr. Ernest, seconded by Mr. Reynolds, to approve the new and renewed loans, the loan reports, the hiring of Credit & Compliance to facilitate re-grading all of Integrity Bank's loans, the adequacy of the Loan Loss Reserves subject to restatement if necessary, based on the final report and rulings of the FDIC regarding the recent exam at the Bank level and to approve the one insider loan. Motion carried. Mr. Murphy abstained from voting.

Case: 09-12536    Doc# 79    Filed: 09/25/09    Entered: 09/25/09 14:42:57    Page 12 of 22

Mrs. Strait then joined the meeting and reviewed with the Board the Minutes* from the meeting of the Audit Committee, held on July 18, 2007. After discussion a motion was made by Mr. Reynolds, seconded by Mr. Peden, to approve the Audit Committee Report as presented. Motion carried. Mrs. Strait left the meeting.

President Skow discussed with the Board the Loan Technical Exceptions Report and handed out two lists; one with all Loan Technical Exceptions and one that did not include tax returns and financial statement Technical Exceptions, for review by the Board.

President Skow discussed the most recent Credit & Compliance Loan Review Report, dated June 11, 2007. Each Board Member indicated they had received and reviewed a copy of the Report.

President Skow led a discussion regarding amended dates for Integrity Bank's Summary Plan correcting deficiencies and the revised Loan Policy. It was decided to table these items.

President Skow handed out a worksheet* detailing the classified loans to capital ratio calculations as of 3/31/2007 and 6/30/2007. The Board asked Suzanne Long to talk with the FDIC for clarification on their classified loans to capital ratio calculation discussed in the Exit Conference with the FDIC.

Mrs. Gray handed out a list of banks* for Fed Funds purchased and sold through Bankers Bank. After discussion, a motion was made by Mr. Peden, seconded by Mr. Hartsfield to approve the list of banks for Fed Funds purchased and sold through Bankers Bank as presented. Motion carried.

Mr. Klem handed out information* regarding the annual renewal of a portion of the Bank's and Bank Holding Company's insurance policies. After discussion, a motion was made by Mr. Hartsfield, seconded by Mr. Reynolds, to approve the renewal of the insurance policies as presented. Motion carried.

Mr. Ballard stated that negotiations had broken down for the proposed Hamilton Mill Branch site and that purchase of the site was no longer feasible. After discussion, it was decided to discontinue North Gwinnett Branch site location efforts.

Chairman Puckett led a discussion regarding Board Fees paid to the Directors of the Bank and Bank Holding Company. A motion was made by Mr. Peden, seconded by Mr. Reynolds, to pay Directors of the Bank and Bank Holding Company a fee of $1,000 for Bank Board Meetings and $1,000 for Bank Holding Company Meetings, per month, with no other fees, or deferral of fees, subject to attendance in person except for one meeting per year which may be attended by calling in and one absence allowed per year. Directors are required to stay for the entire meeting or their fee may be prorated at

Case: 09-12536    Doc# 79    Filed: 09/25/09    Entered: 09/25/09 14:42:57    Page 13 of 22

the discretion of the Board. Motion carried. It was noted that the only exception to the telephone rule would be if the Director maintained full-time residency outside the State of Georgia.

There being no further business to come before the meeting, a motion to adjourn was made by Mr. Peden, seconded by Mr. Hartsfield. Motion carried.

Respectfully submitted,

Debbi Oates
Recording Secretary

* Copies of these documents are in the August 2007 Board Meeting File

Case: 09-12536     Doc# 79     Filed: 09/25/09     Entered: 09/25/09 14:42:57     Page 14 of 22

# INTEGRITY BANK
## SPECIAL MEETING OF THE BOARD OF DIRECTORS
### September 5, 2007

Chairman Chuck Puckett called a Special Meeting of the Board of Directors of Integrity Bank for the purpose of reviewing and approving the Bank's Funds Management Policy.

Chairman Puckett called the meeting to order at 2:30 p.m. Bank Directors present were Doug Ballard, Don Hartsfield, Jack Murphy and Neal Reynolds. Chuck Puckett participated via conference call. Directors Joe Ernest and Dick Peden were absent. Others present were Consultant Pat Frawley, and Interim President Kelly Klem.

The Board briefly discussed items accomplished on the FDIC exam. The Board also discussed the status Casa Madrona property.

Kelly Klem recapped the discussion he had earlier today with Tony Womack of the FDIC on the Bank's brokerage fund waiver. He then presented changes in the Bank's Funds Management Policy. After discussion, a motion was made by Mr. Hartsfield, seconded by Mr. Ballard, to 1) approve the Bank's Funds Management Policy as presented by Mr. Klem and 2) to approve the out-of-policy position for brokered and Qwik-rate deposits and the potential out-of-policy position for other related short-term funding sources (copy attached). Motion carried unanimously.

Respectfully submitted,


Kelly Klem
Interim President & CEO

Case: 09-12536    Doc# 79    Filed: 09/25/09    Entered: 09/25/09 14:42:57    Page 15 of 22

EXHIBIT CFR 4

Chairman Chuck Puckett called a Special Meeting of the Board of Directors of Integrity Bank for the purpose of reviewing the Summary Plan *(Integrity Bank's Plan To Correct Its Deficiencies And Return Its Status to A High-Performing Bank, dated 8/8/2007).*

Chairman Puckett called the meeting to order and Mr. Reynolds offered a prayer. All Bank Directors participated in person, Doug Ballard, Joe Ernest, Don Hartsfield, Jack Murphy, Dick Peden, Chuck Puckett, Neal Reynolds and Steve Skow. Bank Officers Suzanne Long and Kelly Klem were also in attendance. Also present were representatives from the Bank's corporate law firm of Miller & Martin PLLC, Ken Carroll and Michael Marshall; regulatory bank counsel, Mr. Jack Gray of Gray & Garrett Law Firm, and Mr. Gerald Blanchard of Powell Goldstein, LLP, and Richard Jones, Partner, of Mauldin & Jenkins.

President Skow handed out the Board's Summary Plan *(Integrity Bank's Plan To Correct Its Deficiencies And Return Its Status to A High-Performing Bank, dated 8/8/2007)* and reviewed it in detail. After a lengthy discussion, the Summary Plan was amended. A motion was made by Mr. Ernest, seconded by Mr. Peden, to approve the Summary Plan as amended (copy attached). Motion carried. Attorney Jack Gray reminded the Board that all final actions of the Summary Plan would require full Board approval.

Ken Carroll, our corporate attorney, gave a progress report on the Bank's accepting a deed in lieu of on the Casa Madrona property. He noted that the Bank has received the Department of Banking & Finance "No objection" letter on the deed in lieu of and that we are waiting to hear from the FDIC so that we can take ownership of the property in the very near future. It was also noted that we have a potential buyer for the property in the $50 to $55 million price range.

EVP & COO Kelly Klem reviewed with the Board our current liquidity status and our projected liquidity over the next 12 months. Mr. Klem noted that approximately $45 million of brokered CDs would mature in the next 45 to 60 days and that we should seek approval to replace (but not increase) the $45 million of brokered CDs. After discussion the Board tabled the approval until further research could be conducted.

President Skow discussed the need to raise approximately $25 million in capital through a private placement offering to accredited investors. Attorney Mike Marshall led a discussion in the proper procedures of raising the additional capital. After a discussion, the capital issue was tabled for further research and would be reintroduced in the near future.

Case: 09-12536     Doc# 79     Filed: 09/25/09     Entered: 09/25/09 14:43:57     Page 19 of
22
EXHIBIT FR5

President Skow and Mike Marshall discussed not issuing a second quarter earnings press release and that the filing of the second quarter 10-Q would need to be extended until the Bank's CPA firm (Mauldin & Jenkins) could give a final report on second quarter earnings.

It was noted that a few of the Board Members and attorney Jack Gray would be meeting with the FDIC on August 13, 2007 to further discuss the results of the recent FDIC exam.

There being no further business, a motion to adjourn was made by Mr. Peden, second by Mr. Reynolds. Motion carried.

Respectfully submitted,

Steven M. Skow
President & CEO

Case: 09-12536    Doc# 79    Filed: 09/25/09    Entered: 09/25/09 14:42:57    Page 17 of 22



**FEDERAL DEPOSIT INSURANCE CORPORATION**
10 Tenth Street, NE, Suite 800
Atlanta, Georgia 30309-3906

*rec'd*
*10-25-07*

Atlanta Regional Office
Division of Supervision and
Consumer Protection
(678) 916-2200

October 23, 2007

Board of Directors
Integrity Bank
11140 State Bridge Road
Alpharetta, Georgia 30022

Dear Members of the Board:

Enclosed for your consideration is a copy of the report of examination of your bank prepared by Corporation Examiner Kevin R. Burns. The examination commenced on June 4, 2007, utilizing financial information as of March 31, 2007.

The examination disclosed serious financial and managerial weaknesses, which have contributed to the bank's current unsatisfactory condition. Oversight and direction provided by the Board of Directors and senior management have been generally ineffective in many key areas. The Report of Examination ("Report") details the areas of concern. You are urged to personally review the entire Report.

Based on the overall unsatisfactory condition, the bank will be added to the Division of Supervision and Consumer Protection's list of problem institutions. This notification to the bank's Board of Directors of the formal problem status is made in accordance with current Corporation policy. We request that the minutes of the next Board meeting indicate the date that this letter was received and the contents of the letter. We also ask that each of the directors, including any not attending the next Board meeting, sign a copy of this letter (enclosed) to acknowledge receipt of the letter. At the time of the examination, there were nine directors. If any changes in the composition of the Board have occurred, we would appreciate your advice so that our files may reflect that each director has signed a copy of the letter. If there have been no changes in the directorate, please so indicate on the letter when returned to the Regional Office.

As you were informed by this office in a letter dated August 17, 2007, we consider the bank to be in "troubled condition" as defined in Section 303.101(c) of the FDIC Rules and Regulations. Therefore, this office should be provided with the prior notification called for in Section 303.102(a) for any additions to the Board or senior executive management team of the bank. A copy of the notification should also be sent to the Georgia Department of Banking and Finance.

As an elected member of the Board of Directors, you have a duty to ensure that the bank is operated in a safe and sound manner and may be held liable for losses caused by your failure to properly supervise the affairs of the bank. I suggest that you review one or more of the publications that explain the functional and legal responsibilities of a bank director. Your attorney can also more fully explain this potential liability to you.

The FDIC is concerned with the manner in which the bank is being operated. An Order under Section 8(b) of the Federal Deposit Insurance Act is being considered. The proposed Order and corrective program for your bank will be fully discussed by FDIC Regional Office officials at a meeting with your Board in the near future. You are strongly urged to attend and participate in the discussion. We anticipate prompt implementation of the proposed Order and hope that you, as an individual director, will use your influence in securing full compliance with its provisions. Failure to take corrective action in a prompt and prudent manner could result in civil money penalties being recommended and/or more severe enforcement actions being recommended to the FDIC Board of Directors.

The examination report includes the composite and component ratings assigned under the Uniform Financial Institutions Rating System. These ratings are subject to the confidentiality restrictions of Part 309 of the FDIC Rules and Regulations. You may refer to the front cover of the report of examination for further details.

I urge you to focus your attention on the bank's problems and on your responsibilities as a member of the bank's governing body. If you have any questions, please contact Case Manager Tony Womack at (678) 916-2226.

Sincerely,

Mark S. Schmidt

Mark S. Schmidt
Regional Director

Enclosure

| AMOUNT, DESCRIPTION AND COMMENTS | CATEGORY | | |
|---|---|---|---|
| | Substandard | Doubtful | Loss |

GUY T. MITCHELL RELATIONSHIP 49,563 30,600

| Borrower/Entity | Collateral Description | Collateral Value | Loan Amount | Loan Balance | Loan Date | Maturity Date |
|---|---|---|---|---|---|---|
| (1) MHG Casa Madrona Hotel, LLC | Casa Madrona Resort, a condo/hotel, Sausalito, CA | 32,800 | 29,550 | 21,500 | 5/3/05 | 5/3/07 |
| (2) Guy Mitchell | Assignment of Rights - 72.74% interest in Royal Palm Manager, LLC. Royal Palm Resort, Miami Beach, FL. Unperfected. | No Value Assigned (NVA) | 4,500 | 4,499 | 3/21/05 | 4/21/07 |
| (3) Mitchell Hospitality Investments, LLC | Assignment of Rights- 45% in Chicago H&S Investors, LLC. Hotel 71, Chicago, IL. Unperfected. | NVA | 3,850 | 3,804 | 4/18/05 | 4/18/07 |
| Mitchell Hospitality Investments, LLC | Same as (3) above. | NVA | 3,725 | 3,725 | 5/3/05 | 5/3/07 |
| (4) Mitchell Hotel Group | Same as (2) above. | NVA | 8,000 | 7,983 | 3/14/05 | 3/13/07 |
| (5) Guy and Amy Mitchell | 14 Tahiti Beach Island Road, Coral Gables, FL. 2nd DSD. Prior Lien - $10MM. AV- $20MM. 2nd not recorded as of examination date. | NVA | 5,000 | 5,000 | 4/18/05 | 11/1/07 |
| (6) Airport North Business Center, LLC | 1129 - 1199 Willingham Dr., East Point, GA | 2,200 | 2,000 | 1,862 | 2/6/03 | 12/15/08 |
| (7) Red Oak Shopping Center, LLC (PTC Sold to New Frontier Bank, 23%) | 3454 Roosevelt Highway, Atlanta, GA | 5,600 | 3,312 | 2,526 | 10/7/02 | 8/7/08 |
| (8) Tri-Count Station Shopping Center, LLC | 7490 Old National Highway, Jonesboro, GA | 5,800 | 3,100 | 2,891 | 2/27/03 | 12/27/08 |
| (9) Pointe South Shopping Center, LLC (PTC Sold to Integrity Bank, 58%) | 8494 Highway 85, Jonesboro, GA | 4,000 | 1,450 | 1,363 | 8/20/03 | 7/20/07 |
| (10) Virginia Station Shopping Center, LLC | 1640 Virginia Avenue, College Park, GA | 1,800 | 1,391 | 1,363 | 10/16/02 | 8/16/08 |
| (11) Grove One Realty, LLC & Salem Crossing Shopping Center, LLC | Car wash in Miami, FL. 2nd DSD. 1st Mtg - $4.6MM. AV- $6.2MM (Released) | NVA | 4,500 | 4,499 | 3/15/04 | 4/1/07 |
| | Salem Crossing Shopping Center, Lithonia, GA 2nd Mtg - $3.2MM. AV- $6MM (Released) | NVA | | | | |
| (12) Printer's Row Investors & Blake Investors | 100% membership in Printer's Row. Blake Hotel, Chicago, IL | | | | | |
| Unperfected. | NVA | 12,500 | 12,495 | | 8/8/06 | 2/15/07 |
| (13) Melbourne Hotel Investors, LLC | 2nd Mtg on 51% interest in Tides Melbourne Hotel, Melbourne, FL. AV $12.3MM. No info on 1st. 2nd mtg. prohibited with 1st. | NVA | 7,500 | 6,653 | 8/8/06 | 2/15/07 |
| Totals | | 52,200 | 90,378 | 80,163 | | |

Case: 09-12536   Doc# 79   Filed: 09/25/09   Entered: 09/25/09 14:42:57   Page 20 of 22

| AMOUNT, DESCRIPTION AND COMMENTS | CATEGORY | | |
|---|---|---|---|
| | Substandard | Doubtful | Loss |

The table above summarizes the Guy T. Mitchell relationship. Mr. Mitchell is a RE entrepreneur that focused on investments in South Florida, North Carolina, and Atlanta. Reportedly, he was referred to former SLO Rob Skeen by a Colonial Bank EVP/Senior Lender. Initially, the relationship began primarily with the funding of various CRE projects in the Atlanta area in the form of shopping centers and some office and warehouse space. However, the relationship grew to include larger loans secured by intangible collateral in the form of assignment of rights in companies and primary and secondary liens on out-of-area RE.

During the last FDIC examination dated 4/25/05, the relationship totaled approximately $25MM. In May 2005, the bank extended a $29,550M credit line to MHG Casa Madrona Hotel, LLC ("Casa") for the purpose of purchasing and converting a hotel in Sausalito, California, to condominiums. At the 5/8/06 State examination, the Mitchell relationship had increased to approximately $56MM. During that examination, Casa (balance @ $18,148M) was listed for Special Mention due to significant documentation weaknesses. The internal rating of "2" (Above Average) continued on the relationship, despite criticism regarding the largest loan in the relationship.

Management stated that in August 2006, Mr. Mitchell contacted the bank and requested additional funds to meet cashflow shortages and to keep a large bank from foreclosing on one of his related interests, the Royal Palm Hotel in Miami, Florida. After discussing the loan proposal on 8/4/06, the Directors Loan Committee met on 8/7/06 via conference call (some in person). SLO Ballard presented a $20MM loan request for approval. Former Director Day motioned for approval and President Skow seconded. The loan request was approved unanimously without a loan package or documentation. On 8/8/06, the $20MM in funds was extended via loans to Printers Row Investors, LLC/Blake Investors, LLC ($12,500M) and to Melbourne Hotel Investors, LLC ($7,500M), related interests of Mr. Mitchell.

The aforementioned loans matured on 2/15/07. Additionally, several other loans began maturing in March and April. Reportedly, Mr. Mitchell wanted to renew the debt, but management required that a substantial paydown be made. After several conversations and failure by Mr. Mitchell to deliver on his promises, management told Mr. Mitchell to pay the full amount due or renew with a $5MM paydown, with an additional $5MM due in 60 days. He failed to meet these requirements. Meanwhile, the loans remained in accrual status and internally rated "2."

On 6/21/07, Mr. Mitchell and the bank agreed to a workout resolution. The agreement calls for the two Mitchell Hospitality Investment, LLC notes ($3,804M and $3,725M) to be added to the Casa line, which would increase the balance of the line to its full amount ($29,500M). Second, the agreement modifies the DSD on Casa, increasing the amount to $48,648M and adding the Printers' Row Investors, LLC ($12,495M) and Melbourne Hotel Investors, LLC ($6,653M) notes to the mortgage.

A 3/8/07 appraisal assigns an "as is" value of $32.8MM to Casa. The property is being converted to condominiums for private ownership and/or rental properties. Depending on the number of units used for rental purposes, the appraisal assigns values ranging from $49.4MM to $84.8MM. Recent appraisals of the five shopping centers held as collateral assign an aggregate value of $19.4MM. The bank plans to take deeds-in-lieu of foreclosure on Casa and the five shopping centers by the end of the year. Mr. Mitchell has agreed to this arrangement. Management reports prospects for selling Casa at a price exceeding the "as is" AV.

A self-prepared PS for Guy Mitchell dated 4/19/06 reflects TA of $206MM, which consists primarily of $3MM in cash, $20MM in notes receivable, $177MM in RE owned, and a $4MM leer jet. He lists no liabilities or contingent liabilities. The PS also reflects $3MM in RE income. The statement provides insufficient information

to conduct a meaningful analysis of Mr. Mitchell's true financial posture and cash flow capacity. This is a very complex credit relationship, with the inclusion of various LLCs and other entities. Despite this fact, management did not perform global cash flow analyses prior to extending credit.

Based on the default of the borrowers, the shortfall of collateral, and the unwillingness of Mr. Mitchell to provide any tangible support, the relationship is adversely classified Substandard and Loss. A breakdown of the classified amount is provided below. Accrued interest on this relationship is adversely classified Loss in the Other Assets section of this Report.

**Collateral Value**

| | | |
|---|---|---|
| Casa Madrona | $32,800M | |
| Shopping Centers | $16,763M | ($19,400M less the $2,637M allocated for participations sold - see borrowers 7 & 9) |
| | $49,563M | |

**Book Balance**      $80,163M

**Classified Amounts**      $49,563M Substandard      $30,600M Loss

Officer: Skeen/Ballard
Examiner: Burns

REDACTED