John T. Hansen (CA 34639)
jhansen@nossaman.com
James H. Vorhis (CA 245034)
jvorhis@nossaman.com
Nossaman LLP
50 California Street, 34th Floor
San Francisco, CA 94111
Telephone: 415.398.3600
Facsimile: 415.398.2438

Attorneys for FEDERAL DEPOSIT INSURANCE
CORPORATION as Receiver for Integrity Bank

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MHG CASA MADRONA HOTEL, LLC,<br><br>      Debtor, | Case No: 09-12536<br><br>**SECOND MOTION OF FEDERAL DEPOSIT INSURANCE CORPORATION FOR RELIEF FROM THE AUTOMATIC STAY**<br><br>Date: January 14, 2009<br>Time: 9:00 a.m.<br>Judge: Hon. Alan Jaroslovsky<br>      U.S. Bankruptcy Court –<br>      Santa Rosa Division<br>      99 South E. Street<br>      Santa Rosa, CA |

## I. INTRODUCTION

The Federal Deposit Insurance Corporation ("FDIC"), a secured creditor, files this second motion for relief from the automatic stay to allow it to foreclose on the Casa Madrona Hotel, based on the failure of Casa Madrona Hotel, LLC ("Debtor") to pay the real property taxes due on December 10, 2009, and the continuing decline in the value of the hotel. A Final Hearing was held on the FDIC's first motion on November 12, 2009. Following that hearing the Court modified the stay to provide that the stay would be lifted unless a plan of reorganization is confirmed within 120 days of November 12, 2009. In addition the Court ordered that "[i]f the Debtor fails to pay the full amount of the real property taxes due to the County of Marin on or before December 10, 2009, the FDIC may apply for relief from the stay earlier than the date described … above" (Request for Judicial Notice, Order on Motion of FDIC for Relief from Stay, ¶ 3, p.2, entered December 3, 2009). In fact, the Debtor did fail to make the December 10 property tax payment (Request for Judicial Notice, Debtor's Status Conference Statement, ¶ 3, p. 2, dated December 15, 2009).

## II. FACTS

The facts pertinent to this motion were set forth in considerable detail in the papers and pleadings filed in connection with the FDIC's first motion for relief from the stay, and the FDIC requests that the Court take judicial notice of those papers and pleadings, in particular the Declaration of Sharon Ives, filed November 5, 2009. In addition, this second motion is supported by the Declaration of Charles P. Farrell, Jr. and Barbara Smith and a Request for Judicial Notice served and filed herewith. In summary the evidence reveals the following pertinent facts.

1. Debtor owes the FDIC $63,634,928, which amount is secured by the real and personal property of the Debtor commonly known as the Casa Madrona Hotel (Declaration of Charles P. Farrell, Jr. ["Farrell Dec."], ¶10 and Exhibit CF5).

2. The Casa Madrona Hotel was most recently appraised by the FDIC as having a value of $11,000,000 (Farrell Dec. ¶ 9; Declaration of Lance Dore, filed herein on November 5, 2009).

3. The value of the hotel has been steadily declining since October 2008, when the FDIC first had it appraised, as shown in the following table:

| Date | Appraised Value |
|---|---|
| October 2008 | $14,100,000 |
| October 2008 | 16,600,000 |
| June 2009 | 12,100,000 |
| October 2009 | 11,000,000 |

Farrell Dec., ¶¶ 4, 5, 7 and 9.

4. Property taxes on the Casa Madrona Hotel have been delinquent since 2007, and the current amount due, including penalties and interest is $906,936.93. (Declaration of Barbara Smith). This amount continues to grow daily due to the accrual of interest on the unpaid taxes.

5. The Casa Madrona Hotel has suffered from extensive deferred maintenance and is in need of over $400,000 in immediate repairs (Declaration of Cory Creath, ¶ 3, filed herein November 5, 2009).

6. Despite the Court's order giving the Debtor 120 days to confirm a plan of reorganization, no plan and disclosure statement has been filed as of December 29, 2009, which marks the passage of 47 days of the 120-day window. Given the notice requirements for hearings on disclosure statements and plans and the availability of hearing dates, confirming a plan at this point with the 120-window would be a remarkable accomplishment.

III. **ARGUMENT**

A. **The stay should be lifted for lack of adequate protection of the FDIC's interest in property of the estate.**

Bankruptcy Code § 362(d)(1) (11 U.S.C. § 362(d)(1)) provides that the court shall grant relief from the stay "for cause, including lack of adequate protection of an interest in property of such party in interest;...." Courts have held that a secured party lacks adequate protection

when the value of its collateral is depreciating or declining in value. E.g., *United Savings Assn. v. Timbers of Inwood Forest*, 484 U.S. 365, 370, 108 S.Ct. 626, 630 (1988); *In re Kaplan Breselaw ASH, LLC*, 264 B.R. 309, 333 (Bkrtcy. S.D.N.Y. 2001) ["The failure to provide adequate protection when the property is declining in value is a classic basis for granting relief from the stay for cause."]; *In re Gallegos Research Group Corp.*, 193 B.R. 577, 584 (Bkrtcy. D. Colo. 1995) ["Adequate protection means that the value of the creditor's collateral must be protected from diminution while property is being used or retained in the bankruptcy case."]. In addition, at least one court has held that "[t]he failure to provide for real estate taxes may be a basis for finding a lack of adequate protection." *In re Rosen,* 208 B.R. 345, 356 (D.N.J. 1997). Both of these elements are present here.

In *In re Balco Equities Ltd., Inc.*, 312 B.R. 734, 751 (Bkrtcy. S.D. N.Y. 2004), the court explained the process for determining whether the value of the property is declining. First, the secured creditor must present prima facie evidence of a decline or threat of decline in value. "[T]he burden then shifts to the debtor to go forward with evidence, and ultimately, to prove that the collateral is not declining in value, or that the secured party is adequately protected through periodic payments, an equity cushion, additional or replacement liens or good prospects for a successful reorganization." Here, The FDIC has provided prima facie evidence of a decline in value by the fact that its two most recent appraisals of the property show a decline since October 2008, from a range of $14 to 16 million, to $12.2 million in June 2009 and $11 million in October 2009. This evidence is consistent with general reports on the distress that exists inn the hotel industry (Request for Judicial Notice filed herein on November 5, 2009).

The Debtor cannot provide evidence to meet its burden that the hotel is not declining in value, or that it has or can make periodic payments, or that there is equity in the property, or that there is any ability to provide a replacement lien, or that there is a good prospect of reorganization.

First, at the Final Hearing on the FDIC's first relief stay motion, the debtor offered appraisal evidence that the value of the hotel was actually $8.8 Million, or over $2 million less than the $11 million value of the FDIC's appraisal. While the FDIC believes that Debtor's appraisal was deeply flawed, and the Court never resolved that conflict in the evidence, the Debtor should be estopped from arguing that the hotel's value is stable or increasing.

Second, not only is the Debtor not making periodic payments, it has failed to make the most recent property tax payment; thus lessening the value of the FDIC's interest in the hotel in addition to the decline in the underlying value of the property.

Third, It is undisputed that there is no equity in the property, as the Court found at the conclusion of the November 12, 2009 Final Hearing (Request for Judicial Notice, Transcript of Proceedings ["Transcript"] 40, lines 21-2).

Fourth, the Debtor has no other property except the hotel with which to offer additional or replacement collateral.

Finally, there is no good prospect of reorganization. A plan has not been filed, and the Court found at the Final Hearing that the "Debtor has not demonstrated that reorganization is in prospect" (Transcript 40, lines 21-2).

For all of the above reasons, cause exists to grant the FDIC's second motion for relief from the stay for lack of adequate protection of its interest in the Casa Madrona Hotel.

**B.     Alternate grounds exist for lifting the stay because debtor has no equity and the property is not necessary for reorganization.**

A second basis for granting relief from stay in a case like this arises when the debtor has no equity in the property and there is no realistic prospect of reorganization. *United Savings Assn. v. Timbers of Inwood Forest*, 484 U.S. at 376, 108 S.Ct. at 633, supra. It is beyond dispute in this case that the Debtor does not have any equity in the Casa Madrona Hotel. The FDIC has flied a claim in excess of $63,000,000, as compared to a value of $11,000,000. In its opposition to the FDIC's first relief stay motion, the Debtor argued that a substantial portion of the debt was fraudulently incurred. Without conceding the validity of that

-5-

243874_1.DOC                                                            Case No. 09-12536
**SECOND MOTION OF FEDERAL DEPOSIT INSURANCE CORPORATION FOR RELIEF FROM THE AUTOMATIC STAY**
Case: 09-12536    Doc# 127    Filed: 12/30/09    Entered: 12/30/09 10:34:29    Page 5 of 7

contention, the FDIC can readily establish that the undisputed portion of Debtor's obligation far exceeds the value of the hotel.

The Debtor has conceded that it legitimately borrowed $12,000,000 from Integrity Bank in May 2005 in order to purchase the hotel (Transcript 28, lines 9-12). Furthermore, Debtor concedes that it never made any interest payments on the $12 million loan, and that the only interest payments ever made were made by funds advanced by Integrity Bank (Id. 29, lines 5-22). Based on this state of facts, the FDIC has calculated the amount of interest that has accrued on the $12,000,000 alone from the date of inception of the loan to August 10, 20009, when this case was commenced. The amount payable on that portion of the Debtor's obligation to the FDIC is $17,743,306.25. (Farrell Dec., ¶12).

With respect to the second prong of §362(d)(2), the Supreme Court said in *Timbers of Inwood Forest*, "[t]here must be 'a reasonable possibility of a successful reorganization within a reasonable time.'" 484 U.S. at 376, 108 S.Ct. at 633. The Debtor has the burden of proof on this issue. 11 U.S.C. § 362(g)(2.). At the conclusion of the Final Hearing, the Court found that "the Debtor has not demonstrated that a reorganization is in prospect," although "reorganization is possible" (Transcript 40, lines 21-2 and 25 and 41, line 1). In view of the lack of adequate protection and the failure to make the December 2009 tax payment, however, the Debtor should be required to show more than a mere possibility of reorganization. As the court in *In re Balco Equities Ltd., Inc.*, 312 B.R. at 751, supra, said, the Debtor should demonstrate "good prospects for a successful reorganization." Debtor cannot meet that burden in this case.[1]

## IV. CONCLUSION

For the reasons stated above and based on the evidence submitted in support of this second motion for relief from the automatic stay and other evidence presented in the FDIC's

---

[1] The FDIC has agreed to allow the chapter 11 trustee an opportunity to market the property before the FDIC will conduct a trustee's sale under its deed of trust in order to determine if a willing buyer will pay an amount sufficient to satisfy the FDIC's minimum expectations for realizing upon its collateral. However a sale under 11 U.S.C. § 363 is not reorganization.

-6-

243874_1.DOC  Case No. 09-12536
SECOND MOTION OF FEDERAL DEPOSIT INSURANCE CORPORATION FOR RELIEF FROM THE AUTOMATIC STAY

Case: 09-12536    Doc# 127    Filed: 12/30/09    Entered: 12/30/09 10:34:29    Page 6 of 7

| | |
|---|---|
| 1 | first motion for relief from stay, the FDIC requests that the Court grant its motion and allow it to |
| 2 | conduct a trustee's sale under its deed of trust no sooner than February 2, 2010. |
| 3 | Dated: December 30, 2009    Nossaman LLP |

By:   */s/ John T. Hansen*
     John T. Hansen
Attorneys for FEDERAL DEPOSIT INSURANCE CORPORATION as Receiver for Integrity Bank